IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

GARY GILLARD,

                        Plaintiff,

                                          Civ. Action No.
     vs.                                9:09-CV-0431 (TJM/DEP)

MICHAEL ROVELLI, *et al.,*

                      Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

Gary Gillard, *Pro Se*
01-A-1613
Attica Correctional Facility
Box 149
Attica, NY  14011


FOR DEFENDANTS:

HON. ANDREW M. CUOMO        MICHAEL G. McCARTIN, ESQ.
Attorney General                 Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Gary Gillard, a *pro se* plaintiff who is familiar to the court, has commenced this action pursuant to 42 U.S.C. § 1983 alleging that he was deprived of his civil rights by the defendants during the period of his confinement as a New York State prison inmate.[1]   In his complaint, which names as defendants the superintendent and several corrections personnel employed at the prison facility in which he was housed at the relevant times, plaintiff alleges that he has been the victim of a conspiracy to harass, threaten, and harm him, that certain of the defendants have used excessive force against him, and that by disconnecting power to his cell and failing to provide him with a new replacement razor defendants have subjected him to cruel and unusual punishment.  As relief, plaintiff's complaint seeks both monetary damages and injunctive relief, including a directive that he be transferred to another prison facility.

---

[1]        In addition to this action, plaintiff has commenced eight others in this district, including *Gillard v. Burge, et al.*, No. 9:03-CV-1537 (TJM/RFT); *Gillard v. Burge, et al.*, No. 9:04-CV-322 (LEK/RFT); *Gillard v. Burge, et al.*, No. 9:06-CV-1038 (FJS/DEP); *Gillard v. Rosati, et al.*, No. 9:08-CV-0325 (DNH/RFT); *Gillard v. Rosati, et al.*, No. 9:08-CV-1104 (LEK/DEP); *Gillard v. Kahn, et al.*, No. 9:09-CV-0288 (NAM/GHL); *Gillard v. Rovelli, et al.,* 9:09-CV-0431 (TJM/DEP); *Gillard v. Rovelli, et al.*, No. 9:09-CV-0860 (NAM/GHL); and *Gillard v. Smith, et al.*, No. 9:09-CV-0945 (GLS/ATB).

In response to plaintiff's complaint all of the named defendants, with the exception of Scott Hamel and Peter McNally, have moved for dismissal of plaintiff's claims against them.  In their motion, defendants contend that plaintiff's complaint fails to state a cognizable claim and to establish their personal involvement in the offending conduct.  For the reasons set forth below, I recommend that defendants' motion be granted.

I.      BACKGROUND[2]

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").  *See generally* Complaint (Dkt. No. 1).  During March and early April of 2009, when the relevant events occurred, plaintiff was designated by the DOCS to the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York.  *Id.* at Preliminary Statement*.*

The allegations set forth in plaintiff's complaint include the claim

---

[2]      In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).  In preparing this report I have also considered the materials submitted by the plaintiff in opposition to the defendants' motion, Dkt. No. 43, to the extent they are consistent with the allegations set forth in his complaint.  *See Donhauser v. Goord*, 314 F. Supp.2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).

that he has been harassed and taunted by defendant Micheal Rovelli, a corrections officer employed at Great Meadow.  The first reported incident occurred on March 7, 2009, when during a scheduled razor exchange defendant Rovelli refused to provide Gillard with a new razor.  Complaint (Dkt. No. 1) ¶ 17.  Rovelli proceeded to taunt the plaintiff later on that day through the use of gestures and offensive comments.  *Id.* at ¶ 18.  Although plaintiff is unable to definitively link Rovelli to the incident since he did not witness it, he also suspects him of pouring coffee on his cell bed on the following day.  *Id.* at ¶ 19.

After filing a grievance on March 9, 2009 complaining of defendant Rovell's harassment, plaintiff returned from sick call on March 10, 2009 to find that his cell was without power, a situation that persisted for eighteen days causing him to be without lights as well as access to his television and radio.  *Id.* at ¶ 24.

On March 13, 2009, an incident that began as an attack on the plaintiff by another inmate, with defendant Scott Hamel, a corrections officer, refusing to intervene, ripened into the use of excessive force by Corrections Officer Hamel upon the plaintiff, during which defendant Hamel stated "I've been waiting to do this to you."  Complaint (Dkt. No. 1)

4

¶ 30.  Plaintiff filed a grievance on March 13, 2009 concerning Correction Officer Hamel's use of force, which plaintiff claims resulted in aggravation of his pre-existing neck and back injuries.  *Id.* at ¶¶ 30, 32.

According to the plaintiff, during the period of his incarceration in Great Meadow corrections officers there were actively engaged in a conspiracy, the object of which was to cause him harm.  As part of that conspiracy, corrections officers made known to other inmates the nature of plaintiff's criminal conviction, allegedly to incite other inmates to attack him.  *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 33, 45, 55.  Plaintiff also alleges that defendants have stolen, lost, or misappropriated certain of his personal property, including two bags or cans of coffee, although no particular defendant is blamed, and have tampered or interfered with his incoming mail.  *Id.* ¶¶ 35-36, 51-54.  Plaintiff further asserts that defendant Hamel filed a false misbehavior report accusing him of being the aggressor in connection with the March 13, 2009 incident.  *Id.* at ¶ 49.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on April 13, 2009.  Dkt. No. 1.  In his complaint plaintiff has named several defendants, including David Rock, the Superintendent at Great Meadow; Corrections Counselor

5

Howard Osborne; Corrections Sergeants Michael Hoy and Matthew Sabo;

Corrections Officers Michael Rovelli, Scott Hamel, Alfred Aubin, Peter

McNally, Smith, and Ronald Lamb; Bruce Porter, a Maintenance Assistant

at the facility; and two John Doe defendants.  *Id.*  Although those claims

are not stated as discrete causes of action, plaintiff's complaint asserts

that the defendants have 1) violated his right to due process; 2) denied

him the right to correspond with those outside of the facility; 3) denied him

access to the courts; 4) unlawfully tampered with his incoming and

outgoing mail; 5) subjected him to cruel and unusual punishment through

the use of excessive force and the denial of power, television, and radio

without due process; 6) issued false misbehavior reports to him; and, 7)

breached their duty to protect him from harm.  *Id.*

On October 29, 2009, following their return of acknowledgment of

service forms, *see* Dkt. Nos. 9-18, all of the named defendants, with the

exception of Scott Hamel and Peter McNally, filed a pre-answer motion

seeking dismissal of plaintiff's complaint for failure to state a claim upon

which relief may be granted.[3]  Dkt. No. 27.  Plaintiff has since responded

---

[3]      Defendants Hamel and McNally have since answered plaintiff's
complaint, Dkt. No. 29, and a Rule 16 scheduling order has been issued in the case
establishing deadlines for the completion of discovery and the filing of motions.  Dkt.

in opposition to defendants' motion, Dkt. No. 43, which is now fully briefed

and ripe for determination and has been referred to me for the issuance of

a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P.

72(b).

III.    DISCUSSION

     A.    Dismissal Motion Standard

     A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading, utilizing as a backdrop a pleading

standard which, though unexacting in its requirements, "demands more

than an unadorned, the-defendant-unlawfully-harmed me accusation" in

order to withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.

Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

554, 555, 127 S. Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of

Civil Procedure requires that a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed.

_____

No. 30.  A text order was since entered on November 3, 2009, however, staying
discovery pending a decision on the instant motion to dismiss.

R. Civ. P. 8(a)(2).  *Id.*  While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft,* 129 S. Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005)

8

(Kahn, J.).  The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp.2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

      B.   <u>Personal Involvement</u>

      In their motion, defendants contend that because plaintiff's claims against defendant Rock are predicated exclusively upon his position of authority as the superintendent at Great Meadow, and his failure to address the issue after having been alerted by letter to the alleged constitutional deprivations, Gillard's claims against him are subject to dismissal.

      Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct.

9

1282 (1978)).  In order to prevail on a section 1983 cause of action

against an individual, a plaintiff must show some tangible connection

between the constitutional violation alleged and that particular defendant.

*See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

As the superintendent at Great Meadow, defendant Rock cannot

be liable for damages under section 1983 solely by virtue of his position;

there is no *respondeat superior* liability under section 1983.  *Richardson v.

Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  In order

for liability to attach in the case of Superintendent Rock, plaintiff must

establish that he 1) directly participated in the challenged conduct; 2) after

learning of the violation through a report or appeal, failed to remedy the

wrong; 3) created or allowed to continue a policy or custom under which

unconstitutional practices occurred; 4) was grossly negligent in managing

the subordinates who caused the unlawful event; or 5) failed to act on

information indicating that unconstitutional acts were occurring.  *Iqbal v.

Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub

nom.*, *Ashcroft v. Iqbal*, ___ U.S. ___,129 S. Ct. 1937 (2009); *see also

Richardson*, 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.

1995); *Wright*, 21 F.3d at 501.  In the absence of any of these showings,

plaintiff's claims against defendant Rock are subject to dismissal.

Defendant Rock is mentioned only twice in plaintiff's complaint, once where he is identified as the superintendent at Great Meadow, and the other in which it is alleged that plaintiff sent him a letter, dated March 28, 2009, complaining of actions of corrections officers at the facility. Complaint (Dkt. No. 1) ¶¶ 16, 39.  Without more, these allegations are insufficient to demonstrate the requisite personal involvement on the part of defendant Rock in the constitutional violations alleged.   *Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citing, *inter alia, Garrido v. Coughlin*, 716 F. Supp. 98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison where only allegation was that he ignored inmate's request for an investigation)).[4] I therefore recommend dismissal of plaintiff's claims against defendant Rock on the basis of lack of personal involvement.

---

[4]      Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

C.    Sufficiency of Plaintiff's Eighth Amendment Claims

Leaving aside plaintiff's claims addressing the alleged use of excessive force and failure to intervene, which are not now challenged, defendants argue in their motion that the complaints raised by the plaintiff concerning his conditions of confinement fail to rise to a level of constitutional significance, and accordingly seek dismissal of those claims on this basis.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *See Leach v. Dufrain,* 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S. Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

        To satisfy the objective prong of an Eighth Amendment conditions of confinement claim, a plaintiff must demonstrate a deprivation of "'the minimal civilized measure of life's necessities,' such as adequate food, clothing, shelter, sanitation, medical care, and personal safety."  *May v.*

13

*DeJesus*, No.3:06CV1888, 2010 WL 1286800, at *4 (D.Conn. Mar. 30,
2010) (quoting *Alvarez v. County of Cumberland*, Civil No. 07-346(RBK),
2009 WL 750200, at *2 (D.N.J. Mar. 18, 2009) (citation omitted)).
Conditions that are merely restrictive or harsh, however, do not implicate
the Eighth Amendment; "they are merely part of the penalty that criminal
offenders pay for their offense against society." *May*, 2010 WL 1286800,
at *4 (quoting *Alvarez*,1009 WL 750200, at *2).  On the other hand, prison
officials may not expose inmates to conditions that "pose an unreasonable
risk of serious damage to [their] future health." *Helling v. McKinney*, 509
U.S. 25, 34-35, 113 S. Ct. 2475, 2481 (1993).  The determination of
whether these basic minimums have been satisfied is informed by
contemporary standards of decency. *Id.* at 36; *see also Rhodes*, 452 U.S.
at 347, 101 S. Ct. at 2399.

When measured against these standards plaintiff's Eighth
Amendment claims fall far short of demonstrating a constitutional
deprivation.  In his complaint, plaintiff complains of the lack of power to his
cell for a period of several days, resulting in his inability to listen to the
radio and watch television.  It is well established, however, that prison
inmates enjoy no constitutional right to watch television or to listen to the

14

radio, as those amenities are not considered to be necessities for prison

inmates.  *See Murphy v. Walker*, 51 F.3d 714, 718 n.8 (7th Cir. 1995)

("We find no support in the case law for [the plaintiff's] claim that denying

him cigarettes and television amounts to a constitutional violation.") (citing

*Robinson v. Moses*, 644 F. Supp. 975, 979 (N.D. Ind.1986) (holding

detainee in city-county lockup without television facilities not violation of

Fourteenth Amendment); *James v. Milwaukee County*, 956 F.2d 696, 699

(7th Cir.1992) ("a prisoner who is denied ... a television set has not set out

a deprivation of [his rights under] ... the eighth amendment"), *cert. denied*,

506 U.S. 818, 113 S.Ct. 63 (1992); *see also Montana v. Commissioners

Court*, 659 F.2d 19, 23 (5th Cir. 1981) (affirming dismissal of claims of

detainee relating to restrictions on usage of radio and television as

frivolous, stating that "[t]hese claims do not pertain to federal constitutional

rights.") (citing *Lovern v. Cox*, 374 F. Supp. 32, 34 (W.D.Va.1974) (finding

claims regarding the absence of television or radio not cognizable under

section 1983)).

      Plaintiff's claims regarding the denial of a replacement razor for a

day and the pouring of coffee on his bed fare no better.  These are the

type of *de minimis* deprivations which fall short of establishing a

constitutional deprivation.  *See Ingraham v. Wright*, 430 U.S. 651, 674, 97

S.Ct. 1401, 1414 (1977); *see also Hall v. Jarrigan*, No. 2:07-CV0127,

2008 U.S. Dist. LEXIS  10252, at *10 (E.D. Tenn. Dec. 18, 2008)

("Plaintiff's claim that he once had to use a rusty razor and was denied a

replacement [Claim two] is not a viable constitutional claim because the

Eighth Amendment prohibits only extreme deprivations and because this

is not such a deprivation".); *Boone v. Canarecci*, No. 3:05-CV-173, 2005

U.S. Dist. LEXIS 6028, at * 2-3 (N.D. Ind. Apr. 7, 2005) ("The denial of a

single razor on one occasion is a *de minimis* injury which does not give

rise to an equal protection claim.").

      Plaintiff's complaint also alleges that he was deprived of two bags

of coffee which were to have been mailed out of the facility.  This claim is

also subject to dismissal.  The alleged destruction or loss of plaintiff's

personal property will not support a claim redressable under section 1983

if "adequate state post-deprivation remedies are available."  *Hudson v.*

*Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194 (1984).  The Second Circuit

has held New York's post-deprivation remedies adequate to preclude a

prisoner's due process claim for lost personal property.  *Love v. Coughlin*,

714 F.2d 207, 208-09 (2d Cir. 1983).  As a result, while the plaintiff may

pursue any remedies available under state law relating to his lost property, he has no constitutional claim.

Prominent among the allegations of conduct giving rise to plaintiff's Eighth Amendment claims are those of threats and harassment on the part of prison officials.  The allegations set forth in plaintiff's complaint regarding such actions, however, fail to give rise to a plausible Eighth Amendment claim.  Indeed,  42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.  *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996) (citations omitted).  As a general matter, verbal harassment, including profanity, without any physical injury is not a cognizable claim under section 1983.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Gill v. Hoadley*, 261 F. Supp.2d 113, 129 (N.D.N.Y. 2003); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998).  Nor do threats amount to a constitutional violation. *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995).  Accordingly, allegations of verbal abuse, however reprehensible the conduct may be, do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983.  *See Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations

17

that corrections officer laughed at inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker*, No. Civ.A.95CV1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J. & DiBianco, M.J. ) ("verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation").

Plaintiff's complaint contains nothing more than vague and conclusory allegations of threats and harassment issued against him by prison personnel; Gillard does not claim the infliction of any physical injury or pain as a result of defendants' conduct.  Plaintiff has therefore failed to meet the threshold requirement for an Eighth Amendment violation to show the "unnecessary and wanton infliction of pain" by prison officials. *Whitley v. Alvers*, 475 U.S. 312, 319 196 S. Ct. 1078, 1084 (1986).

In sum, for the foregoing reasons I conclude that plaintiff has failed to allege facts sufficient to demonstrate the existence of plausible Eighth Amendment claim.

D.    Sufficiency of First Amendment Court Access Claim

Once again, in only a very conclusory fashion plaintiff's complaint expresses his surmise that his incoming mail was intercepted by prison

officials.  *See, e.g.,* Complaint (Dkt. No. 1) ¶ 36.  Though not directly addressed in their memorandum, it appears that defendants also seek dismissal of this portion of plaintiff's complaint.

Undeniably, prisoners have a recognized First Amendment right ot the free flow of incoming and outgoing mail.  *Minigan v. Irvin*, 977 F. Supp. 607, 609 (W.D.N.Y. 1997).  This right is not unlimited, however, but instead is subject to the right of corrections employees to lawfully examine an inmate's incoming mail in accordance with DOCS Directive No. 4422[5], which has been upheld as being reasonably related to legitimate concerns for the security and order of prison facilities.  *See Webster v. Mann*, 917 F. Supp. 185, 187 (W.D.N.Y. 1996) (Directive No. 4422 held reasonably related to legitimate penological interests); *France v. Coughlin*, No. 85 Civ. 6347, 1987 WL 10724, at *2-3 (S.D.N.Y. May 4, 1987) (addressing

---

[5]      The DOCS Directive 4422 § III.G. provides, in relevant part:

1.b. All incoming general correspondence will be opened and inspected for cash, checks, money orders, printed or photocopied materials, or contraband.  The inmate's presence is not required during the inspection of the incoming general correspondence. . . .

constitutionality of DOCS Directive No. 4422).

In this case, plaintiff appears to complain not that his incoming mail was tampered with, but rather that it has been diverted altogether. Assuming that plaintiff's allegations arise to a level sufficient to set forth a plausible claim based upon theft of mail, however, the claim is nonetheless deficient since it does not identify any defendant who was allegedly personally involved in the mail theft. *See Bass*, 790 F.2d at 263. Moreover, plaintiff's complaint does not identify any prejudice experienced by virtue of the interception, another essential element to stating a cognizable First Amendment claim.[6]   I therefore recommend dismissal of any mail tampering claims found in plaintiff's complaint.

E.   Conspiracy

In his complaint, plaintiff also alleges in wholly conclusory fashion the existence of a conspiracy involving defendants Rovelli and Lamb to have him killed. *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 44, 55.  In their motion, defendants similarly seek dismissal of this claim.

---

[6]      To the extent that plaintiff's complaint is directed to the alleged theft of his mail by prison officials, like his claims surrounding the loss or stolen bags of coffee, any such claim is precluded by the state's provision of an inadequate post-deprivation remedy. *Love*, 714 F.2d at 208-09.

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff must demonstrate that the defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).  Conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857, 104 S. Ct. 177 (1983).

In this instance, plaintiff's complaint baldly asserts a conspiracy without alleging any facts demonstrating the precise understanding of the conspirators and how the objective of the conspiracy was to be achieved. Plaintiff's complaint therefore fails to allege a plausible conspiracy claim. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

There is yet another independent basis for dismissal of plaintiff's conspiracy claim. The intra-agency conspiracy doctrine, a doctrine rooted in the conspiracy provision of section one of the Sherman Antitrust Act, 15

U.S.C. § 1, and which, although developed in the context of business

entities, has been expanded since inception to apply to business

corporations and public entities as well; this doctrine provides that, with

exceptions not now presented, an entity cannot conspire with one or more

of its employees, acting within the scope of employment, and thus a

conspiracy claim conceptually will not lie in such circumstances.  *See,*

*e.g., Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76

(E.D.N.Y. 2002); *Griffin-Nolan v. Providence Washington Ins. Co.*, No.

5:05CV1453, 2005 WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005)

(Scullin, C.J.).

     In this instance, plaintiff alleges that several DOCS employees at

Great Meadow conspired to deprive him of his civil rights.  Since those

conspiracy claims are asserted against officers, agents, or employees of

the DOCS each acting within the scope of his or her employment, they are

precluded by virtue of the intra-corporate conspiracy doctrine.  *Little v. City*

*of New York,* 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (citations

omitted).

IV.    SUMMARY AND RECOMMENDATION

     With the exception of plaintiff's allegations regarding use of

excessive force against him, which both demonstrate the existence of a

viable Eighth Amendment claim and are not challenged in defendants'

motion, plaintiff's allegations fail to demonstrate the existence of plausible

deprivations or constitutional wrongs cognizable under the First, Eighth or

Fourteenth Amendments.  Similarly, plaintiff's complaint fails to allege a

proper basis for finding liability on the part of Superintendent Rock, even

assuming the existence of plausible constitutional claim.

Based upon the foregoing, it therefore hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 27)

be GRANTED, and that all claims in this action with the exception of those

against Hamel and McNally be DISMISSED, with leave to replead.[7]

---

[7]     The court notes that it appears plaintiff has neither identified the "John
Doe" defendants named in his complaint, nor have they been served.  Plaintiff is
cautioned that Rule 4(m) of the Federal Rules of Civil Procedure requires that service
of a summons and complaint be made within 120 days of issuance of the summons.
This court's local rules shorten the time for service from the 120-day period under Rule
4(m) to 60 days, *see* N.D.N.Y.L.R. 4.1(b), a period of time which has long since
expired in this action.  Although the court has discretion to extend that time period,
*Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986), a *pro se* prisoner
proceeding *in forma pauperis* is required to provide the information necessary to
identify the defendant to be served, *Murray v. Pataki*, No. 09-1657, 2010 WL 2025613,
at *2 (2d Cir. May 24, 2010) (summary order) (cited in accordance with Fed. R. App.
Proc. 32.1), which plaintiff has not done.  The court will recommend dismissal of all
claims, except those against Hamel and McNally but including those stated against the
John Doe defendants, with leave to replead.  If plaintiff chooses to amend his
complaint and to pursue his claims against the unserved John Doe defendants, he is
reminded that it is his obligation to take appropriate steps to identify these individuals
and notify the clerk of their identities so that they may be served.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:  August 30, 2010
        Syracuse, NY

24



Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

GREENWALDT, Plaintiff,
v.
COUGHLIN, et al., Defendants.
**93 Civ. 6551 (LAP).**

April 19, 1995.

*MEMORANDUM AND ORDER*

PRESKA, District Judge:

**\*1** Plaintiff Paul P. Greenwaldt ("Greenwaldt") brings this prisoner pro se suit under 42 U.S.C. § 1983, claiming that the defendants, employees of the New York State Department of Correctional Services ("NYSDOCS"), violated his constitutional rights. Defendants Thomas A. Coughlin, III ("Coughlin"), Commissioner of NYSDOCS; Anthony J. Annucci ("Annucci"), Deputy Commissioner and Counsel; Susan E. Butler ("Butler"), Deputy Commissioner; Philip Coombe, Jr. ("Coombe"), First Deputy Commissioner; James Recore ("Recore"), Director of the Bureau of Temporary Release and Robert Hanslmaier ("Hanslmaier"), Acting Superintendent of Woodbourne Correctional Facility ("Woodbourne"), have moved to dismiss. Defendant T. J. Miller ("Miller"), Deputy Superintendent of Woodbourne, has not joined in the motion to dismiss. For the reasons given below, the motion is granted.

*BACKGROUND*

Greenwaldt makes numerous allegations against the defendants. On May 21, 1993, Greenwaldt was transferred to Woodbourne, a medium security facility under the jurisdiction of NYSDOCS. (Am. Compl. ¶¶ 1-2.) [FN1] Upon his arrival at Woodbourne, a sergeant allegedly informed Greenwaldt that at Woodbourne visits were permitted only on alternate Saturdays and Sundays, depending on the first letter of the inmate's last name. [FN2] Greenwaldt asked if there were any exceptions possible, and the sergeant told him to write the Deputy Superintendent to request an exception. (Am. Compl. ¶¶ 3-6.) Greenwaldt, an avid letter writer, proceeded to write to various state public officials concerning what he perceived to be discriminatory visitation rules. (Am. Com pl. ¶¶ 8-11.)

Greenwaldt also complains that on June 3, 1993, he was placed in keeplock without a good reason. (Am. Compl. ¶¶ 15-16.) Greenwaldt claims that, at about that time, he was fined five dollars, without explanation or notice. (Am. Compl. ¶ 20.) On June 5, 1993, Greenwaldt claims to have received notice that he had been found guilty of "refusing a direct order...; interfering with an officer; and, [sic] creating a disturbance." (Am. Compl. ¶ 22.) Greenwaldt then wrote to defendants Coughlin, Coombe, Annucci, and Hanslmaier complaining of perceived procedural violations in connection with his disciplinary proceeding. (Am. Compl. ¶¶ 23-25.) On June 8, 1993, Greenwaldt attended a Tier II disciplinary hearing and was found "not guilty of one charge, and guilty of the other charges." (Am. Compl. ¶¶ 26-28.) Greenwaldt appealed this finding. (Am. Compl. ¶ 30.) He also persisted in his complaints regarding the five dollar fine. (Am. Compl. ¶ 33.)

Greenwaldt also claims that a Sargeant Keesler ("Keesler") threatened him. Greenwaldt alleges Keesler told him, "if you continue to complain, I will personally have my officers write you up for every little thing and it will cost you much more than the five dollars ($5.00) we already got." (Am. Compl. ¶ 34.) Greenwaldt claims he immediately wrote to Coughlin, Coombe and Hanslmaier informing them of Keesler's threats. Hanslmaier responded to Greenwaldt in a letter which, according to Greenwaldt "totally disregarded the written complaint." (Am. Compl. ¶ 36.)

**\*2** Greenwaldt also claims that Recore denied his appeal

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

of the disciplinary hearing judgment. (Am. Compl. ¶¶
37-41.) Displeased, Greenwaldt wrote to Recore,
complaining that he did not receive a copy of the decision
and alleging the decision was inaccurate. (Am. Compl. ¶
42.) Greenwaldt also complained to Recore of alleged
violations of New York correctional facility regulations
and of allegedly improper administration of the temporary
release program. (Am. Com pl. ¶ 44-48.) In fact,
Greenwaldt claims Coughlin, Coombe, Butler, Annucci,
Recore, and possibly even then-Governor Mario Cuomo,
the Attorney General, and members of the New York State
Senate and Assembly were together "engaged in an active
conspiracy to circumvent and violate the very laws that
they swore to uphold" with respect to the administration of
the temporary release program. (Am. Compl. ¶ 49.)
Greenwaldt also claims he requested Recore to:

take the necessary steps as the DIRECTOR of the
TEMPORARY RELEASE PROGRAMS, to rectify the
egregious violations of the law and, [sic] the total
disregard of the mandates of 7 N.Y.C.C.R. Part 1900 et
seq. by the Temporary Release Committees in the various
correctional facilities.

(Compl. ¶ 49.)

Greenwaldt alleges that on September 10, 1993, Keesler
conducted a search of Greenwaldt's cell and told him that
he was "in real trouble because [he] wrote legal papers for
other inmates." (Am. Compl. ¶ 52.) Keesler allegedly took
legal papers and forms from Greenwaldt's cell. (Am.
Compl. at ¶¶ 53-54.) Greenwaldt was served with a Notice
of Charges, taken to a Tier III Disciplinary Hearing and
"found guilty and sentenced." Though his legal papers
were eventually returned to him, he was fined another five
dollars. (Am. Compl. ¶¶ 59, 61.)

Greenwaldt alleges that he was subjected to new threats
after this incident. According to Greenwaldt, Keesler and
Miller "attempted to intimidate [[[Greenwaldt] by
questioning [him] about the lawsuit presently pending."
(Am. Compl. ¶ 62.) Greenwaldt claims that Keesler then
said of Greenwaldt to Miller, in Greenwaldt's presence,
"this one... you can lock up anytime, he deserves it." (Am.
Compl. ¶ 62-63).

Turning to the procedural background of the instant
action, Greenwaldt filed his original complaint on
September 16, 1993. Defendants Coughlin, Annucci,
Butler and Coombe moved to dismiss on November 18,
1993. On December 13, 1993, Greenwaldt filed his
memorandum in opposition. Defendants, including
Recore, filed an amended memorandum on January 31,
1994. Greenwaldt filed an amended complaint on March
2, 1994. Defendants filed a second amended memorandum
on July 15, 1994, Hanslmaier by then having joined the
motion as well.

Greenwaldt brings this suit under 42 U.S.C. § 1983, and
alleges violations of his rights under the First, Fourth,
Fifth, Sixth, Eighth, and Fourteenth Amendments. (Am.
Compl. ¶¶ 70-74.) He asks that I enjoin the defendants
"from further penalizing [Greenwaldt] for exercising his
constitutional rights and from confining him to his cell,"
(Am. Compl. at 22, ¶ 1), and from implementing what
Greenwaldt claims is a discriminatory policy on visiting
times. (Am. Compl. at 22, ¶ 2). Greenwaldt also seeks
declaratory relief declaring unconstitutional the
administration of the temporary release program. Finally,
he seeks compensatory damages, punitive damages, and
costs. Defendants argue, *inter alia,* that there is no basis
for holding defendants liable for the alleged violations,
and that Greenwaldt has no protected interest, in either the
temporary release program or the visitation policy, upon
which to base his claims. Defendants' motion to dismiss is
granted for the reasons stated below.

*DISCUSSION*

**3** Defendants have moved to dismiss the claims pursuant
to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon
which relief can be granted. A complaint should not be
dismissed unless "it appears 'beyond doubt that the
plaintiff can prove no set of facts in support of his claim[s]
which would entitle him to relief.'" *Elliott v. Bronson,* 872
F.2d 20, 22 (2d Cir. 1989) (quoting *Haines v. Kerner,* 404
U.S. 519, 520-21 (1972)); *Massop v. Coughlin,* 770 F.2d
299, 301 (2d Cir. 1985). In addition, the courts "must
construe pro se complaints liberally, applying less
stringent standards than when a plaintiff is represented by
counsel." *Elliott,* 872 F.2d at 21; *Gill v. Mooney,* 824 F.2d
192, 195 (2d Cir. 1987); *Williams v. Vincent,* 508 F.2d
541, 543 (2d Cir. 1974). Where a plaintiff acts pro se, a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

court must "read his supporting papers liberally, and... interpret them to raise the strongest arguments that they suggest." *Soto v. Walker,* 44 F.3d 169, 173 (S.D.N.Y. 1995). However, I also note that the Court of Appeals has stated that:

As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.

*Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). *See, e.g., Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir. 1988); *Ruderman v. Police Dep't of New York,* 857 F. Supp. 326, 330 (S.D.N.Y. 1994); *Saunders v. Coughlin,* No. 92 Civ. 4289 (SCH), 1994 WL 88108 at *3 (S.D.N.Y. Mar. 15, 1994).

I. Plaintiff's Failure to Allege that the Defendants *Are Personally Responsible for any Violations*

Greenwaldt has failed to allege how the defendants are personally responsible for the injustices he perceives. It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087 (1978). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986). The doctrine of *respondeat superior* is not applicable to § 1983 actions brought against corrections officers. *Monell v. Department of Social Serv. of New York,* 436 U.S. 658, 692 (1978); *Bass,* 790 F.2d at 263; *Candelaria v. Coughlin,* No. 93 Civ. 3212 (RWS), 1994 WL 119146 at *4 (S.D.N.Y. Apr. 4, 1994). Similarly, the fact that a defendant may have been in a "high position of authority" is an insufficient basis for the imposition of personal liability" under § 1983. *McKinnon,* 568 F.2d at 934; *see also Wright,* 21 F.3d at 501. There are a number of ways in which a defendant in a supervisory position may be found personally involved in, and therefore liable for, constitutional violations, including: (1) direct

participation, (2) failure to remedy a wrong after learning of it, (3) creation or tolerance of a policy under which unconstitutional practices occurred or were allowed to continue, or (4) gross negligence in managing subordinates who committed the violations. *Wright,* 21 F.3d at 501 (citations omitted).

**\*4** Greenwaldt's complaint and memorandum of law ("Pl.'s Mem." or "Memorandum in Opposition") are difficult to follow. He sets forth the facts at length, but mentions his various legal theories only briefly and without connecting those theories to his factual allegations. Thus, it is difficult to assess the merits of his case. However, construing the complaint liberally as I am constrained to do, I take it that Greenwaldt is displeased with various problems he claims to have faced at Woodbourne, including a misbehavior report, a disbursement and surcharge removed from Greenwaldt's account, and threats by a correctional officer to write up Greenwaldt. Greenwaldt also claims that the defendants failed to respond to his numerous letters. The defendants argue they cannot be said to have been personally involved in these alleged constitutional violations and, therefore, cannot be held liable.

In examining the complaint, it is apparent that the only connection between the defendants moving herein and the facts Greenwaldt recites are the numerous letters Greenwaldt claims to have sent the defendants. However, the defendants cannot be held liable on this basis. It is true that "supervisory liability may be imposed where an official demonstrates 'gross negligence' or 'deliberate indifference' to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place." *Wright,* 21 F.3d at 501. However, it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations. *E.g., id.; Murray v. Coughlin,* No. 91-CV-0476E(H), 1995 WL 128968 at *6 (W.D.N.Y. Mar. 15, 1995); *Cepeda v. Coughlin,* No. 91 Civ. 2469 (RWS), 1995 WL 23566 at *3 (S.D.N.Y. Jan. 19, 1995); *Clark v. Coughlin,* No. 92 Civ. 0920 (RWS), 1993 WL 205111 at *6 n.2 (S.D.N.Y. June 10, 1993), *aff'd,* 17 F.3d 391 (2d Cir. 1993); *Garrido v. Coughlin,* 716 F. Supp. 98, 100 (S.D.N.Y. 1989) (dismissing that portion of complaint against NYSDOCS Commissioner where his only alleged connection to the case was that "he ignored [plaintiff's]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

letter of protest and request for an investigation of the allegations made in [the] action"). To the extent that Greenwaldt relies upon his allegations that he sent letters to the defendants, his complaint must be dismissed.

In his Memorandum in Opposition, Greenwaldt contends that he does not rely solely on his letter-writing campaign to allege the personal involvement of the prison officials. Instead, he claims that he joined these defendants because (i) Coughlin directed an investigation by Keesler into Greenwaldt; (ii) the defendants implemented various policies that are not to Greenwaldt's liking; and (iii) Annucci failed to maintain the law library.[FN3] The second of these assertions is addressed *infra.* The first and third claims are too vague to withstand defendants' motion to dismiss. Greenwaldt has not made any "specific allegations of fact." *Barr v. Abrams,* 810 F.2d 358, 364 (2d Cir. 1987). In particular, I note that Greenwaldt has not explained how Annucci's alleged failure to maintain the law library has anything to do with the other defendants. Nonetheless, if Greenwaldt elects to do so, he may attempt to replead these allegations within thirty days of the date of this Memorandum and Order.[FN4]

II. *The Temporary Release Program*

A. *Conspiracy Claims*

*5 As stated *supra,* Greenwaldt claims that the defendants and numerous political figures, possibly including former Governor Cuomo, the Attorney General, and members of the New York State Senate and Assembly, were engaged in a conspiracy with respect to the temporary release program. (Am. Compl. ¶ 49.) In order to state a claim under § 1983 for conspiracy:

[T]he complaint must contain more than mere conclusory allegations. And while a plaintiff should not plead mere evidence, he should make an effort to provide some "details of time and place and the alleged effect of the conspiracy." Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; "[d]iffuse and expansive allegations are insufficient, unless amplified by

specific instances of misconduct."

*Dwares v. City of New York,* 985 F.2d 94, 99-100 (2d Cir. 1993) (citations omitted). *See also Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir. 1993); *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990) (dismissing plaintiff's claims that defendants conspired to deprive plaintiff of his constitutional rights where plaintiff made only "conclusory allegations" and "diffuse averments" without stating a factual basis for his claim or pleading overt acts indicating the existence of a conspiracy), *cert. denied,* 449 U.S. 937 (1991); *Zemsky v. City of New York,* 821 F.2d 148, 151 (2d Cir.), *cert. denied,* 484 U.S. 965 (1987). In the instant case, Greenwaldt's claim of conspiracy is insufficient to survive a motion to dismiss. It is entirely conclusory; Greenwaldt has failed to plead any factual basis indicating the existence of a conspiracy. Greenwaldt will not, however, be permitted to replead his conspiracy claim because, as explained *infra,* he has no protectible interest in the temporary release program.

B. *No Protected Interest*

Greenwaldt may not replead his conspiracy claim because he does not have a federally protected right to participate in New York's temporary release program. In order to state a claim under the due process clause, Greenwaldt must first allege that he was deprived of a property or liberty interest. Only if he claims such a protected interest is it necessary to go on to determine whether the deprivation of that interest occurred without the process that was due under the circumstances. *See generally Goss v. Lopez,* 419 U.S. 565 (1975); *Board of Regents v. Roth,* 408 U.S. 564 (1972); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061-62 (2d Cir.) (stating that "[i]n order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest"), *cert. denied,* 114 S. Ct. 185 (1993). In the instant case, Greenwaldt's claim fails because there is no protected right to participate in New York's temporary release program.

*6 It is well-settled that the Constitution itself does not confer a right for an inmate to be conditionally released before serving his full sentence. *Connecticut Bd. of*

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

*Pardons v. Dumschat,* 452 U.S. 458, 464 (1981); *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7 (1979) (stating that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). The question thus becomes whether New York conferred an enforceable liberty interest in its temporary release program.

In general, a state may create a protected liberty interest through the use of mandatory language and placement of substantive limits on the authority and discretion of state officials. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461-63 (1989); *Olim v. Wakinekona,* 461 U.S. 238, 249-51 (1983); *Klos v. Haskell,* No. 684, 93-2666, 1995 WL 64776 at *6 (2d Cir. Feb. 10, 1995). In order for the state to confer such a liberty interest:

(1) the state must have articulated specified "substantive predicates" which limit the discretion of state officials; and (2) it must have employed "explicitly mandatory language," requiring state officials to follow those substantive predicates.

*Klos,* 1995 WL 64776 at *6.

Turning to New York's temporary release program, it is clear that prisoners do not have a protected interest in being admitted to this program. Neither the governing statute, Correction Law § 851 *et seq.,* nor the regulations, 7 N.Y.C.R.R. § 1900 *et seq.,* contain any assurance of admission into the program. In fact, it is stated explicitly that there are no guarantees of admission:

Participation in the temporary release program shall be a privilege. Nothing contained in this article may be construed to confer upon any inmate the right to participate, or to continue to participate, in a temporary release program.

Correction Law § 855(9). Nothing in the regulations concerning the temporary release program confers a protected entitlement. *See* 7 N.Y.C.R.R. § 1900 *et seq.* In addition, courts that have considered whether inmates in

New York have a protected interest in the temporary release program have consistently held that they do not. *See, e.g., Dugar v. Coughlin,* 613 F. Supp. 849, 854-57 (S.D.N.Y. 1985); *Martino v. Gard,* 526 F. Supp. 958, 960 (E.D.N.Y. 1981); *McCormack v. Posillico,* No. 71654, 1995 WL 122170 at *1 (3d Dep't Mar. 23, 1995); *Grant v. Temporary Release Committee,* 619 N.Y.S.2d 106, 106 (2d Dep't 1994); *Szucs v. Recore,* 618 N.Y.S.2d 473, 473 (3d Dep't 1994); *Walker v. Le Fevre,* 598 N.Y.S.2d 345, 345 (3d Dep't 1993). Consequently, Greenwaldt's claim that he was denied due process in connection with the temporary release program is dismissed without leave to replead.

### III. *Visitation Policy*

Greenwaldt is disgruntled with the NYSDOCS visitation policy. (Am. Compl. ¶ ¶ 4-6, 8-10.) It appears that Greenwaldt is most displeased about the fact that visits are permitted daily at maximum security facilities but only on weekends and holidays at medium and minimum security facilities. The Supreme Court unambiguously has rejected the argument that "an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989). The question thus becomes whether New York has created a protected interest in visitation. *Klos v. Haskell,* No. 684, 93-2666, 1995 WL 64776 at *6 (2d Cir. Feb. 10, 1995). It appears that New York has done so. *See Kozlowksi v. Coughlin,* 871 F.2d 241, 242 (2d Cir. 1989) (explaining that the District Court had ruled that a "state-created liberty interest in prison visitation rights existed, and that proper process was due prior to curtailment of these rights"); *Ricco v. Coughlin,* No. 92-CV-0632E(H), 1995 WL 128959 at *1 (W.D.N.Y. Mar. 15, 1995); *Daniels v. Walker,* No. 93-CV-570, 1995 WL 88186 at *5 (N.D.N.Y. Mar. 1, 1995).

*7 However, to recognize that inmates have a protected interest in visitation is not to say that the NYSDOCS policy infringe upon that interest. The District Court has considered and rejected a virtually identical claim to Greenwaldt's in an earlier decision, *Windley v. Cuomo,* No. 91 Civ. 3774 (TPG), 1992 WL 123172 at *2 (S.D.N.Y. May 27, 1992). In that case, a prisoner at a New York state facility complained that the facility's elimination of weekday visitation violated his rights under

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

the First Amendment, the Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment. *Id.* at *1. Visitation was, however, permitted on weekends and state holidays. *Id.* The District Court dismissed plaintiff's due process claim, explaining that:

Plaintiff's Fourteenth Amendment claim is also without substance. It is true that "[t]he State of New York, by judicial decision, administrative regulation and departmental directive, has granted its prisoners a protected liberty interest in receiving visits from persons of their choice." *Kozlowski v. Coughlin,* 539 F. Supp. 852, 856-57 (S.D.N.Y. 1982). Neither the *Kozlowski* decision nor any provision of state or federal law, however, forbids reasonable regulation of visiting hours by prison officials. There is no showing that the regulation here exceeds the bounds of reasonableness.

*Id.* This reasoning is equally applicable to the instant case, where the policy is the same, *i.e.,* visitation is permitted on the weekends and holidays. Thus, Greenwaldt's claims regarding visitation policy are dismissed with prejudice.

IV. *Equal Protection Claims*

Greenwaldt argues in his Memorandum in Opposition that his complaint should not be dismissed because, he claims, the defendants have violated the Equal Protection Clause of the Fourteenth Amendment with respect to visitation policy and the temporary release program. (Pl.'s Mem. at 7). Greenwaldt claims in his Memorandum in Opposition that:

Plaintiff can *decisively* demonstrate, if permitted to proceed with discovery, that discrimination exists under the rules, regulations, practices and policies of the defendants in relation to visits, temporary release, disciplinary programs, etc.

(Pl.'s Mem. at 7-8 (emphasis in original).)

Greenwaldt's claims that he will be able to establish discrimination by the defendants if he is permitted to

engage in discovery does not preclude dismissal of his equal protection claims at this time. Greenwaldt's equal protection claims are properly dismissed at this time because they are vague and inconclusive. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). If Greenwaldt seeks to do so, he may replead his equal protection claims within thirty days.

*CONCLUSION*

With respect to the defendants moving herein, *i.e.,* Coughlin, Annucci, Butler, Coombe, Recore, and Hanslmaier, Greenwaldt's complaint is dismissed with prejudice in its entirety, with the limited exception of those particular claims that Greenwaldt has been granted leave to replead within thirty days. That is, within thirty days of the date of this Memorandum and Order, Greenwaldt may replead his allegations that Coughlin directed an investigation by Keesler into Greenwaldt, that Annucci failed to maintain the law library, and that the defendants violated his right to equal protection with respect to visitation policy and the temporary release program.

FN1. Reference is made to the Amended Complaint dated February 25, 1994.

FN2. Inmates whose names begin with letters A-L would have visitations on Saturday, and those whose names begin with letters M-Z on Sunday. On the following weekend, the order would be reversed. (Am. Compl. ¶4.)

FN3. As Greenwaldt puts it in his memorandum:

In the present case, COMMISSIONER COUGHLIN not only learned of the deprivations through letters from the plaintiff; but went so far as to direct an investigation by the defendant KEESLER. Exactly what more plaintiff must do to show that the Commissioner has direct knowledge and is condoning his subordinates [sic] actions or lack of actions, as the case may be, is beyond

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

the comprehension of the plaintiff.... Plaintiff does not join the Commissioner of Correctional Services and three Deputy Commissioners by virtue of their failure to respond to plaintiff's complaints in letters addressed to them respectively. He (plaintiff) joins the Commissioner and the three Deputy Commissioners by virtue of the investigation ordered by COMMISSIONER COUGHLIN and the implementation of various policy Directives signed and ordered by the Deputy Commissioners and condoned by the Commissioner.... Counsel either fails to understand the responsibilities of either the Commissioner or the three Deputy Commissioners or, while understanding their respective responsibilities would rather distort the factual position of the plaintiff. The perfect example of the above is Deputy Commissioner Annucci's total disregard of his responsibility to maintain the law libraries with the proper materials.

(Pl.'s Mem. at 3-4.) I note that Greenwaldt's allegations regarding the investigation and the law library are glaringly absent from the complaint.

FN4. I note that it may be that, if pleaded properly, Greenwaldt's claim that Annucci failed to maintain the law library might state a claim. For example, it has been held that:

Prisoners have a constitutional right of access of the courts. Thus prison authorities must assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. The right of access to the courts must ensure that prisoners have a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. Courts have held that prisoners do not have a right to access law books per se, but must be provided with any of several methods designed to provide meaningful access to the courts

including the use of trained legal assistants.

*Bellamy v. McMickens,* 692 F. Supp. 205, 214 (S.D.N.Y. 1988). *See Morello v. James,* 810 F.2d 344, 347 (2d Cir. 1987) (stating that "[w]here a prisoner chooses to proceed pro se with his appeal, the state is required to provide affirmative assistance in the form of adequate law libraries or trained legal assistance"). However, Greenwaldt's allegations are, again, too conclusory to assess, and must be dismissed.

S.D.N.Y. 1995
Greenwaldt v. Coughlin
Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. *See* Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER [FN1]

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.[FN2] In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

## I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. Id. at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. Id. at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. Id. at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. Id. at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. Id. at ¶¶ 22, 27-28.

## II. Motion to Dismiss

**\*2** When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Staton v. McDonald's Corp., 51 F.3d 353, 355 (2d Cir.1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

## III. Discussion

### A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); Rhodes v. Chapman, 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. Farmer, 511 U.S. at 837.

### 1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,*524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware that* there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at \*3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at \*3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 1286800 (D.Conn.)
(Cite as: 2010 WL 1286800 (D.Conn.))

C

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Thomas MAY, Plaintiff,
v.
Miguel DeJESUS, Correctional Officer, Defendant.
**No. 3:06CV1888 (AWT).**

March 30, 2010.

Thomas J. May, Machiasport, ME, pro se.

Matthew B. Beizer, Attorney General's Office, Hartford, CT, for Defendant.

### *RULING ON MOTION FOR SUMMARY JUDGEMENT*

ALVIN W. THOMPSON, District Judge.

**\*1** The plaintiff, Thomas May, who is currently incarcerated at Maine State Prison in Warren, Maine, commenced this civil rights action *pro se* and *in forma pauperis* against the defendant, Correctional Officer Miguel DeJesus. The plaintiff claims that the defendant deprived him of basic human needs in violation of the Eighth and Fourteenth Amendment, which resulted in physical injury and emotional distress. The defendant has moved for summary judgment on all claims. For the reasons set forth below, the motion for summary judgment is being granted.

**I. Facts**

In December 2004, the plaintiff underwent hemorrhoid surgery. Following the surgery, Dr. Ruiz, a prison physician, prescribed Ducosate Sodium, a laxative, to be taken by the plaintiff twice a day from December 9, 2004 until March 29, 2005.

In March 2005, the defendant was employed as a Correctional Officer at Osborn Correctional Institution ("Osborn") in Somers, Connecticut where the plaintiff, a sentenced inmate, was incarcerated. On March 14, 2005, the plaintiff was scheduled to participate in a trial in a case filed in the United States Bankruptcy Court in New Haven, Connecticut. Department of Correction officials assigned the defendant to transport the plaintiff in a prison van from Osborn to the Bankruptcy Court in New Haven, a distance of approximately 65 miles. The plaintiff had taken his prescribed laxative medication prior to the trip to New Haven. The plaintiff and the defendant were the only occupants in the prison van. The plaintiff wore handcuffs and leg shackles during the trip to and from New Haven.

The plaintiff avers that, at the beginning of the trip to New Haven, the defendant did not ask him whether he had to use the bathroom and did not instruct him to use the bathroom. The plaintiff avers that "[i]f [the defendant] had asked or instructed me, I would have told [the defendant] that I did not need to use a bathroom, because at that time I had no urge to defecate or urinate." (Thomas J. May Affidavit (Doc. No. 27 Ex. 2) ("May Aff.") ¶ 9) Approximately 45 to 60 minutes into the trip to New Haven, the plaintiff informed the defendant that he needed to defecate and asked the defendant to stop the van at the Cheshire Correctional Institution so that he could use the bathroom. The defendant did not stop the van and the plaintiff defecated in his pants. The plaintiff was forced to sit in his soiled pants for 15 to 30 minutes until the van arrived at the courthouse in New Haven.

Upon his arrival at the courthouse, Deputy United States Marshals permitted the plaintiff to throw out his soiled pants, underwear and socks, take a shower and change into a new pair of pants. The United States Marshals' Service did not provide the plaintiff with a new pair of socks. The bankruptcy proceeding lasted approximately two hours. Thereafter, the plaintiff was placed in leg shackles and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1286800 (D.Conn.)
(Cite as: 2010 WL 1286800 (D.Conn.))

handcuffs for the return trip to Osborn.

The plaintiff avers that, at the beginning of the return trip
to Osborn, the defendant did not ask him whether he had
to use the bathroom and did not instruct him to use the
bathroom. The plaintiff avers that "[i]f [the defendant] had
instructed or asked me, I would have told [the defendant]
that I did not need to use a bathroom, because at that time
I had no urge to urinate or defecate." (May Aff.¶ 29)
Approximately 60 minutes into the return trip, the plaintiff
informed the defendant that he had to urinate and asked
the defendant to stop the van at the Hartford Correctional
Center or MacDougall-Walker Correctional Institution in
Suffield so that he could use a bathroom. The defendant
did not stop the van and the plaintiff urinated in his pants.
The plaintiff sat in his urine-soaked pants for 15 to 30
minutes, before the van arrived at Osborn. Upon his
arrival at Osborn, the plaintiff was escorted back to his
cell.

*2 The plaintiff suffered a small abrasion, approximately
1/4 inch by 1/8 inch in size on his left ankle where the leg
shackle rubbed against his skin during the return trip to
Osborn. On March 24, 2005, a nurse examined the
plaintiff's ankle and noted a small, well-healed scab on the
front of the ankle, no sign of infection, redness or swelling
and excellent range of motion. The nurse recommended
follow-up as needed.

**II. Legal Standard**

A motion for summary judgment may not be granted
unless the court determines that there is no genuine issue
of material fact to be tried and that the facts as to which
there is no such issue warrant judgment for the moving
party as a matter of law. Fed.R.Civ.P. 56(c). See Celotex
Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548,
91 L.Ed.2d 265 (1986); Gallo v. Prudential Residential
Servs., 22 F.3d 1219, 1223 (2d Cir.1994). When ruling on
a motion for summary judgment, the court may not try
issues of fact, but must leave those issues to the jury. See,
e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255,
106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Donahue v.
Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d
Cir.1987). Thus, the trial court's task is "carefully limited
to discerning whether there are any genuine issues of

material fact to be tried, not to deciding them. Its duty, in
short, is confined ... to issue-finding; it does not extend to
issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be
resolved is both genuine and related to a material fact.
Therefore, the mere existence of some alleged factual
dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment. An
issue is "genuine ... if the evidence is such that a
reasonable jury could return a verdict for the nonmoving
party." Anderson, 477 U.S. at 248 (internal quotation
marks omitted). A material fact is one that would "affect
the outcome of the suit under the governing law."
Anderson, 477 U.S. at 248. Only those facts that must be
decided in order to resolve a claim or defense will prevent
summary judgment from being granted. Immaterial or
minor facts will not prevent summary judgment. See
Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d
Cir.1990).

When reviewing the evidence on a motion for summary
judgment, the court must "assess the record in the light
most favorable to the non-movant and ... draw all
reasonable inferences in its favor." Weinstock v. Columbia
Univ., 224 F.3d 33, 41 (2d Cir.2000)(quoting Delaware &
Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174,
177 (2d Cir.1990)). However, the inferences drawn in
favor of the nonmovant must be supported by the
evidence. "[M]ere speculation and conjecture" is
insufficient to defeat a motion for summary judgment.
Stern v. Trustees of Columbia University, 131 F.3d 305,
315 (2d Cir.1997) (quoting Western World Ins. Co. v.
Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir.1990)).
Moreover, the "mere existence of a scintilla of evidence in
support of the [nonmovant's] position" will be insufficient;
there must be evidence on which a jury could "reasonably
find" for the nonmovant. Anderson, 477 U.S. at 252.

*3 Where one party is proceeding pro se, the court reads
the pro se party's papers liberally and interprets them to
raise the strongest arguments suggested therein. See
Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994).
Despite this liberal interpretation, however, an
unsupported assertion cannot overcome a properly
supported motion for summary judgment. Carey v.
Crescenzi, 923 F.2d 18, 21 (2d Cir.1991).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1286800 (D.Conn.)
(Cite as: 2010 WL 1286800 (D.Conn.))

## III. Discussion

The plaintiff contends that the defendant's failure to stop the van on the way to and from the courthouse to permit him to use the bathroom, which also resulted in injury from the application of leg shackles to his bare ankles, constituted a violation of his right to be free from unconstitutional conditions of confinement. The plaintiff also contends that he suffered humiliation and emotional distress as a result of the violation.[FN1]

> **FN1.** Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Although the plaintiff had undergone hemorrhoid surgery and was taking medication because of the surgery, he did not include a claim of deliberate indifference to medical needs in his complaint. The court does not construe the complaint as raising such a claim because even if the plaintiff could prove his medical condition was serious, he does not contend that the defendant was aware of this medical condition or of the fact that the plaintiff was taking medication. Thus, the plaintiff could not show that the defendant was deliberately indifferent to that condition.

The defendant moves for summary judgment on the ground that the plaintiff has failed to produce evidence that could show he was subjected to unconstitutional conditions of confinement during the trip to and from the courthouse.

## A. Constitutional Violation: Conditions of Confinement

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components-one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009).

In *Gill v. Riddick,* No. Civ. 9:03-CV-1456, 2005 WL 755745 (March 31, 2005), the court stated:

> A prisoner alleging that a certain prison condition constitutes cruel and unusual punishment must prove both an objective and subjective element, specifically, the inmate must show that the deprivation at issue is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of life's necessities, and that the defendant possessed a sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain.... The objective component of an Eighth Amendment violation must be evaluated based on the severity of the deprivation imposed.... When considering whether a particular condition is so serious as to invoke the Eighth Amendment, a court should assess the duration of the condition and the potential for serious physical harm.... To prove the second, subjective component, a prisoner must establish that the person who inflicted the unconstitutional condition was deliberately indifferent to the severe deprivation.

*Id.,* at *16(internal quotation marks and citations omitted). "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient" to state a claim of unconstitutional conditions of confinement. *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999).

**\*4** The defendant contends that the plaintiff has not met either the objective or the subjective component of the Eighth Amendment test because, as to the objective component, he has not produced evidence that he suffered an unconstitutional deprivation during his trip to or from the courthouse in New Haven, and, as to the subjective component, he has not produced evidence that the defendant acted with the requisite state of mind. The court concludes that the plaintiff has failed to create a genuine

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1286800 (D.Conn.)
(Cite as: 2010 WL 1286800 (D.Conn.))

issue of fact as to the objective component and, for that reason, the defendant is entitled to summary judgment.

"To satisfy the objective component of an Eighth Amendment conditions of confinement claim, Plaintiff must show that the conditions alleged, either alone or in combination, deprive him of 'the minimal civilized measure of life's necessities,' such as adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Alvarez v. County of Cumberland,* Civil No. 07-346(RBK), 2009 WL 750200, *4 (D.N.J. March 18, 2009) (citation omitted). "To the extent that certain conditions are only 'restrictive' or 'harsh,' they are merely part of the penalty that criminal offenders pay for their offenses against society." *Id.*

In addition, an important consideration in determining whether a particular condition deprived an inmate of a basic human need or life necessity is the duration of the condition. *See e.g., Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir.1996) (holding that inmate's confinement in cell for four days with overflowed toilet, during which time he endured stench of his own feces and urine, did not rise to level of Eighth Amendment violation); *Davis v. Scott,* 157 F.3d 1003, 1006 (5th Cir.1998)(holding that inmate being placed in cell with blood on walls and excretion on floors for three days did not meet objective component of Eighth Amendment, especially in view of fact that cleaning supplies were made available to him); *Hutto v. Finney,* 437 U.S. 678, 687-88, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)("A filthy overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Wright v. McMann,* 387 F.2d 519, 526 (2d Cir.1967) ( "civilized standards of humane decency ... do not permit" an inmate to be placed in a filthy, unheated strip cell and deprived of clothes and basic hygiene items such as soap and toilet paper for a substantial period of time, i.e., 33 days).

The defendant concedes that unsanitary conditions, including lack of access to toilet paper or a properly functioning toilet, may constitute a severe deprivation of a basic human need. *See e.g., LaReau v. MacDougall,* 473 F.2d 974, 978 (2d Cir.1972) (confinement for five days in strip cell with only a pit toilet and without light, a sink or other source of water violated minimum standards of human decency required by Eighth Amendment); *Wright,*

387 F.2d at 522, 526 (conditions of confinement in strip cell including denial of toilet paper for 33 days violated Eighth Amendment). The defendant contends, however, that depriving the plaintiff of the use of a bathroom for two short periods of time did not constitute an extreme deprivation of a basic human need.

**\*5** Courts in this and other circuits have consistently held that an occasional or temporary deprivation of toilet use, does not constitute an extreme deprivation of a basic human need or necessity of life. *See Jones v. Marshall,* No. 08 Civ. 0562, 2010 WL 234990, at *3 (S.D.N.Y. Jan.19, 2010) (denial of right to use bathroom for 90 minutes did not "establish the existence of an objective injury for purposes of Eighth Amendment claim"); *Rogers v. Laird,* Civ. No. 9:07-CV-668 (LEK/RFT), 2008 WL 619167, at *3 (N.D.N.Y. Feb.8, 2008) (denial of use of restroom during three hour trip to and from court causing inmate to urinate on himself did not "constitute an extreme deprivation of life's necessities"); *Simpson v. Wall,* 2004 WL 720276, at *3 (W.D.Wis. Mar.29, 2004) ("Sitting in one's feces for sixty to eighty miles cannot be said to present a risk of serious harm."); *Bourdon v. Roney,* 2003 WL 21058177, at *10-11 (N.D.N.Y. Mar.6, 2003) (three hours without bathroom privileges is not deprivation of minimal necessities of life); *Whitted v. Lazerson,* No. 96 Civ. 2746(AGS), 1998 WL 259929, at * 2 (S.D.N.Y. May 21, 1998) (temporary deprivation of use of toilet for 90 minutes at most, in the absence of serious physical injury, did not constitute denial of necessities of life).

In reaching this conclusion, courts have considered whether the deprivation of toilet use resulted in unsanitary conditions that posed a significant risk to the inmate's health. *See Gill,* 2005 WL 755745, at *16 (inmate who urinated on himself as result of denial of use of bathroom during trip to prison failed to satisfy objective element of Eighth Amendment because denial was temporary-70 minutes-and he suffered no injury to his health); *Qawi v. Howard,* No. Civ. A. 98-220-GMS, 2000 WL 1010281, at *3-4 (D.Del. Jul.7, 2000) (denial of use of bathroom for six hours during which inmate forced to urinate in drinking cup and bowl and defecate into a paper bag did not constitute sufficiently serious deprivation because duration of condition was brief and inmate suffered no significant health risk); *Odom v. Keane,* No. 95 Civ. 9941, 1997 WL 576088, at *4-5 (S.D.N.Y. Sept.17, 1997) (lack of a working toilet in prison cell for approximately 10

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1286800 (D.Conn.)
(Cite as: 2010 WL 1286800 (D.Conn.))

hours, absent an allegation that the prisoner risked contamination by contact with human waste, "does not rise to the level of cruel and unusual punishment").

Although the plaintiff was forced to sit in pants that were soiled with feces for up to 30 minutes on the way to court, he was permitted to clean himself and change his clothes when he arrived at the courthouse and before he was required to appear in court. Despite the fact that the plaintiff had to sit in urine-soaked pants for up to 30 minutes on the trip back to Osborn, there is no evidence to suggest that he was not able to wash himself and change his clothes after officers escorted him to his cell. Furthermore, other than a minor abrasion on his ankle, there is no evidence to suggest that the plaintiff suffered any contamination or risk to his health as a result of having to sit in pants soiled with feces and soaked with urine. There is no aspect of the conditions described by the plaintiff that could satisfy the objective element of the Eighth Amendment standard. The conditions were temporary and did not constitute an extreme deprivation of basic human need or the minimal civilized measure of life's necessities.

**\*6** The plaintiff fails to create a genuine issue of fact as to whether he can satisfy the objective component of the Eighth Amendment test, so it is not necessary to reach subjective component. Accordingly, the defendant's motion for summary judgment is being granted on this ground.

**B. Emotional Distress**

The plaintiff asserts that the defendant subjected him to emotional distress and humiliation because he was forced to walk into the courthouse in front of the Deputy United States Marshals in soiled pants and was escorted through a crowded prison gymnasium and housing unit on the way back to his cell at Osborn in urine-soaked pants. Having granted summary judgment on the plaintiff's sole federal claim, the court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over the plaintiff's state law claims for negligent or intentional infliction of emotional distress. *See Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003)("[I]n the usual case in which all federal-law claims are eliminated

before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.")(quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

**IV. Conclusion**

For the reasons set forth above, the defendants' Motion for Summary Judgment **(Doc. No. 24)** is hereby **GRANTED.** The Clerk is directed to enter judgment in favor of the defendant and close this case.

It is so ordered.

D.Conn.,2010.
May v. DeJesus
Slip Copy, 2010 WL 1286800 (D.Conn.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 750200 (D.N.J.)
(Cite as: 2009 WL 750200 (D.N.J.))

▷
Only the Westlaw citation is currently available.NOT
FOR PUBLICATION

United States District Court, D. New Jersey.
Julio ALVAREZ, Jr., Plaintiff,
v.
COUNTY OF CUMBERLAND, et al, Defendants.
**Civil No. 07-346 (RBK).**

March 18, 2009.

West KeySummary
**Federal Civil Procedure 170A** 🔑      **2491.5**

170A Federal Civil Procedure
 170AXVII Judgment
  170AXVII(C) Summary Judgment
   170AXVII(C)2 Particular Cases
    170Ak2491.5 k. Civil Rights Cases in
General. Most Cited Cases
Genuine issues of material fact existed as to the conditions
of an inmate's confinement in an isolation unit at a county
jail. Therefore, summary judgment was precluded in an
action for an Eighth Amendment conditions of
confinement claim. The inmate spent three days in his
isolation cell without working plumbing and with a toilet
overflowing with feces, urine, and other materials. The
inmate also pointed to evidence that he contracted
methicillin-resistant staphylococcus aureus (MRSA) while
in isolation to show that he lived and slept exposed to
feces in his cell. U.S.C.A. Const.Amend. 8; 42 U.S.C.A.
§ 1983.

Richard A. Stoloff, Law Offices of Richard A. Stoloff,
Linwood, NJ, for Plaintiff.

Steven L. Rothman, Lipman, Antonelli, Batt, Dunlap,
Wodlinger & Gilson, Vineland, NJ, Nancy L. Siegel,
White & Williams, LLP, Cherry Hill, NJ, for Defendants.

**OPINION**

ROBERT B. KUGLER, District Judge.

**\*1** This matter comes before the Court on a motion by
Defendants County of Cumberland, Cumberland County
Board of Chosen Freeholders, Cumberland County
Department of Corrections, Cumberland County Sheriff's
Department, Kenneth Lamcken, Michael Palau, Glenn
Saunders, and Lewis Walker (collectively, "the County
Defendants") for partial summary judgment on the
Complaint of Plaintiff Julio Alvarez, Jr. ("Plaintiff") and
on a motion by Defendant Prison Health Services, Inc.
("PHS") for summary judgment on Plaintiff's Complaint.
Plaintiff's Complaint includes allegations that the County
Defendants and PHS acted negligently and violated
Plaintiff's civil rights pursuant to 42 U.S.C. §§ 1983,
1985(3). The County Defendants only move for summary
judgment on Plaintiff's civil rights claims against them.
For the reasons expressed below, the Court will grant in
part and deny in part the County Defendants' motion and
grant Prison Health Services' motion.

**I. BACKGROUND**

The allegations in Plaintiff's Complaint arise from events
that occurred while he was an inmate at the Cumberland
County Correctional Facility ("Cumberland County Jail").
Plaintiff was placed in an isolation unit at the Cumberland
County Jail on or about January 28, 2005 and released
from isolation on or about February 2, 2005. Plaintiff's
isolation cell measured six feet by eight feet and was the
middle cell in a group of three adjacent isolation cells in
the unit. The cells on either side of Plaintiff's had working
toilets and sinks. However, the parties agree that the toilet
and sink in Plaintiff's original cell was in a state of
disrepair at the time of his placement in isolation. Other
inmates occupied the adjacent isolations cells, which
contained working toilets and sinks. For the purposes of
summary judgment, the parties agree that Plaintiff's toilet
in isolation was not only non-functional, but also filled to
the point of overflowing with urine, feces, and trash.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 750200 (D.N.J.)
(Cite as: 2009 WL 750200 (D.N.J.))

While in his original isolation cell, Plaintiff urinated in a Styrofoam cup which he then emptied into the broken sink so as not to cause the toilet to overflow onto the floor. Plaintiff defecated in the toilet, only after removing from it pieces of plastic and cardboard, which he placed on the floor of the cell. Plaintiff used the toilet by squatting over it, attempting to avoid touching the toilet seat.

Plaintiff was not provided with cleaning products with which to clean the isolation cell himself, nor was it cleaned by someone else while Plaintiff occupied it. Plaintiff was not provided equipment to use to empty the toilet or sink. At one time during his stay, a corrections officer did attempt to fix the toilet but was unsuccessful. Plaintiff did not ask to use a toilet outside his cell. Plaintiff alleges, and the County Defendants refute, that he did not ask because there was not a guard available to whom Plaintiff could have made such a request. Plaintiff was allowed to shower twice during his time in the original cell. The County Defendants argue that Plaintiff had frequent access to corrections officer, including at the time of his showers.

*2 Plaintiff contends that on February 1, 2005, one day before he was released from isolation, he transferred himself, with the permission of the guards, to an adjacent isolation cell with working plumbing. Plaintiff further contends that he could not have moved to an adjacent cell until February 1 because both adjacent cells were occupied from the time of Plaintiff's arrival in the isolation unit until that date. The County Defendants do not agree to the date of Plaintiff's self-transfer, but agree that he did so at some point during the time he was in isolation.

Plaintiff was released from isolation on February 2, 2005, at which time he was seen by a nurse to be treated for boils. He was seen by a doctor on February 4, 2005, at which time he had developed 10 lesions over his buttocks, legs, and penis. Plaintiff was placed in a medical isolation cell with other prisoners until February 9, 2005 when he was sent to the hospital to be treated for his lesions. Plaintiff stayed at the hospital eight days and underwent surgery. Plaintiff's medical expert reports that Plaintiff was infected with methicillin-resistant staphylococcus aureus ("MRSA") at least in part due to his exposure to waste

matter in his isolation cell and his inability to wash after touching contaminated surfaces. (Pl.Opp.Ex. B.)

Plaintiff and the County Defendants agree that in 2005, the Cumberland County Jail was overcrowded. Further, Plaintiff presents the deposition testimony of Defendant Kenneth Lamcken, who was responsible for maintenance at the Cumberland County Jail in 2005. Lamcken testified that there were times in 2005 when toilets in isolation units were broken, but that inmates were placed in cells with broken toilets. He further testified that those inmates often defecated on the floor of the cell. (Pl.Opp.Ex. C.) The County Defendants do not contest Lamcken's testimony in their reply brief.

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U .S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. *Id.* at 331.

*3 Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material

Slip Copy, 2009 WL 750200 (D.N.J.)
(Cite as: 2009 WL 750200 (D.N.J.))

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

## III. ANALYSIS

### A. The County Defendants' Motion

The County Defendants move for partial summary judgment on Plaintiff's constitutional claims against the County Defendants in Count IV of the Complaint.

### 1. Plaintiff's Fifth Amendment Claim

Plaintiff's Fifth Amendment claim does not present a genuine issue for trial and will be dismissed. The County Defendants move for summary judgment on Plaintiff's claim that they violated his constitutional rights guaranteed under the Fifth Amendment, contending that there is no genuine issue of material fact regarding a Fifth Amendment violation because Plaintiff has no evidence to support such a claim. Plaintiff has provided no argument to refute the motion on this point and thus presents no evidence to satisfy his burden. *See* Fed.R.Civ.P. 56(e). Finding no genuine issue of material fact, the Court will grant summary judgment for the County Defendants on Plaintiff's Fifth Amendment claim.

### 2. Plaintiff's Eighth Amendment Claim

The County Defendants move for summary judgment on Plaintiff's claim that they violated his Eighth Amendment rights. There are genuine issues of fact regarding the conditions of Plaintiff's confinement at the Cumberland County Jail, so Plaintiff's Eighth Amendment claims will survive summary judgment.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff

must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Prisoners have a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment. The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). In its prohibition of "cruel and unusual punishments, the Eighth Amendment ... imposes duties on [prison] officials, who must provide humane reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer,* 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); see *Helling,* 509 U.S. at 31-32; *Washington v. Harper,* 494 U.S. 210, 225, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. *Rhodes,* 452 U.S. at 346, 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." *Rhodes,* 452 U.S. at 346 (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)).

**\*4** To state a claim under the Eighth Amendment, an inmate's allegation must include both an objective and a subjective component. *See Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." *Helling,* 509 U.S. at 32 (quoting *Rhodes,* 452 U .S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The subjective component requires that the state actor have acted with "deliberate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 750200 (D.N.J.)
(Cite as: 2009 WL 750200 (D.N.J.))

indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. *Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Wilson, 501 U.S. at 303.*

To satisfy the objective component of an Eighth Amendment conditions of confinement claim, Plaintiff must show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *See Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir.1992).* To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. *See Rhodes,* 452 at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." *Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J.1997).* An official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer, 511 U.S. at 837.*

In *Young,* the Third Circuit reversed the district court, which granted summary judgment for the defendant on plaintiff's claims regarding the conditions of his confinement. *See Young, 960 F.2d at 353.* In that case, Young was a federal prisoner who allegedly suffered continuous physical and psychological abuse by his cellmates. *Id. at 353-54.* In response to threats from one cellmate, Young stopped up his cell toilet, consequently flooding the cell. *Id. at 355.* As punishment, Young was placed in a dry cell, one without a toilet or running water, for ninety-six hours. *Id.* In addition, Young was not provided with toilet paper. *Id.* During the first twenty-nine hours of his confinement in the dry cell, Young asked repeatedly for a urinal and for permission to leave his cell to defecate. *Id.* Not receiving same, Young relieved himself in his cell. *Id.* Young was finally provided with a urinal and allowed to leave his cell to defecate, only after having been confined in the dry cell for twenty-nine hours. *Id.* The following day, Young again requested permission to leave his cell to defecate, but his requests were ignored or rejected. *Id.*

*5 When the Third Circuit considered whether Young had raised a genuine question of fact regarding the constitutionality of his confinement, it applied the standard described *supra. Id.* at 360. Specifically, the court noted that "inhumane prison conditions, including prolonged isolation in dehumanizing conditions ... and unsanitary conditions have ... been found to be cruel and unusual under contemporary standards of decency." *Id.* at 363. Further, the court explained that "segregated detention is not cruel and unusual punishment per se, as long as the conditions of confinement are not foul, inhuman or totally without penological justification." *Id.* at 364 (*citing Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir.1984); Ford v. Board of Managers of New Jersey State Prison, 407 F.2d 937, 940 (3d Cir.1969); Mims v. Shapp, 399 F.Supp. 818, 822 (W.D.Pa.1975)*). Noting that "the touchstone [of the constitutional analysis] is the health of the inmate," the court determined that the conditions of Young's confinement worked a deprivation of the basic necessities of human existence and thus were sufficient to satisfy the objective prong of the analysis. *Young, 960 F.2d at 364.* Indeed, the court opined that "it would be an abomination of the Constitution to force a prisoner to live in his own excrement for four days." *Id. at 365.* Turning to the subjective prong of the Eighth Amendment analysis, the court found that among other questions, it was a genuine issue whether or not "prison officials were deliberately indifferent to Young's requests for a minimal amount of relief," and so summary judgment by the district court had been inappropriately granted. *Id.*

The facts of the instant case appear similar to Young's allegations regarding the toilet facilities in his dry cell.[FN] As to the objective component of the analysis in Alvarez's case, the conditions of his confinement in isolation were similar to Young's. Plaintiff spent three days in his isolation cell without working plumbing and with a toilet overflowing with feces, urine, and other materials. Although the Plaintiff in this case does not claim, as Young did, that he explicitly was denied access to alternate toilet facilities, he does contend that the guards generally were unavailable to respond to his request for alternate facilities. In support of his contention, Plaintiff points to his own deposition testimony in response to the question, "Did you ever ask the guard to go someplace to use the bathroom?" Plaintiff's answer was, "They wouldn't come back there. What they are saying is all a lie." (Pl.Opp.Ex. A.) Plaintiff further points to evidence that he contracted MRSA, specifically boils in his groin area,

Slip Copy, 2009 WL 750200 (D.N.J.)
(Cite as: 2009 WL 750200 (D.N.J.))

while in isolation to show that he lived and slept exposed
to feces in his cell.

> FN1. To be sure, Young made numerous other
> allegations regarding his treatment in isolation,
> although for the purposes of this Court's analysis,
> we will consider the parallels to Young's and
> Alvarez's claims regarding toilet facilities.

The County Defendants contest Plaintiff's version of
events, alleging that Plaintiff never asked to use alternate
toilet facilities and was allowed to shower at least twice
(which Plaintiff admits, but the County Defendants
contend provided Plaintiff an opportunity to ask for
alternate toilet facilities). The Court finds the facts of this
case sufficiently similar to those in *Young* to find that the
objective prong of the Eighth Amendment analysis is
satisfied. So too, are there genuine issues of material fact
as to the knowledge and response of prison officials.
Summary judgment would thus be inappropriate on the
Eighth Amendment claims.

**3. Plaintiff's Fourteenth Amendment Claim**

**\*6** Plaintiff's Fourteenth Amendment claim, insofar as it
supports Plaintiff's Eighth Amendment claim, will remain
before the Court, although summary judgment is
appropriate as to any other Fourteenth Amendment claim.
The County Defendants move for summary judgment on
Plaintiff's Fourteenth Amendment claim on two grounds:
(1) that the County Defendants did not violate Plaintiff's
due process rights and (2) that Plaintiff's Fourteenth
Amendment claim cannot stand on its own without
Plaintiff's Fifth and Eighth Amendment claims. In
response, Plaintiff contends that because there are genuine
issues of material fact regarding the alleged violation of
his Eighth Amendment rights, his Fourteenth Amendment
claim must remain.

The County Defendants motion must fail in part because
Plaintiff has pointed out that there is a genuine issue as to
whether or not his Fourteenth Amendment rights were
violated so long as Plaintiff's claim rests on the Eighth
Amendment's prohibition against cruel and unusual
punishment. The Court will deny summary judgment as to

Plaintiff's Eighth Amendment claim made pursuant to the
Fourteenth Amendment, because Plaintiff's Eighth
Amendment claim remains, *see supra,* and the Eighth
Amendment is applicable to the states via the Due Process
Clause of the Fourteenth Amendment. *Robinson v.
California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 8 L.Ed.2d
758 (1962).

Plaintiff, having failed to provide any argument to refute
the County Defendants' motion with respect to a
Fourteenth Amendment due process claim in and of itself,
does not meet his burden on that possible claim. *See*
Fed.R.Civ.P. 56(e). Accordingly, the Court will grant
summary judgment for the County Defendants on
Plaintiff's Fourteenth Amendment claim as it stands alone.

**4. Plaintiff's § 1983 Claim**

The County Defendants move for summary judgment on
all of Plaintiff's claims made pursuant to 42 U.S.C. §
1983. They contend that Plaintiff's constitutional rights
have not been violated, nor is there evidence of a policy or
custom of such violation.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff
must allege the violation of a right secured by the
Constitution and laws of the United States, and must show
that the alleged deprivation was committed by a person
acting under color of state law." *West v. Atkins,* 487 U.S.
42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). As
discussed *supra,* there is a genuine issue of fact as to the
possible Eighth Amendment rights violations which may
form the basis of a § 1983 claim against the County
Defendants. The Court finds that prison officials employed
by Cumberland County qualify as state actors, so
Plaintiff's § 1983 claims against the individual County
Defendants remain.

To hold the entity County Defendants liable under § 1983,
Plaintiff must first demonstrate the underlying
constitutional violation, about which there is a genuine
issue of material fact, as discussed. Under § 1983,
however, a local government entity such as a county
"cannot be held liable solely because it employs a
tortfeasor." *Monell v. New York City Dept. of Social*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

---

Slip Copy, 2009 WL 750200 (D.N.J.)
(Cite as: 2009 WL 750200 (D.N.J.))

*Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. To the extent that Plaintiff also makes allegations against those of the County Defendants which are entities, the Court undertakes a *Monell* analysis.

**\*7** The County Defendants contend that Plaintiff has no evidence of a policy of refusing working clean toilets to inmates in Cumberland County. So too, they contend that Plaintif has presented no evidence of similar incidents involving other inmates. Further, the County Defendants point to the undisputed material fact that the two isolation units next to Plaintiff's had working toilets to support its contention that no policy exists to satisfy the *Monell* standard. Plaintiff's responsive submission to the Court points to the deposition testimony of Kenneth Lamcken, who was responsible for maintenance at the Cumberland County Jail in 2005. Lamcken testified that there were times in 2005 when toilets in isolation units were broken and inmates were nonetheless placed in a cell with a broken toilet, where those inmates often defecated on the floor of the cell. (Pl.Opp.Ex. C.) The County Defendants do not contest Lamcken's testimony in their reply brief. Accordingly, the Court finds that there is a genuine issue of material fact with respect to whether there is a policy or custom in the Cumberland County Jail which deprives inmates' constitutional right to be free from cruel and unusual punishment. As Plaintiff's Eighth Amendment claims against the individual County Defendants remain, and there appears to be a genuine issue regarding a policy or custom of Eighth Amendment rights deprivations, the Court finds no reason to grant summary judgment for the County Defendants on Plaintiff's claims made pursuant to § 1983.

**5. Plaintiff's § 1985 Claim**

The County Defendants move for summary judgment on Plaintiff's claim made pursuant to 42 U.S.C. § 1985(3). They argue that Plaintiff has not shown evidence sufficient to make out such a claim, in particular providing no evidence of a conspiracy whatsoever, particularly not a conspiracy intended to inhibit Plaintiff's equal protection

rights.[FN2] Plaintiff contends that there is a genuine issue as to whether or not a conspiracy existed that prevented him from enjoying his civil rights, as evidenced by his placement in the isolation cell without a functioning toilet. Plaintiff avers that the conspiratorial aspect of his treatment arises out of a policy of placing other inmates in the same or similar conditions.

> **FN2.** Although the County Defendants also point out that there is no evidence of a conspiracy to deprive Plaintiff of his voting rights, Plaintiff makes clear in his opposition brief that his right to vote is not the basis of this claim.

To state a claim under 42 U.S.C. § 1985(3), Plaintiff must allege, among other things, a conspiracy motivated by a racial or class based discriminatory animus designed to deprive him of equal protection of the laws. *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997) (*citing Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Plaintiff has provided no specific allegations of such discrimination, nor any evidence to support such a claim. He has simply not alleged any class or race-based motive which would support a § 1985(3) claim. Accordingly, the Court will grant summary judgment for the County Defendants on Plaintiff's claims made pursuant § 1985(3).

*B. Prison Health Services' Motion[FN3]*

> **FN3.** Plaintiff previously agreed to dismiss Defendant Betty Gambrell from this matter; Gambrell was a health services administrator at Cumberland County Jail.

**\*8** PHS was contracted to provide health care management and staffing for the Cumberland County Jail at the time of the events alleged in Plaintiff's Complaint. PHS contends that it did not employ nurses to provide direct care to inmates, but rather that any nurses who did so were employed by Cumberland County. (PHS Br. at 1.) The Agreement between Cumberland County and the regional office of PHS reflects that PHS provided "physician and administrative personnel" at the Cumberland County Jail; there is no mention of PHS

Slip Copy, 2009 WL 750200 (D.N.J.)
(Cite as: 2009 WL 750200 (D.N.J.))

providing nurses. (PHS Exs. B, C.)

**1. Plaintiff's § 1983 Claim**

PHS moves for summary judgment on Plaintiff's Eighth Amendment claims against it filed pursuant to 42 U.S.C. § 1983.[FN4] PHS grounds its motion on Plaintiff's lack of evidence that PHS violated his constitutional rights and upon the legal argument that 42 U.S.C. § 1983 does not permit a claim based solely upon vicarious liability. Plaintiff did not oppose the instant motion.

> FN4. The Court notes that PHS does not specify that its motion only seeks summary judgment on Plaintiff's Eighth Amendment claims. It appears to the Court, however, that PHS has not addressed Plaintiff's Fifth and Fourteenth Amendment claims, nor for that matter Plaintiff's § 1985 claims, in the instant motion. Accordingly, the Court only considers PHS's motion with respect to Plaintiff's Eighth Amendment claims made pursuant to § 1983.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West, 487 U.S. at 48. Because a physician under contract with a state prison acts under the color of state law when he treats an inmate, the Court finds that PHS was also acting under the color of state law when it provided medical personnel to treat inmates at the Cumberland County Jail Id. Plaintiff may establish liability by showing that PHS had a policy or custom that caused the civil rights violations he alleges. Monell, 436 U.S. at 694. Thus, there can be no entity liability unless there is an underlying constitutional violation.

Where § 1983 claims are grounded on claims that medical treatment fell below constitutional standards, an inmate must show that the defendant was deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251; Rouse, 182 F.3d at 197. "Deliberate indifference" exists "where [a] prison

official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. Further, claims of negligence or malpractice are not sufficient to establish "deliberate indifference." Id.

PHS contends that Plaintiff's only evidence regarding its treatment of Plaintiff comes in the form of an expert report by Dr. John Kirby. PHS notes that Dr. Kirby, Plaintiff's own expert, mentions PHS employees when it says that, "Once detected, Mr. Alvarez's wounds were treated appropriately by his physicians," although "wound care was neglected by the prison nurses." (PHS Ex. E at 7.)[FN5] The report further states that when Plaintiff discovered the boils on his abdomen and upper legs, "the prison physician lanced [the] boils." (PHS Ex. E at 3; PHS Ex. F at 3.) PHS also argues that there is no evidence that PHS was responsible for the cleaning and sanitation of the inmates' housing, a focus of both of Dr. Kirby's reports.

> FN5. The Court has taken into consideration both versions of the Kirby report submitted by PHS in support of its motion.

*9 The Court finds that PHS has met its burden, that Plaintiff's own expert report shows that PHS' physicians did not act with deliberate indifference to Plaintiff's serious medical need and that there is no evidence that PHS is responsible for Cumberland County Jail's failure to adequately prevent infection. PHS' contract with Cumberland County reinforces the notion that cell cleaning and sanitation were not its responsibility. There is thus no evidence before the Court which shows a genuine issue of material fact as to PHS' alleged Eighth Amendment violations. Plaintiff, having not opposed the instant motion, has not met his burden to show that there is a genuine issue for trial. Accordingly, the Court will grant summary judgment for PHS on Plaintiff's Eighth Amendment claims made pursuant to § 1983.

**2. Plaintiff's Negligence Claim**

PHS also moves for summary judgment on Plaintiff's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 750200 (D.N.J.)
(Cite as: 2009 WL 750200 (D.N.J.))

negligence claims [FN6], arguing that Dr. Kirby's report concludes that the medical care provided to Plaintiff was appropriate. Plaintiff's medical malpractice claim fails and must be dismissed.

> FN6. The Court notes that PHS does not specify that its motion only seeks summary judgment on Plaintiff's medical malpractice claims of negligence. It appears to the Court, however, that PHS has not addressed in the instant motion Plaintiff's claims that PHS was negligent in other respects. Accordingly, the Court only considers PHS's motion as to Plaintiff's medical malpractice claims.

Plaintiff's negligence claim against PHS is, in part, a medical malpractice claim requiring expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation caused the injury. *See Teilhaber v. Greene,* 320 N.J.Super. 453, 727 A.2d 518 (N.J.Super.Ct.App.Div.1999). The facts of this case, as presented to the Court, do not show that there is a genuine issue as to Plaintiff's treatment by PHS. The physicians who treated him at the Cumberland County Jail provided medical care that, according to Plaintiff's own expert, was appropriate. Because Plaintiff has not responded, and there are no facts currently before the Court to support the bare allegations of medical malpractice in the Complaint, PHS is entitled to summary judgment Plaintiff's medical malpractice claims against it.

**IV. CONCLUSION**

Based upon the foregoing, the Court will GRANT summary judgment for the County Defendants on Plaintiff's Fifth Amendment claims, Plaintiff's claims made pursuant § 1985(3), and Plaintiff's Fourteenth Amendment claim to the extent that it alleges a violation of Plaintiff's Fourteenth Amendment right to due process. Further, the Court will DENY summary judgment for the County Defendants on Plaintiff's Eighth Amendment claims made pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983. The Court will GRANT summary judgment for PHS on Plaintiff's Eighth Amendment claims made pursuant to § 1983 and on Plaintiff's medical malpractice claims

against PHS. The accompanying Order shall issue today.

D.N.J.,2009.
Alvarez v. County of Cumberland
Slip Copy, 2009 WL 750200 (D.N.J.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2008 U.S. Dist. LEXIS 102572, *



LEXSEE 2008 US DIST LEXIS 102572

**HENRY A. HALL, Prisoner No. 229443 v. ESCO JARRIGAN, [1] RON (ROOKIE) INMAN; SCOTT PERKY, GEORGE SAUSEMAN, and MEDICAL**

1   The lead defendant's last name was spelled "Jerrigan" in the caption of complaint, but plaintiff has since notified the Court that the correct spelling is "Jarrigan."

**NO. 2:07-CV-127**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE**

*2008 U.S. Dist. LEXIS 102572*

**December 18, 2008, Filed**

**SUBSEQUENT HISTORY:** Summary judgment granted by, Dismissed by *Hall v. Purky, 2010 U.S. Dist. LEXIS 45583 (E.D. Tenn., May 10, 2010)*

**COUNSEL:** [*1] Henry A Hall, Plaintiff, Pro se, MARYVILLE, TN.

**JUDGES:** J. RONNIE GREER, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** J. RONNIE GREER

**OPINION**

**MEMORANDUM and ORDER**

Acting *pro se*, Henry A. Hall, a state prisoner

formerly housed in the Hamblen County Detention Center, brings this civil rights action for injunctive and monetary relief under *42 U.S.C. § 1983*. Plaintiff's application to proceed *in forma pauperis* is **GRANTED** (Doc. 1), and he is **ASSESSED** the full filing fee of three hundred, fifty dollars (\$ 350.00). *28 U.S.C. § 1914(a)*.

The custodian of plaintiff's inmate trust account at the institution where he now resides shall submit, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. *28 U.S.C. § 1915(b)(1)(A)* and *(B)*.

Thereafter, the custodian shall submit twenty percent

2008 U.S. Dist. LEXIS 102572, *

(20%) of plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 has [*2] been paid to the Clerk's Office. [2] *McGore v. Wrigglesworth, 114 F.3d 601, 607 (6th Cir. 1997).*

2 Send the payments to:

Clerk, USDC

220 West Depot Street, Suite 200

Greeneville, TN 37743

To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where plaintiff is now confined and to George Little, Commissioner of the Tennessee Department of Correction.

## II. Plaintiff's Allegations

The complaint contains various contentions concerning the conditions and treatment to which plaintiff was subjected during his confinement in the Hamblen County jail. The Court has renumbered the claims for ease of discussion.

(1) In the first claim, plaintiff alleges that, after two large boils flared up under his left arm, he turned in a medical request, waited a short time for a response, filed a grievance complaining of the situation, and five days later, saw the nurse who lanced the boils and gave him antibiotics. He then complained of ear problems, but was told that he would be checked later and was returned to his cell. Upon his return, he asked two inmates to look at his ears. They did so and [*3] extracted a roach from his right ear. Plaintiff filed requests and grievances but received no response and now suffers from hearing loss in his right ear.

On April 26, 2007, plaintiff, having again turned in a medical request form, asked defendant Scott Perky to see the nurse. Defendant Perky replied, "We're too busy right now." Plaintiff filed another request and a grievance and, the next day, he showed his arm to defendant George Sauseman. Defendant Sauseman commented, "I'll tell her [the nurse?] it's bad." On April 28, 2007, he again showed his arm to the same defendant and this time defendant responded by taking plaintiff to the medical unit. The medical care provider looked at the sores on plaintiff's arm and said, "I will call you out in the morning probaly (sic) lance them open." The next day, plaintiff informed defendant Sauseman that "the sores hurt bad," but defendant retorted, "We're busy."

On April 30, 2007, the head nurse came to plaintiff's cell, checked his arm and, though she asked "Didn't the weekend nurse do nothing (sic)?", she did not address the problem either. Two days later, the nurse sent word to plaintiff that she had gotten busy the day before, but would try [*4] to get to him that day. However, at 12:00 noon, the United States Marshals transported plaintiff to the Greene County jail. During a physical examination on May 3, 2007, he was diagnosed as having a staph infection in his arm [which by this time, displayed several boils] and was given medication immediately. Plaintiff contends that, as a result of the lack of medical care, he sustained unnecessary pain for at least fourteen days and now has limited use of his left arm.

(2) Plaintiff's next claim involves personal hygiene. This particular claim, it must be noted at the beginning, contains inconsistent allegations. Plaintiff asserts, on the one hand, that inmates receive a razor once a week and must use the same razor four times and, on the other hand, that razors are only changed once every 28 days. The Court is perplexed as to how razors could be received once a week and at the same time be changed every four weeks.

Plaintiff also asserts in an auxiliary claim that once, when his razor had rust on it, he asked for a new one but was told to use the one he had because defendant Ron (Rookie) Inman had not provided for replacement razors.

(3) The third claim is that the mops used in three [*5] cell blocks are also used to clean the showers and that the broom plaintiff used to sweep his cell contained semen and pubic hair. Plaintiff complained about the broom, but defendant Sauseman said, "If you sweep out your cell, you'll use that one."

(4) Inmates James Stout and George Simpson are permitted to pass out the mail. Plaintiff's niece sent him a letter containing stamps, which he never received. Instead, plaintiff found it in the trash can with the stamps missing. Since that time, his niece has received obscene letters from someone at the jail.

The remaining claims are asserted in plaintiff's amended complaint.

(5) Plaintiff had to clean, sweep, and mop his cell with the same broom and mop previously used to clean up a sewer back-up in the shower. Plaintiff is forced to sleep on that same floor.

(6) The jail authorities will not issue the "floor man" sanitary gloves though he serves drinks after each meal. On July 20, 2007, he stuck his finger in the spout of the cooler to stop the flow of plaintiff's drink. After serving dinner, inmates are allowed to bring the same coolers that contained the drinks into their cells and to stick their hands in the coolers to scoop up ice. Plaintiff [*6] filed a complaint about the way the coolers are used but

received no response.

(7) Plaintiff's eyesight has gotten worse because of the inadequate lighting in the jail. He cannot see plainly at close range and now must wear glasses in order to read and write.

(8) The final claim is that plaintiff complained of a sore throat to the nurse during his intake physical [presumably, at the Greene County Detention Center, where he was confined when he filed this lawsuit]. Thereafter, he filed a medical request to see the doctor and, though five days have passed, he has yet to receive a response.

The Court infers that the plaintiff is contending in his pleadings that he has been and continues to be denied medical care and to be exposed to wrongful housing conditions, in violation of the *Eighth Amendment to the United States Constitution*.

The complaint now must be screened to determine whether it should be dismissed as frivolous, malicious or for failure to state a claim or whether monetary damages are sought from a defendant who is immune from such relief. *28 U.S.C. § 1915(e)(2)* and *§ 1915A*.

At the outset, to the extent that the pleadings can be read as asserting that the rights of other inmates [*7] are being infringed, since they too are subject to the complained of conditions, any such claim fails. Plaintiff has standing to assert his own rights, not those of other inmates. *Whitmore v. Arkansas, 495 U.S. 149, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990)*.

Secondly, plaintiff has made no allegations whatsoever against Esco Jarrigan. Without some indication of wrongful conduct on the part of this defendant, plaintiff fails to state a claim against defendant Jarrigan.

Thirdly, a prisoner's request for injunctive or declaratory relief against jail officials cannot be granted once he is transferred from the correctional institution of which he complains to a different facility. *Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996)*. This is what has happened. Plaintiff has notified the Court that he has been transferred to the Blount County, Tennessee jail and this change of address renders **MOOT** his claims for injunctive relief.

The remaining claims have been divided into three categories to facilitate discussion.

A. Medical Claims [Nos. 1 and 8].

These claims are governed by *Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)*, which holds that the *Eighth Amendment* is violated when prison authorities are deliberately indifferent to the serious [*8] medical needs of prisoners. An *Eighth Amendment* claim has both an objective and a subjective component.

*Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)*. The objective component requires the plaintiff to show a "sufficiently serious" deprivation. *Id.* A medical need may be objectively serious if even a lay person would recognize the seriousness of the need for medical care. *Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005)* (citing *Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004)*. The subjective component requires a showing of a sufficiently culpable state of mind--one of deliberate indifference. *Farmer, 511 U.S. at 842*. Deliberate indifference is illustrated by a prison official who acts or fails to act despite knowledge of a substantial risk of serious harm to the inmate. *Id.* A prisoner may also show that he had a serious medical need by showing that a delay in treatment had a detrimental effect on a non-obvious condition that was sufficiently serious as to rise to the level of a constitutional violation. *Napier v. Madison County, Ky., 238 F.3d 739, 742 (6th Cir. 2001)*.

The claim concerning the initial delay in obtaining medical care for the boils under his arm does not [*9] state a claim for relief. There is nothing to show that this condition was sufficiently grave, that the delay was detrimental, or that any defendant acted with the requisite state of mind. By plaintiff's own allegations, the nurse treated his boils by lancing them and by providing him with antibiotics. A prison official's actions must be more than mere negligence, and if the official took reasonable measures to abate the harm, he will not be held liable, even if the harm was not ultimately averted. *Farmer, 511 U.S. at 835-36*. Having failed to show either of the elements in *Estelle,* plaintiff has failed to establish any entitlement to relief.

On its face, the allegations that plaintiff's complaint of an ear problem was ignored, that a roach was extracted from his right ear soon thereafter, and that he has suffered hearing loss in his right ear states a colorable constitutional claim. This claim will be allowed to advance, as will the claim involving the painful boils [later diagnosed as a staph infection] on plaintiff's arm for which he contends he was denied medical care from April 26- May 2, 2007.

The allegation that plaintiff complained of a sore throat during his intake physical and  [*10] did not receive medical care within five days [Claim eight] is a nonstarter. The *Eighth Amendment* requires a serious medical need and a mere complaint of a sore throat, without anything more, does not meet the objective requirement of a serious medical condition. Nor has there been any demonstration of deliberate indifference on the part of a defendant.

B. Unconstitutional Confinement Conditions [Nos. 2-7].

As discussed earlier, the *Eighth Amendment* is

Case 9:09-cv-00431-TJM-DEP   Document 52   Filed 08/30/10   Page 53 of 95

Page 4
2008 U.S. Dist. LEXIS 102572, *

implicated when a prison official is deliberately indifferent to a living condition which poses a substantial risk of serious harm to the inmate.

Plaintiff's claim that he once had to use a rusty razor and was denied a replacement [Claim two] is not a viable constitutional claim because the *Eighth Amendment* prohibits only *extreme* deprivations and because this is not such a deprivation. Nor is there any constitutional rule regarding the frequency with which razors must be changed. And too, plaintiff's allegation that defendant Ron (Rookie) Inman had not provided for replacement razors would be characterized, at best, as an act of negligence and not one of deliberate indifference to a substantial risk of serious injury. Given that there are [*11] no other allegations against this defendant, he too is **DISMISSED** from this suit.

Two claims [Claims three and five] involve the failure to furnish a clean mop and broom. Prison officials must supply an inmate's basic needs, including reasonable sanitation, as feasible. *Walker v. Mintzes, 771 F.2d 920, 926 (6th Cir. 1985). See also Tillery v. Owens, 907 F.2d 418, (3rd Cir. 1990)* ("Although prisoners are, undeniably, sent to prison as punishment, the prison environment itself may not be so brutal or unhealthy as to be itself a punishment"); *Johnson v. Pelker, 891 F.2d 136, 139 (7th Cir. 1989)* (noting that prison authorities must "provide inmates with a minima of ... sanitation").

According to the Supreme Court, determining whether a condition meets the objective factor of the *Eighth Amendment* test

requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling v. McKinney, 509 U.S. 25, 36, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)*. Though a new [or at least [*12] unsoiled] mop and broom might have been desirable under the described circumstances, the evaluation of a challenged condition may not be grounded upon this Court's "idea of how best to operate a detention facility." *Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)*.

As the Seventh Circuit has noted, "[m]any Americans live under conditions of exposure to various contaminants. The *Eighth Amendment* does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by

substantial numbers of free Americans." *Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001)*. As it stands, it simply cannot be said that the failure to issue a different mop and broom to plaintiff violates contemporary standards of decency nor that society is unwilling to tolerate the use of a dirty broom and mop by an inmate, especially when the problem so easily can be rectified with soap and water. Notably, plaintiff has not indicated that he was denied access to soap, water, or cleaning supplies.

The claim that the prisoner who serves drinks is denied sanitary gloves [Claim six] also relates to sanitation since inmates must be supplied food and drink prepared and served [*13] under reasonably sanitary conditions. The use of plastic gloves by food servers is desirable, but the authorities' mere failure to supply them, absent some indication that the food or drink itself is unsanitary or that the server has a medical condition which poses a risk of harm to inmates who consume the food and drinks, does not state a constitutional claim. *See Carmony v. County of Sacramento, 2008 U.S. Dist. LEXIS 11137, 2008 WL 435343, *11 (E.D.Cal. Feb. 14, 2008); Jackson v. St. Clair County Jail, 2005 U.S. Dist. LEXIS 15987, 2005 WL 1827873, *4 (S.D. Ill. Aug. 2, 2005)* (allegation that inmate food servers do not wear gloves while handling food, absent an indication of physical injury, fails to state a constitutional claim); *Tapia v. Sheahan, 1998 U.S. Dist. LEXIS 20537, 1998 WL 919709, *5 (N.D. Ill. Dec. 30, 1998)* (contention that food servers fail to wear gloves or hairnets fails to state a claim). Identical reasoning applies to plaintiff's assertion that inmates use their hands to scoop up ice from coolers from which drinks are dispensed.

Plaintiff's next claim [Claim seven] is a blanket allegation that, due to inadequate lighting in his cell, his eyesight has deteriorated to the point that he must wear glasses to read and write and cannot see plainly at close [*14] range. Contemporary standards of decency require that prisoners be furnished with shelter, *Helling, 509 U.S. at 32*, and one court has held that "[a]dequate lighting is one of the fundamental attributes of adequate shelter required by the *Eighth Amendment*." *Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996)* (citation and internal punctuation marks omitted), *amended by 135 F.3d 1318 (9th Cir. 1998)*. To reiterate the showing plaintiff must make to prevail on a claim of inhumane housing conditions, he must establish that the questioned condition posed an excessive risk to his health or safety to which a defendant was deliberately indifferent. *Farmer, 511 U.S. 825, 842, 114 S. Ct. 1970, 128 L. Ed. 2d 811*.

While plaintiff contends that the lighting is "pour," he has made no effort to describe the nature of the inadequacy. It is difficult, if not impossible, given the dearth of factual support, to conclude that the bad

lighting rises to the level of a sufficiently grave deprivation so as to meet the objective element of an *Eighth Amendment* claim. Even if one were to assume that a bald allegation of poor lighting is a sufficiently serious deprivation for *Eighth Amendment* purposes, the face of the complaint does not contain any   [*15] evidence of deliberate indifference. *Farmer, 511 U.S. 825, 838, 114 S. Ct. 1970, 128 L. Ed. 2d 811* (explaining that liability does not attach "solely because of the presence of objectively inhumane prison conditions") (citing to *Wilson, 501 U.S., at 299-302*). There is no indication in the pleadings that the defendants actually knew of but disregarded the purported lighting problem. *See Farmer, 511 U.S. at 837* (deliberate indifference shown where official is aware of facts from which to infer that a substantial risk of serious harm exists *and* where he actually draws the inference). Logically, a defendant who has no knowledge of a condition cannot consciously disregard any attendant risk of serious harm to an inmate's health or safety.

C. Mail Interference [No. 7].

The final claim involves an alleged purloined letter. These are the facts which are offered. Plaintiff asserts that two inmates are allowed to pass out the prisoners' mail, that he did not receive a letter containing stamps which was sent to him by his niece, that he found the letter in a trash can later, that the stamps were missing, and that his niece has been receiving obscene letters from someone at the jail.

To state a claim under *42 U.S.C. § 1983*, plaintiff must  [*16] show: (1) that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States of America and (2) that the deprivation was caused by a person acting under the color of state law. *Flagg Bros. v. Brooks, 436 U.S. 149, 155, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978)*. Even if plaintiff could somehow show that the two inmates who passed out the mail were acting under color of state law in performing this task and also that they were the parties who were responsible for failing to deliver his letter, he still would not have an actionable claim under *§ 1983*. This is so because negligence is not a valid theory of recovery under the civil rights statute. *Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)*. By the same token, if the failure to deliver his mail/stamps was an intentional act and if plaintiff is claiming a property deprivation without due process of law, he would have a valid claim only if he pled and proved that state remedies for redressing the wrongful act were wanting. *Hudson v. Palmer, 468 U.S. 517, 533-36, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)*. He has not so done. The same analysis applies to the missing stamps. Moreover, even if he could overcome all these barriers to his mail claims, the individuals  [*17] who supposedly engaged in the wrongful conduct have not been named as defendants in this lawsuit.

Finally, as previously noted, plaintiff must assert his own rights and not the rights of others. He, therefore, lacks constitutional standing to advance the claim regarding his niece's receipt of obscene letters from someone at the jail.

In accordance with the above discussion, all claims save the medical claims are **DISMISSED.** Because plaintiff has stated an arguable claim for the denial of medical care against defendants Perky and Sauseman, the Clerk is **DIRECTED** to send him two service packets. [3] (Each contains a blank summons and USM 285 form.) Plaintiff is **ORDERED** to complete the service packets and to return them to the Clerk's office within twenty (20) days of the date on this Order. Plaintiff is forewarned that failure to return the completed service packets within the time required could jeopardize his prosecution of this action.

> 3   Defendant "Medical" is insufficiently identified for purposes of effecting service. When and if plaintiff timely amends his complaint to provide the name of this defendant, he will be sent another service packet for that individual.

When the completed service   [*18] packets are received by the Clerk, the summonses will be signed and sealed by the Clerk and forwarded to the United States Marshal for service upon defendants. Defendants are **ORDERED** to respond to the complaint in the manner and within the time required by the Federal Rules of Civil Procedure. Plaintiff is **ORDERED** to inform the Court of any address change within ten (10) days following such change. He is further cautioned that his failure to do so will result in a dismissal of this action for failure to prosecute.

/s/ J. RONNIE GREER

UNITED STATES DISTRICT JUDGE



LEXSEE 2005 U.S. DIST. LEXIS 6028

**RONNIE BOONE, Plaintiff vs. FRANK CANARECCI, Defendant**

**CAUSE NO. 3:05-CV-173 RM**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION**

*2005 U.S. Dist. LEXIS 6028*

**April 7, 2005, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff inmate's complaint under *42 U.S.C.S. § 1983* against defendant prison official was subject to screening under *28 U.S.C.S. § 1915A*.

**OVERVIEW:** The inmate alleged that he was denied a razor while other inmates were allowed to shave with razors. The court held that the denial of a single razor on one occasion was a de minimis injury, which did not give rise to an equal protection claim. The inefficiency of the jail in distributing clean uniforms did not rise to the level of deliberate indifference and wearing the same uniform for two weeks did not deny the inmate the minimal civilized measure of life's necessities. The *Equal Protection Clause* did not require that two inmates be denied uniforms merely because the inmate and 22 others were. The opening of a single piece of the inmate's mail outside of his presence was inadvertent, and it did not interfere with his right to counsel or deny him access to the courts. The failure of the jail to respond to his grievances did not state a claim because the jail was not required to provide a grievance procedure and it was not required to respond to grievances. The inmate was not denied due process when the jail was locked down for 48 hours because the court would not second guess the decision to impose a 48-hour lockdown.

**OUTCOME:** The court dismissed the action.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Parties > Prisoners > Dismissals of Petitions*
*Civil Procedure > Parties > Prisoners > Screening of Petitions*
[HN1] Pursuant to *28 U.S.C.S. § 1915A*, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

2005 U.S. Dist. LEXIS 6028, *

[HN2] *Fed. R. Civ. P. 12(b)(6)* provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted.

*Civil Procedure > Pleading & Practice > Pleadings > Proceedings in Forma Pauperis > General Overview*
*Civil Procedure > Parties > Prisoners > General Overview*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > General Overview*
[HN3] Courts apply the same standard under *28 U.S.C.S. § 1915A* as when addressing a motion under *Fed. R. Civ. P. 12(b)(6)*.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Dismissals > Involuntary Dismissals > General Overview*
[HN4] A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN5] Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN6] Pro se complaints are liberally construed.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Rights Law > Section 1983 Actions > Elements > Protected Parties*
*Civil Rights Law > Section 1983 Actions > Scope*
[HN7] In order to state a cause of action under *42 U.S.C.S. § 1983*, the U.S. Supreme Court requires only two elements: First, a plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. *Fed. R. Civ. P. 8(a)(2)*.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General*
*Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN8] In reviewing the complaint on a motion to dismiss, no more is required from a plaintiff's allegations of intent than what would satisfy *Fed. R. Civ. P. 8*'s notice pleading minimum and *Fed. R. Civ. P. 9(b)*'s requirement that motive and intent be pleaded generally.

*Civil Rights Law > Prisoner Rights > Confinement Conditions*
[HN9] There is a de minimis level of imposition with which the Constitution is not concerned.

*Civil Rights Law > Prisoner Rights > Confinement Conditions*
*Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Cruel & Unusual Punishment*
[HN10] The recognized standard of protection afforded to both convicted prisoners and pretrial detainees under the *Eighth* and *Fourteenth Amendments* is the same.

*Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Cruel & Unusual Punishment*
*Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment*
[HN11] A violation of the *Eighth Amendment's cruel and unusual punishments clause* consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of deliberate indifference to the deprivation.

*Civil Rights Law > Prisoner Rights > Access to Courts*
*Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Assistance of Counsel*
*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*
[HN12] An isolated incident, without any evidence of improper motive or resulting interference with the inmate's right to counsel or to access to the courts, does not give rise to a constitutional violation.

*Civil Rights Law > Prisoner Rights > Freedom of Speech*
*Criminal Law & Procedure > Criminal Offenses > Property Crimes > Destruction of Property > Elements*
*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*

2005 U.S. Dist. LEXIS 6028, *

[HN13] While a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail.

*Civil Rights Law > Prisoner Rights > Confinement Conditions*
[HN14] A jail is not required to provide a grievance procedure and they are not required to respond to grievances.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom to Petition*
[HN15] The *First Amendment* right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him, but it does not require that a government official respond to the grievance.

*Civil Rights Law > Prisoner Rights > Segregation*
*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
[HN16] Pre-trial detainees may not be punished without due process of law, but not every placement of a pre-trial detainee in segregation constitutes punishment, and a pre-trial detainee's segregation for legitimate security reasons without a hearing does not violate due process.

*Civil Rights Law > Prisoner Rights > Discipline*
*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*
[HN17] Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

**COUNSEL:** [*1] For Ronnie Boone, Plaintiff: Pro se, St Joseph County Jail, South Bend, IN.

**JUDGES:** Robert L. Miller, Jr., Chief Judge.

**OPINION BY:** Robert L. Miller, Jr.

**OPINION**

OPINION AND ORDER

Ronnie Boone, a *pro se* prisoner, submitted a

complaint under *42 U.S.C. § 1983*. [HN1] Pursuant to *28 U.S.C. § 1915A*, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. [HN2] *FED. R. CIV. PRO. 12(b)(6)* provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted.[HN3] Courts apply the same standard under *§ 1915A* as when addressing a motion under *Rule 12(b)(6)*. *Weiss v. Cooley, 230 F.3d 1027 (7th Cir. 2000)*.

[HN4] A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. [HN5] Allegations of a pro se complaint are held to less stringent standards than formal pleadings [*2] drafted by lawyers. Accordingly, [HN6] pro se complaints are liberally construed.

[HN7] In order to state a cause of action under *42 U.S.C. § 1983*, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. *FED. R. CIV. P. 8(a)(2)*. [HN8] In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy *Rule 8*'s notice pleading minimum and *Rule 9(b)*'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001)* (citations, quotation marks and ellipsis omitted).

First, Mr. Boone alleges that he was denied a razor on November 26, 2004 while other inmates were allowed to shave with razors. [HN9] "There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright, 430 U.S. 651, 674, 51 L. Ed. 2d 711, 97 S. Ct. 1401 (1977).* [*3] The denial of a single razor on one occasion is a *de minimis* injury which does not give rise to an equal protection claim. This claim will be dismissed.

Second, Mr. Boone alleges that on the same day, he was also denied a clean uniform. It appears from Mr.

2005 U.S. Dist. LEXIS 6028, *

Boone's description that he was on a cell block with 24 other inmates, 22 of whom also were denied clean uniforms. Mr. Boone states that as a result, he had to wear his uniform for two weeks and that the lack of uniforms was caused by the absence of a key jail employee who was evidently responsible for the uniforms. Though he was a pre-trial detainee when these events occurred, [HN10] "the recognized standard of protection afforded to both convicted prisoners and pretrial detainees under the *Eighth* and *Fourteenth Amendments*" is the same. *Palmer v. Marion County, 327 F.3d 588, 593 (7th Cir. 2003)*. [HN11] A violation of the *Eighth Amendment's cruel and unusual punishments clause* consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of [*4] "deliberate indifference" to the deprivation. *Farmer v. Brennan, 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)*. Here, the inefficiency of the jail in distributing clean uniforms does not rise to the level of deliberate indifference and wearing the same uniform for two weeks did not deny Mr. Boone the minimal civilized measure of life's necessities. Neither did the *Equal Protection Clause* require that the other two inmates also be denied uniforms merely because Mr. Boone and 22 others were. This claim will be dismissed.

Third, Mr. Boone alleges that is legal mail was once opened outside of his presence on December 10, 2004.

> We have never held or suggested that an isolated, inadvertent instance of opening incoming confidential legal mail will support a *§ 1983* damage action. Rather, we agree with other circuits that [HN12] an isolated incident, without any evidence of improper motive or resulting interference with the inmate's right to counsel or to access to the courts, does not give rise to a constitutional violation.

*Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997)* (citations, quotation marks, and brackets omitted).

> [HN13] While a prisoner has a right to be [*5] present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail.

*Davis v. Goord, 320 F.3d 346, 351 (2nd Cir. 2003)*

(citations and quotation marks omitted).

> Defendants admitted to opening one piece of Smith's constitutionally protected legal mail by accident. Such an isolated incident, without any evidence of improper motive or resulting interference with Smith's right to counsel or to access to the courts, does not give rise to a constitutional violation.

*Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990)*. Mr. Boone does not allege, and based on this complaint it would not be reasonable to infer, that opening this single piece of legal mail was other than inadvertent, delayed his receipt of it, interfered with his right to counsel, or denied him access to the courts. This claim will be dismissed.

Fourth, Mr. Boone alleges that he has filed grievances, but he has not gotten a response. [HN14] A jail is not required to provide a grievance [*6] procedure and they are not required to respond to grievances. *Jones v. Brown, 300 F. Supp. 2d 674, 679 (N.D. Ind. 2003)* [HN15] ("The *First Amendment* right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him, but it does not require that a government official respond to the grievance.") This claim will be dismissed.

Fifth, Mr. Boone alleges that he was denied due process when the jail was locked down for 48 hours on February 24, 2005. [HN16] Pre-trial detainees may not be punished without due process of law, *Bell v. Wolfish, 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)*, but not every placement of a pre-trial detainee in segregation constitutes punishment, and a pre-trial detainee's segregation for legitimate security reasons without a hearing does not violate due process. *Zarnes v. Rhodes, 64 F.3d 285, 291 n.5 (7th Cir. 1995)*. Mr. Boone alleges that the entire jail was placed on lock down. Even though he does not believe that there were justifiable reasons for locking down the jail, [HN17] "Prison administrators should be accorded wide-ranging deference in the adoption and execution [*7] of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers, 475 U.S. 312, 321-322, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986)* (citations, ellipsis, and quotation marks omitted). "Even if it may later seem unnecessary in the peace of a judge's chambers," *Graham v. Connor, 490 U.S. 386, 396, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989)*, this court will not second guess the decision to impose a 48-hour lockdown at the jail. This claim will be dismissed.

For the foregoing reasons, this case is DISMISSED

pursuant to *28 U.S.C. § 1915A*.

    SO ORDERED.

    ENTERED: April 7, 2005

    Robert L. Miller, Jr.

Chief Judge

United States District Court



Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
(Cite as: 2000 WL 949457 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Shawn MONCRIEFFE, Plaintiff,
v.
Linda WITBECK, Corrections Officer at Coxsackie
Correctional Facility; B. Schwebler; Dominic Mantello,
Superintendent; C.O. Weeks; C.O. Jensen; and C.O.
McFarlene, Defendants.
**No. 97-CV-253.**

June 29, 2000.

Shawn Moncrieffe, Auburn Correctional Facility, Auburn,
New York, Plaintiff, pro se.

Hon. Dennis C. Vacco, Attorney General for the State of
New York, Steven H. Schwartz, Assistant Attorney
General, Department of Law, the Capitol, Albany, New
York, for Defendants.

MEMORANDUM-DECISION AND ORDER

MORDUE, J.

*INTRODUCTION*

**\*1** Plaintiff moves and defendants cross-move for
summary judgment under Section 56(b) of the Federal
Rules of Civil Procedure in this *pro se* action pursuant to
42 U.S.C. § 1983 alleging violations of his rights under
the Fourth, Eighth and Fourteenth Amendments to the
United States Constitution.

Presently before the Court is the Report-Recommendation
of the Hon. Magistrate Judge David R. Homer dated
December 23, 1998, recommending that plaintiff's motion
be denied and defendants' cross-motion be granted in part
and denied in part.

Plaintiff filed timely objections to the
Report-Recommendation.

*FACTS*

In his complaint, plaintiff alleges that between August and
November, 1996, while he was housed in the Special
Housing Unit of Coxsackie Correctional Facility,
defendant Correctional Officer Linda Witbeck deprived
him of a food tray six times; that Witbeck deprived him of
things such as recreation and supplies six times; that
Witbeck laughed at him four times while he was in the
shower; that Witbeck sexually harassed plaintiff once
"when she felt [plaintiff's] genitals and rear end during a
regular recreation pat frisk;" that Witbeck ransacked his
cell; and that in some unspecified manner Witbeck gave
him a death threat. Plaintiff further alleges that during the
same period defendant Correctional Officer Weeks
sexually harassed him during a routine pat frisk when
Weeks "felt [plaintiff's] genitals a few times." Plaintiff
claims that on two occasions defendant Correctional
Officer McFarlene entered his cell and ransacked it while
plaintiff was in the shower and once confiscated "a few of
[plaintiff's] things." Plaintiff also claims that defendant
Correctional Officer Jensen threatened him once and
assaulted him once by kicking him in the back. Plaintiff
states that the grievance supervisor, defendant Schwebler,
did not log and number plaintiff's grievances as required
and that Superintendent Dominic J. Mantello disregarded
plaintiff's numerous complaints.

Magistrate Judge Homer recommended denial of plaintiff's
motion for summary judgment and dismissal of all of
plaintiff's claims except his Eighth Amendment claim
against Witbeck for denial of food.

*DISCUSSION*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
(Cite as: 2000 WL 949457 (N.D.N.Y.))

Pursuant to 28 USC § 636(b)(1)(C), this Court must make a de novo determination of those portions of the Magistrate Judge's Report-Recommendation to which plaintiff has specifically objected. Here, plaintiff objects to Magistrate Judge Homer's recommendations except with respect to the issues of verbal harassment, threats and denial of recreation. He erroneously states that the Report-Recommendation does not address the claim that Witbeck laughed at him while he was in the shower; however, this allegation amounts to a claim of verbal harassment, which is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Accordingly, the Court will address all issues de novo.

Summary Judgment is appropriate when the pleadings, affidavits, and any other supporting papers demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Facts, inferences therefrom and ambiguities must be examined in a context which is most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**2** The movant bears the initial burden of showing that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has met this burden the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita* at 586. The moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P.56(e); *Liberty Lobby* at 250.

Where summary judgment is sought against a *pro se* litigant the Court must afford him special solicitude. *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

A. *Defendant Mantello*

Plaintiff alleges that defendant Mantello is liable because, as Superintendent of the Coxsackie Correctional Facility, he "disregarded" numerous complaints made to him by plaintiff. More specifically, plaintiff alleges that (1)

Mantello failed to remedy a wrong after having learned of it and (2) that Mantello was negligent in his supervision of subordinate employees.

Magistrate Judge Homer concluded in his Report-Recommendation that plaintiff failed to demonstrate a claim against Mantello. With respect to plaintiff's first allegation that Mantello failed to remedy a wrong, the Magistrate Judge determined that either Mantello or his subordinates investigated plaintiff's grievances. Because plaintiff's complaints were investigated and it was concluded that the grievances were without merit, Mantello satisfied his obligations with respect to plaintiff's grievances.

The Magistrate Judge similarly rejected plaintiff's second claim that Mantello negligently supervised subordinate employees who were allegedly violating his constitutional rights. Magistrate Judge Homer concluded that no claim was stated because, whereas the law requires gross negligence to impose supervisor liability, plaintiff merely alleged negligence. In addition to determining that plaintiff's claim was without merit for failure to plead and prove gross negligence, Magistrate Judge Homer also concluded that plaintiff had failed to establish even ordinary negligence on the part of Mantello.

Plaintiff objects to Magistrate Judge Homer's conclusion that he failed to establish supervisor liability. Plaintiff argues that the record establishes gross negligence in that Mantello was aware that plaintiff's rights were being violated but chose to ignore them by failing to investigate or remedy same.

In order to establish a successful § 1983 claim, a plaintiff must establish that a defendant was personally involved in the alleged rights violation. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). An official is not liable in a section 1983 action under the doctrine of respondeat superior. *Polk County v. Dodson,* 454 U.S. 312, 325 (1981). However, an individual who occupies a supervisory position may be found personally involved by: (1) direct participation; (2) failing to remedy a wrong after learning of the violation through a report or appeal; (3) creating a policy or custom under which unconstitutional practices occurred or

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
(Cite as: 2000 WL 949457 (N.D.N.Y.))

allowing the policy or custom to continue; or (4) gross negligence in managing subordinates whose conduct caused the unlawful condition or event. *See Wright,* 21 F .3d at 501.

**\*3** With respect to plaintiff's objection arguing that Mantello was grossly negligent, plaintiff simply reiterates his original arguments and relies on evidence already in the record and considered by the Magistrate Judge. Plaintiff merely reiterates in his objections to the Report-Recommendation that he has established a case

which includes gross negligence as evidence [sic] in plaintiff's motion. (See plt. motion for summary judgment, memo. Of law pg. 23 with annexed exibits [sic] and plt. Reply decl. Pg. 11 with attached exibits [sic] ). Moreover, the record is legally sufficient to establish and impose supervisory liability. (See exibits [sic] attached to plt. motion for summary judgment and Reply motion).

As Magistrate Judge Homer correctly stated, the record clearly reveals that Mantello or his subordinate employees investigated plaintiff's grievances and rejected them as being without merit. As such, there is nothing in the record indicating that Mantello either turned a blind eye to plaintiff's complaints. Simply stated, plaintiff's assertion that Mantello ignored his complaints is refuted by the investigations conducted regarding the complaints. Similarly, plaintiff's allegation that Mantello failed to remedy a wrong is without merit because the record reflects that the investigation of the complaints came to the conclusion that no wrongs were being committed.

Aside from reiterating his initial arguments, plaintiff has failed to provide the Court with anything further in his objection which would warrant disturbing the sound conclusion of the Magistrate Judge. Accordingly, this Court accepts Magistrate Judge Homer's determination to dismiss plaintiff's claim with respect to defendant Mantello.

B. *Verbal Threats and Harassment*

Plaintiff alleges that he was subjected to verbal threats and

harassment in that corrections officers laughed and insulted him while he showered. Plaintiff also maintains that he was subjected to threats of violence. Magistrate Judge Homer recomended that defendants were entitled to summary judgment because plaintiff failed to establish an actual injury resulting from the alleged threats or harassment.

A claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998); *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995). As correctly noted by the Magistrate Judge, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Picco* 994 F.Supp. at 474. Similarly, "threats do not amount to violations of constitutional rights." *Malsh,* 901 F.Supp. at 763.

Even assuming that the alleged verbal harassment and threats occurred, plaintiff has failed to plead or prove that there were any accompanying actual injuries. Furthermore, plaintiff does not object to the findings of the Magistrate Judge with respect to verbal threats and harassment. After a thorough review of the Report-Recommendation the Court adopts the recommendation of the Magistrate Judge.

C. *Excessive Force*

**\*4** Plaintiff alleges that defendant Jensen kicked him once in the back on November 9, 1996. He states that he suffered pain but does not claim that he sought medical assistance. Plaintiff does not allege that Jensen acted maliciously or sadistically.

Magistrate Judge Homer found that plaintiff had failed to annunciate an actionable claim for excessive force. More particularly, he concluded that the alleged kick, even if true, was of limited duration and that there was no malicious intent on the part of the corrections officer.

It is well settled that "the unnecessary and wanton

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
(Cite as: 2000 WL 949457 (N.D.N.Y.))

infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers,* 475 U.S. 312 (1986))(internal quotation marks omitted). In reviewing a prisoner's claim a Court must consider whether the prison official acted with a sufficiently culpable state of mind and whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *Hudson* at 8. In considering whether the prison official possessed a culpable state of mind while engaging in the use of force, the inquiry is whether the prison official applied force maliciously and sadistically to cause harm. *Id.* at 7. The extent of an inmate's injuries is relevant to this inquiry, as is the nature and duration of the act. *James v. Coughlin,* 13 F.Supp.2d 403, 409 (W.D.N.Y.1998); *Reyes v. Koehler,* 815 F.Supp. 109, 113-14 (S.D.N.Y.1993). Important in considering the alleged wrongdoing is determining whether the force was applied in a good faith effort to maintain or restore prison discipline or maliciously and sadistically to cause harm. *Hudson* at 7.

With respect to the nature of the wrongdoing, a prisoner must demonstrate that the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions. *Romano v. Howarth,* 998 F.2d 101, 104-05 (2d Cir.1993). A prisoner is not required to demonstrate that he sustained a serious injury; *de minimis* use of force does not, however, give rise to an Eighth Amendment claim. *Hudson* at 9-10.

Plaintiff's allegations, even if true, do not support a determination that Jensen acted maliciously or sadistically. Interestingly, in his objections to the Report-Recommendation, plaintiff admits that the kick was of limited duration. In the balance of his objection plaintiff merely reiterates his opinion that the evidence submitted supports an inference of malice. The Court concludes that the conduct alleged is not sufficiently serious or harmful to reach constitutional dimensions. Accordingly, defendants are entitled to summary judgment dismissing plaintiff's excessive force claim.

D. *Access to the Courts*

Plaintiff alleges that he was denied access to the courts as

a result of cell searches, confiscation of documents and denial of supplies between August and November 1996. Plaintiff alleges that these actions were motivated to frustrate his efforts to litigate.

**\*5** Magistrate Judge Homer recommended that the defendant's motion to dismiss this claim should be granted. The Magistrate Judge found that plaintiff's claim of denial of access to the courts was unsubstantiated with any evidence which demonstrated that plaintiff had suffered any actual injuries from any alleged wrongful conduct. To the contrary, Magistrate Judge Homer concluded that plaintiff's claims were supported by a thirty-five page memorandum of law containing both case and statutory authority as well as an exhibit related to state court proceedings-all of which demonstrated plaintiff's full and adequate ability to litigate his claims.

It is well established that prisoners have a constitutional right to access the courts. "To state a claim that his constitutional right to access the court was violated, plaintiff must allege facts demonstrating that defendants deliberately and maliciously interfered with his access to the courts, and that such conduct materially prejudiced a legal action he sought to pursue." *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995); *see Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987). In other words, in order to establish a violation of his right of access to the courts, an inmate must demonstrate that he has suffered or imminently will suffer actual harm in presenting a claim to the court. *Lewis v. Casey,* 518 U.S. 343 (1996).

In his objections to the Report-Recommendation, plaintiff restates arguments already considered by Magistrate Judge Homer. He states that "[p]laintiff further reiterates that he has incurred irreparable harm and injury as a result of the lack of legal services he received while confined in Coxsackie SHU." Plaintiff goes on to note that his complaints would not have been able to have been brought had he not been transferred to the Elmira Correctional Facility. Implicit in this statement is that plaintiff was in fact allowed to bring his claims. Assuming *arguendo* that plaintiff was not allowed to bring his claims until after transfer, the fact still remains that plaintiff did in fact have the ability to air his grievances. Therefore, at best, plaintiff's hardship was delay in bringing his claims. As plaintiff has not established how such an alleged delay has

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
(Cite as: 2000 WL 949457 (N.D.N.Y.))

prejudiced his rights or amounted to an injury, he fails to make the requisite showing of actual injury for a successful claim. As such, the Court accepts Magistrate Judge Homer's recommendation and grants defendant's motion as to this claim.

E. *Sexual Harassment*

With respect to plaintiff's sexual harassment claim, Magistrate Judge Homer concluded that plaintiff failed to establish an actionable case. Magistrate Judge Homer found that the conduct involved was *de minimus* and, therefore, did not violate a constitutionally protected right.

Sexual abuse of an inmate by a corrections officer may reach constitutional dimensions and give rise to an Eighth Amendment claim. *Boddie v. Schnieder,* 105 F.3d 857, 859 (2d Cir.1997). When reviewing an Eighth Amendment claim stemming from an allegation of sexual abuse, a Court must consider whether the conduct alleged is sufficiently serious to violate contemporary standards of decency and cause severe physical and psychological harm. *Id* at 861. The Court must further consider whether the prison official involved possessed a sufficiently culpable state of mind. Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may be sufficient evidence of a culpable state of mind. *Id.* at 861.

**\*6** As set forth above, plaintiff claims that defendants Weeks and Witbeck, each on one occasion, conducted pat frisks in an improper manner. Assuming the truth of these allegations for the purposes of these motions, they are not sufficiently serious to violate contemporary standards of decency and cause severe physical and psychological harm. Plaintiff has failed to demonstrate any severe physical or psychological harm that he has suffered as a result of the alleged harassment. Thus, plaintiff's allegations of sexual abuse fail to state a claim cognizable under the Eighth Amendment. Defendants are therefore entitled to summary judgment dismissing this claim.

F. *Cell Searches*

Plaintiff alleges that he was subjected to cell searches which were designed to harass. Plaintiff's initial pleadings merely allege same with no evidence to support the claim. As a result, Magistrate Judge Homer concluded that plaintiff's claim was without merit and recommended that defendant's motion be granted.

"[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson v. Palmer,* 468 U.S. 517, 526 (1984), even where the search is retaliatory in nature. *Higgins v. Coombe,* 1997 WL 328623, at \*7 (S.D.N.Y.1997). Prisoners do, however, enjoy Eighth Amendment protection from searches that lack any legitimate penological interest and are intended solely to harass. *Nilsson v. Coughlin,* 1987 WL 129823, at \*4 (S.D.N.Y.1987), see also *Hudson* at 530.

Plaintiff fails to raise anything in his objections to the Magistrate Judge's Report-Recommendation which would warrant disturbing the sound conclusion and recommendation found therein. As Magistrate Judge Homer correctly stated the law with respect to plaintiff's claim, and since plaintiff fails to provide any evidence to support his argument that the alleged searches were improper, the Court concludes that this claim is without merit and grants defendant's motion.

G. *Deprivation of Food and Recreation*

Prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement: adequate food, clothing, shelter and medical care. Denial of a minimal civilized measure of life's necessities violates the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825 (1994). Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment. *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983); *Odom v. Sielaff,* 1995 WL 625786, at \*5 (E.D.N.Y.1995); *see also Rhodes v. Chapman,* 452 U.S. 337, 348 (1981).

Plaintiff alleges that corrections officer Witbeck denied him food on six occasions and on at least two occasions contaminated his food with spit or perfume. In support of

Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
(Cite as: 2000 WL 949457 (N.D.N.Y.))

their motion to dismiss, defendants rely on an affidavit from Witbeck denying the allegations. Defendants also rely on copies of logbook entries for the SHU in which plaintiff was housed. Because these logbooks do not contain clear entries for some of the dates in issue and would not likely reflect the wrongful denial of meals to an inmate by a corrections officer, they do not establish as a matter of law that defendants never denied plaintiff food. Credibility assessments and choices between conflicting versions of events are matters for a fact-finder at trial, not for the Court on a summary judgment motion. *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997). Thus, plaintiff's motion and defendants' cross-motion for summary judgment are denied with respect to the issue of whether plaintiff's Eighth Amendment rights were violated by deprivation of food.

**\*7** Plaintiff further alleges that he was deprived of his Eighth Amendment rights where he was allegedly denied recreation on a single occasion. Magistrate Judge Homer concluded that denial of recreation on a single occasion was not sufficiently serious to support a constitutional claim. Plaintiff does not object to these recommendations.

Although prisoner's have a constitutional right to exercise, a claim alleging deprivation of this right requires a showing of a serious deprivation and deliberate indifference on the part of prison officials. *Williams v. Greifinger,* 97 F.3d 699, 704 (2d Cir.1996); *Barnham v. Meachum,* 77 F.3d 626, 630 (2d Cir.1996). As illustrated by the Report-Recommendation, denial of recreation for eighteen out of nineteen days has been upheld in the Second Circuit and denials of up to seventy-five days have been upheld elsewhere. *Arce v. Walker,* 907 F.Supp. 658 (W.D.N.Y.1995), *aff'd in part, vacated in part* 139 F.3d 329 (2d Cir.1998); *Green v. Ferrell,* 801 F.2d 765 (5th Cir.1986).

Based on the foregoing, the Court concludes that the alleged denial of recreation on a single occasion does not support a claim for deprivation of constitutional rights. Accordingly, defendant's motion is granted with respect to this element of plaintiff's claim.

*CONCLUSION*

After a careful review of the file, party submissions and applicable law, it is hereby

ORDERED that Magistrate Judge Homer's Report-Recommendation dated December 23, 1998 is ACCEPTED IN FULL; and it is further

ORDERED that plaintiff's motion for summary judgment is DENIED in all respects; and it is further

ORDERED that defendant's cross-motion for summary judgment be DENIED with respect to plaintiff's claim against defendant Witbeck regarding the alleged deprivation of food and GRANTED in all other respects.

IT IS SO ORDERED

N.D.N.Y.,2000.
Moncrieffe v. Witbeck
Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
(Cite as: 1997 WL 642543 (N.D.N.Y.))

**c**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Robert del CARPIO, Plaintiff,

v.

Hans WALKER, Superintendent; Edward Dann, Deputy
Superintendent; Lt. Battle, Officer of the Adjustment
Committee; Officer York; Officer Kimak, Auburn Corr.
Facility, Defendants.
**No. Civ.A.95CV1502RSPGJD.**

Oct. 15, 1997.

Robert del Carpio, Federal Medical Center, Lexington,
Kentucky, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol, Albany, New York, for defendants, Lisa Renee
Harris, Assistant Attorney General, of Counsel.

**ORDER**

POOLER, J.

*1 The above matter comes to me following a
Report-Recommendation by Magistrate Judge Gustave J.
Di Bianco, duly filed on the 18th day of September, 1997.
Following ten days from the service thereof, the Clerk has
sent me the entire file, including any and all objections
filed by the parties herein.

After careful review of all of the papers herein, including
the Magistrate Judge's Report-Recommendation, and no
party having submitted objections [FN1] thereto, it is

FN1. I note that the magistrate judge's report

recommendation was returned to the court
undelivered because the plaintiff is no longer at
the address listed in the court's file, which is the
last address plaintiff instructed the court to use.
By Order filed November 22, 1995, Magistrate
Judge Gustave Di Bianco ordered that plaintiff
"promptly notify the Clerk's Office of any change
in his address." Dkt. No. 3 at 4. The same order
provided that "failure to keep such office
apprised of [plaintiff's] current address will result
in the dismissal of the instant action." *Id.* I do not
rely on plaintiff's failure to notify the court of his
current address as a basis for dismissing the
action; I merely note that plaintiff cannot in the
future claim, in reliance on his failure to receive
a copy of the report-recommendation, that he
was deprived of the opportunity to file objections
due to any fault of the court.

ORDERED, that:

1. The Report-Recommendation is hereby approved.

2. The defendant's motion is granted and the action
dismissed for the reasons set forth in the Magistrate
Judge's Report.

3. The Clerk serve a copy of this Order on the parties by
regular mail.

IT IS SO ORDERED.
GUSTAVE J. DI BIANCO, Magistrate J.

**REPORT-RECOMMENDATION**

This matter has been referred to the undersigned for
Report and Recommendation by the Honorable Rosemary
S. Pooler, United States District Judge pursuant to 28
U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
(Cite as: 1997 WL 642543 (N.D.N.Y.))

In the instant civil rights complaint, the plaintiff alleges that while he was incarcerated, defendants York and Battle harassed plaintiff and filed false misbehavior reports against him in retaliation for the exercise of his right to redress grievances and the right to practice his religion in violation of the First and Fourteenth Amendments of the Constitution. Plaintiff also alleges Eighth Amendment violations as a result of defendants' actions.

The complaint seeks both injunctive and monetary relief.

Presently before the court is the defendants' motion for summary judgment pursuant to FED.R.CIV.P. 56. For the following reasons, the undersigned will recommend granting the defendants' motion and dismissing the complaint.

## DISCUSSION

### 1. Summary Judgment

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED.R.CIV.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.*

### 2. Facts

In his complaint, plaintiff alleges a chronology of events, commencing in May of 1995. Plaintiff states that he wrote letters to Superintendent Walker about defendants York and Kimak. Plaintiff alleges that these two defendants constantly harassed plaintiff. Plaintiff then alleges that after he complained of their actions to prison officials, defendants York and Kimak participated in filing false misbehavior reports against plaintiff in retaliation for his complaints. Plaintiff also alleges that defendant York forced plaintiff to continue working when York knew that plaintiff's heart condition would not permit him to do as York asked. Plaintiff also claims that defendant York refused to feed the plaintiff. Plaintiff refers to three misbehavior reports that he alleges were fabricated.

**\*2** Plaintiff states that he has written to Superintendent Walker many times, but Walker has failed to remedy the situation. Plaintiff states that due to Walker's failure to remedy the problem, York and Kimak believe that they can continue to harass the plaintiff without adverse consequences. Plaintiff claims that Deputy Superintendent Dann failed to properly investigate plaintiff's allegations against York and Kimak. Plaintiff states that Lieutenant Battle was a hearing officer involved in the allegedly retaliatory misbehavior charges.[FN1] Plaintiff claims that defendant Battle did not properly evaluate or credit the plaintiff's testimony or the testimony of plaintiff's witnesses.

> FN1. The court notes that Lieutenant Battle was the hearing officer in only *one* of the plaintiff's disciplinary hearings. Lieutenant Perkins presided over the other two disciplinary hearings. Plaintiff did not sue Lieutenant Perkins.

### 3. Respondeat Superior

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a section 1983 action, *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), and that the doctrine of respondeat superior is inapplicable to section 1983 claims. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
(Cite as: 1997 WL 642543 (N.D.N.Y.))

In *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation. A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id.* A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.*

Defendants Walker and Dann argue that the plaintiff has not alleged sufficient personal responsibility to survive a motion for summary judgment. Clearly, neither Walker nor Dann directly participated in the alleged violations. Plaintiff seeks to establish personal responsibility by claiming that these defendants failed to remedy the violations after learning of them through a report or appeal.

Plaintiff alleges that he began writing to defendant Walker in May of 1995 about harassment by defendant York. It is true that personal responsibility of a supervisory official may be established if the official learns of the violation through a report or appeal and fails to remedy the situation. *Williams, supra.* However, the letter or complaint must alert the supervisory official to the constitutional violation of which the plaintiff complains. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Watson v. McGinnis,* 964 F.Supp. 127, 129-30 (S.D.N.Y.1997).

**\*3** In the instant case, the plaintiff's complaints to defendant Walker about York and Kimak relate to the alleged harassment that the plaintiff was suffering. There is no evidence that the Superintendent or Deputy Superintendent Dann knew anything about the plaintiff's allegation of retaliatory misbehavior reports. Thus, they could not be held liable for any claims of retaliation. The grievances that the plaintiff submitted were all investigated as shown by the defendants' exhibits. One of the grievances dealt with an allegation of "false keeplock."

[FN2] Defendants' Exhibit C. A review of the documents relating to the grievance and all the appeals associated therewith, shows no evidence that defendants Walker or Dann were ever informed of the situation. In fact, the grievance is signed by an individual named Duncan in the space reserved for the Superintendent's signature. Defendants' Exhibit C at p. 6. Attached to the grievance papers are all the memoranda regarding the investigation of the issue.

> FN2. This was the June 6, 1995 grievance mentioned in plaintiff's complaint.

Defendants' Exhibit J contains plaintiff's June 11, 1995 letters [FN3] to defendant Walker. The letters stated that defendants York and Kimak were trying to cause the plaintiff to have a heart attack by their harassment. The harassment included not releasing the plaintiff for "chow" and preventing plaintiff from timely visits to the law library. Plaintiff mentioned a false misbehavior charge, but stated that this allegation was being handled in the Cayuga County Court.

> FN3. There are two letters in Exhibit J. Both are dated June 11, 1995. One is typed and one is handwritten.

One of plaintiff's June 11 letters was given to Deputy Superintendent Dann, who asked Lieutenant Jackson to investigate the issues raised. Defendants' Exhibit K includes documents relative to Lieutenant Jackson's investigation of the matter, including memoranda of interviews of the officers involved. Although the investigation did not achieve the result desired by the plaintiff, this does not constitute the requisite personal involvement by Walker or Dann in any alleged constitutional violations.

In fact, defendant Dann wrote plaintiff a memorandum stating the results of Lieutenant Jackson's investigation. Defendants' Exhibit K. The memorandum stated that although no merit had been found in plaintiff's claims, Sergeant Lupo was told to speak with the plaintiff to make sure his concerns were addressed. *Id.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
(Cite as: 1997 WL 642543 (N.D.N.Y.))

**4. Due Process**

The complaint in this action focuses upon defendant York and Kimak's retaliatory misbehavior reports, however, in passing, the plaintiff also states that Lieutenant Battle "closed his eyes to the evidence," did not properly evaluate the plaintiff's testimony, and "covered" for the officers. These claims could be interpreted as raising a procedural due process claim in addition to the substantive retaliation claim.

The court would first point out that there were three allegedly retaliatory misbehavior reports. Lieutenant Battle was the hearing officer only at *one* of the hearings. Lieutenant Perkins was the hearing officer for the other two hearings. Plaintiff does not mention Perkins in the complaint at all. Thus, the undersigned will consider a procedural due process claim on the one hearing over which defendant Battle presided which took place on July 17, 1995. Defendants' Exhibit S. The formal charge was served on plaintiff on July 13, 1995, and charged plaintiff with refusing a direct order and being out of place. *Id.* at p. 3 (transcript of disciplinary hearing). Officer Kimak was the individual signing the misbehavior report. Defendants' Exhibit R.

**\*4** In order for a plaintiff to be awarded damages under section 1983 for an alleged violation of procedural due process, the court must find that as a result of conduct performed under color of state law, plaintiff was deprived of life, liberty, or property without due process. *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). In the instant case, there is no dispute that the defendants acted under color of state law. In *Bedoya,* the Second Circuit indicated that "[w]hat remains is a two-pronged inquiry: (1) whether the plaintiff had a protected liberty interest in not being confined in keeplock ...; and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law." *Id.* at 351-52 (citing *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460-61, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

In order to determine whether a liberty interest existed, courts, until recently, were relying on the Supreme Court decision in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In *Hewitt,* the Supreme Court

noted that a state could create a liberty interest through a statute or regulation by utilizing language of unmistakably mandatory character, limiting the discretion of the decision maker. *Id.* After the decision in *Hewitt,* lower courts, as well as the Supreme Court, focused more upon the language of the statute or regulation, rather than upon the character of the deprivation. *See e.g., Kentucky Dep't of Corrections, supra; Hernandez v. Coughlin,* 18 F.3d 133 (2d Cir.1994) (finding no liberty interest after examining regulations associated with the Family Reunion Program), *cert denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); *Matiyn v. Henderson,* 841 F.2d 31 (2d Cir.1988) (finding liberty interest in remaining free from administrative segregation based on New York regulations); *Gittens v. LeFevre,* 891 F.2d 38, 41 (2d Cir.1989) (finding a liberty interest in remaining free from keeplock based on language of the regulations).

The Supreme Court has held that the *Hewitt* analysis is not applicable and has led to undesired results in prison cases. *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Courts may no longer rely **solely** upon the language of the regulations when determining whether a liberty interest exists. *Id. at 2300.* The Court stated in Sandin that "the search for a negative implication from mandatory language in prison regulations has strayed far from the real concerns under-girding the liberty protected by the Due Process Clause." *Id.* The court also stated that it was **returning** to the principles established in *Wolff* and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). *Id.* Ultimately, the court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

**\*5** *Sandin* rejected the notion that any action taken by prison personnel for punitive reasons encroaches on a liberty interest. *Id.* at 2301. The court referred to as "dicta" statements in other cases implying that solitary confinement automatically triggers due process protections. *Sandin,* 115 S.Ct. at 2301 (citing *Wolff,* 418 U.S. at 571 n. 19; *Baxter v. Palmigiano,* 425 U.S. 308, 323, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)). Applying this

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
(Cite as: 1997 WL 642543 (N.D.N.Y.))

standard to the facts in *Sandin,* the court determined that Conner's discipline in segregated confinement for 30 days did ***not*** present the type of atypical, significant deprivation in which the state might create a liberty interest. *Id.*

In determining what constituted "atypical and significant" deprivations, the *Sandin* court compared disciplinary segregation with other forms of segregation; compared the plaintiff's confinement with conditions in general population to see whether the inmate had suffered a major disruption in his environment; and examined whether the ***length*** of the inmate's sentence was affected. *Id.*

The Second Circuit has not yet squarely addressed the issue of whether after *Sandin* an inmate facing a disciplinary hearing has a liberty interest, protected by due process. The Second Circuit has *implied* that whether a deprivation is atypical and significant involves fact finding. *See Frasier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996) ("[t]he extensive fact-finding of the district court permits us to measure Frasier's SHY claim by the standard of *Sandin* ); *Samuels v. Mockry,* 77 F.3d 34, 38 (2d Cir.1996) (assessment as to whether inmate had a protected liberty interest may require fact finding).

Some courts in New York have also read *Sandin* narrowly and have distinguished the holding when applying the *Sandin* factors and distinguishing the situation experienced by inmate Conner to that experienced by New York inmates who face Tier III disciplinary hearings. *See Campo v. Keane,* 913 F.Supp. 814, 820-21 (S.D.N.Y.1996); *see Moolenaar v. Finn,* No. 94 Civ. 6778 n. 4 (S.D.N.Y. March 14, 1996) (commenting that the case involved a Tier II hearing with no ***possibility*** of loss of good time and contrasting Tier III hearings where such loss is possible). As noted by the courts in *Campo* and *Moolenaar,* a recognized Second Circuit principle is that due process rights must be determined with respect to the "potential penalty". *Campo,* 913 F.Supp. at 821 (citing *McKinnon v. Patterson,* 568 F.2d 930, 939 (2d Cir.1977), *cert denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). Some courts, however, have squarely rejected the potential penalty theory, opting instead to examine the facts and length of each confinement to determine whether the confinement was atypical and significant. *See Marino v.. Klages,* No. 95-CV-1475 (N.D.N.Y. March 27, 1997) (declining to adopt the

potential penalty approach); *Delany v. Selsky,* 899 F.Supp. 923, 927-28 (N.D.N.Y.1995) (considering length of confinement together with plaintiff's unusual physical problems).

**\*6** In the instant case, the plaintiff was subjected only to a ***Tier II*** hearing, in which the maximum possible penalty he could receive was 30 days of segregated housing or keeplock. *See* N.Y.Comp.Codes R. & Reg. Tit. 7 § 254.7(a)(iii) and (vi). There is no possibility in a Tier II hearing of a loss or even a recommended loss of good time. Regardless of the disposition, the length of an inmate's sentence cannot be affected as a result of a Tier II hearing. Even under the potential penalty approach, this plaintiff, who was only sentenced to five days of keeplock for the hearing that he is challenging would not have a liberty interest in being free from that confinement. Thus, any procedural due process claim against Lieutenant Battle, based on the July 17, 1995 disciplinary hearing may be dismissed.

**5. Verbal Harassment**

Plaintiff states that defendants York and Kimak harassed him "to death." Verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation. *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997). Thus, any claims of general verbal harassment by either defendant may be dismissed.

**6. Retaliation**

Even after the Sandin decision, a claim that a false misbehavior report was filed in retaliation for the exercise of a constitutional right, is still actionable as a violation of ***substantive due process.*** The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to false misbehavior charges or be harassed in retaliation for the exercise of a constitutional right such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
(Cite as: 1997 WL 642543 (N.D.N.Y.))

Cir.1988). In cases where the defendants' actions are taken for both retaliatory and legitimate reasons, ultimately the defendants must show that they would have taken the same action absent the retaliatory motive. *Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir .1994).* Courts recognize, however, that claims of retaliation may be prone to abuse. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). The court in Flaherty described three situations where retaliation is claimed, each situation requiring a different approach by the court. *Id.* The court stated that a retaliation claim supported by specific and detailed allegations must be pursued with full discovery. *Id.* Whereas, a claim that contains "completely conclusory" allegations may be dismissed on the pleadings alone. *Id.* The third situation involves a complaint alleging facts that give rise to a "colorable suspicion of retaliation." *Id.* This third type of case will support at least documentary discovery. *Id.*

In the instant case, the plaintiff alleges that officers York and Kimak filed the false misbehavior reports in retaliation for plaintiff's complaints and grievances against them. Plaintiff also alleges that defendant York retaliated against plaintiff for the exercise of a First Amendment right to practice his religion. This latter claim is not explained by the plaintiff. He does not allege specifically what First Amendment right he was exercising or how the defendants' actions were in retaliation for the exercise of that right.

**\*7** Defendants have submitted all the records relating to the disciplinary hearings. With respect to the charges, a review of the transcripts of the disciplinary hearings shows that the plaintiff was given the opportunity to explain his behavior at the disciplinary hearing. *See e.g.* Defendants' Exhibit M at p. 4. Exhibit M is the transcript of the disciplinary hearing that took place on June 11, 1995 for a misbehavior that occurred on June 7, 1995. The misbehavior involved the plaintiff failing to obey an order to continue working. The plaintiff admitted that he did not continue working when defendant York told him to continue. *Id.* Plaintiff stated that his medical condition was preventing him from continuing. *Id.* Essentially, the plaintiff admitted his behavior, but alleged a defense that his medical condition prevented him from following the officer's order.

Thus, the misbehavior report was not *false.* Rather, the plaintiff had an explanation for his misbehavior that the hearing officer did not believe. In fact, hearing officer Perkins adjourned the hearing to "check into [[[plaintiff's] medical profile." *Id.* at p. 5. The hearing was reconvened on July 12, 1995, and Lieutenant Perkins had reviewed the plaintiff's medical record. *Id* . at p. 6. Perkins determined that although the plaintiff did have a health problem, there was no indication that he could not work. *Id.* Whether the hearing officer made the correct decision is not the issue. It is clear that at worst, there could have been a dual motivation for defendant York's misbehavior report, and plaintiff did admit failing to obey the officer's order, albeit with reason.

The misbehavior report of July 8, 1995 resulted in a hearing on July 12, 1995. First, the officer fling the misbehavior report was Officer Hoey. The misbehavior report involved unauthorized legal assistance and unauthorized legal exchange. Defendants' Exhibit P (transcript of July 12 hearing). A frisk of the plaintiff's cell resulted in finding 81 pages of legal work that belonged to other inmates. Plaintiff did not dispute that the legal papers were in his cell, but argued that he was using the other individuals' papers to work on his own legal matters. *Id.* at p. 3. The hearing officer simply did not believe the plaintiff's explanation. *Id.* at p. 5.

Neither defendant York nor defendant Kimak was directly involved in the search or the misbehavior report of July 7, 1995. Thus, there is no evidence that this misbehavior report was false and in retaliation for any constitutional right exercised by the plaintiff.

The final misbehavior report was authored by defendant Kimak and involved refusal to obey an order and being out of place. The disciplinary hearing was held on July 17, 1995. Defendants' Exhibit S (transcript of disciplinary hearing). The misbehavior report stated that when plaintiff was returning from his shower, he refused to obey Officer Kimak's order get back into plaintiff's cell. Defendant Kimak stated in the report that plaintiff had stopped at one of the cells and placed his hands inside. *Id.* at p. 3. Plaintiff alleged at the hearing that he was returning from the shower, but he did not stop at anyone's cell and did not disobey any orders. *Id.* at p. 4. Plaintiff also told the hearing officer that defendant Kimak's actions were in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
(Cite as: 1997 WL 642543 (N.D.N.Y.))

retaliation for plaintiff's complaints against Kimak. *Id.* at pp. 4-5. Plaintiff called two inmate witnesses to testify at the hearing. *Id.* at p. 7. His first witness was very unclear, but essentially testified that he did not hear the officer give plaintiff an order. *Id.* The second inmate was more articulate and stated that after plaintiff exited the I shower, he always went straight back to his cell. *Id.* at p. 12. Moore testified that he did not hear any order given. *Id.* However, Lieutenant Battle found the witnesses incredible and found plaintiff guilty of the misbehavior. It would appear that the only evidence of retaliation is the plaintiff's allegation of complaints against Kimak and York. A review of the documents I relating to the misbehavior reports shows that even if the plaintiff's statements are credited, the misbehavior reports could have been written for valid reasons as well as invalid reasons. Thus, the plaintiff cannot maintain an action for retaliation in the instant case.

**7. Eighth Amendment**

**\*8** Plaintiff makes some vague allegations that the defendants forced him to work when he was not capable. Plaintiff admitted at his disciplinary hearing that he wanted to work but needed to take a break. Lieutenant Perkins looked through the plaintiff's medical records and found no limitations with respect to the work he could do. The medical record did note a heart condition.

The Eighth Amendment prohibits the infliction of cruel and unusual punishments, including punishments that involve the unnecessary and wanton infliction of pain. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). In order to state a claim based on inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A plaintiff must allege that his access to physicians for necessary medical care was unreasonably delayed or denied or that prescribed medical treatment was not administered. *Tomarkin v. Ward,* 534 F.Supp. 1224, 1230 (S.D.N.Y.1982) (citing *Todaro v. Ward,* 431 F.Supp. 1129, 1133 (S.D.N.Y.), *aff'd,* 565 F.2d 48 (2d Cir.1977)). Plaintiff's claims, although not specifically involving medical care, do involve allegations that the defendants violated the doctor's orders, and are governed by the same

deliberate indifference standard. Deliberate indifference, whether evidenced by medical staff or by officials who allegedly disregard the instructions of the medical staff requires more than negligence, but less than conduct taken for the very purpose of causing harm. *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). In order for a prison official to act with deliberate indifference, the official must know of and disregard an excessive risk to inmate health and safety. *Id.* at 1979. The official must both be "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* In the instant case, defendant York allegedly told the plaintiff to keep working when plaintiff stated that he needed a break. The defendant could not have been deliberately indifferent since there was no medical limitation on plaintiff's work in his medical file. Thus, York could not have known about and disregarded a serious risk to plaintiff. Additionally, according to the misbehavior report, the plaintiff had already taken a break when defendant York told plaintiff to keep working. Thus, based on the undisputed facts, there is no evidence that defendant York violated the plaintiff's Eighth Amendment rights relating to his medical condition. Plaintiff also indicated in his complaint that defendant York refused to let plaintiff out of his cell to be fed. Plaintiff wrote a grievance on June 29, 1995 regarding being released "for chow." Defendants' Exhibit D. However, it does not appear that Officer York was involved in the incident. In fact, the grievance was resolved informally. Thus, the plaintiff does not state any Eighth Amendment claim for a retaliatory denial of food or for any denial of food.

**\*9 WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the defendants' motion for summary judgment (docket # 15) be **GRANTED,** and the complaint be **DISMISSED.**

Pursuant to 28 1 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
(Cite as: 1997 WL 642543 (N.D.N.Y.))


Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R .Civ.P. 6(a), 6(e), 72.


N.D.N.Y.,1997.
Carpio v. Walker
Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1987 WL 10724 (S.D.N.Y.)
(Cite as: 1987 WL 10724 (S.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
EARL FRANCE, Plaintiff,
v.
THOMAS A. COUGHLIN, III, Commissioner; PHILIP
B. COOMBE, JR., Former Superintendent, R. HOKE,
Present Superintendent, HERBERT McLAUGHLIN,
1st Dept. Superintendent, CAPTAIN DEMSKY,
ROBERT FLEMING, Former Institutional Stewart,
SGT. THOMAS J. LUCAS, OFFICER CREGG
WILHELM, and JOSEPH WILHELM, Postmaster
General of Napanoch Post Office, Individually and in
their Official Capacities, Defendants.
**No. 85 Civ. 6347 (KBM).**

May 4, 1987.

EARL FRANCE, pro. se.

ROBERT ABRAMS Attorney General of State of New
York By Eugene Murphy, for State Defendants.

RUDOLPH GIULIANI, United States Attorney for
Southern District of New York By Beth Kaswan, for
Defendant Joseph Wilhelm, Postmaster for the Napanoch,
New York Post Office.

OPINION

MOTLEY, District Judge.

**\*1** Plaintiff pro se, a prisoner in the New York State
prison system has brought this complaint under 42 U.S.C.
section 1983 alleging violations of his rights under the
First, Fourth, and Fourteenth Amendments. Plaintiff
alleges as well violations of certain federal and state laws

and regulations. Plaintiff's complaint arises out of a cell
search by prison authorities, a subsequent seizure and
opening of several pieces of plaintiff's outgoing non-legal
mail, and the disciplinary proceedings and action that
resulted. Plaintiff has requested appointment of counsel.
In addition, he has applied for preliminary relief in the
form of an injunction barring prison officials from
instituting tier two and tier three disciplinary proceedings
against him during the pendency of this lawsuit.

The state defendants, all consisting of prison personnel
and Department of Correction officials, have moved for
summary judgment on each of plaintiff's claims and have
also opposed his application for preliminary injunctive
relief. The one remaining defendant, a federal postal
employee, has also moved for summary judgment. For the
reasons that follow, defendants' motions for summary
judgment are granted in their entirety and plaintiff's
applications for appointment of counsel and preliminary
relief are accordingly denied.

Background

From plaintiff's voluminous complaint, his amended
complaint, his assorted affidavits and exhibits, and from
four prison documents submitted by defendants, the
following undisputed material facts emerge. Prior to the
incidents complained of in this lawsuit, defendant
Correction Officer Cregg [sic] Wilhelm, whom plaintiff
assisted as a clerk, had permitted the typing and copying
of certain chain mail letters. Correction Officer Wilhelm's
brother, Joseph Wilhelm, was Postmaster of the
Napanoch, New York Post Office. In January 1985 a
search of plaintiff's cell was conducted which uncovered
certain items, including a portion of a chain letter, some
money, and a facility letterhead, all of which violated
prison rules. Around the same time, defendant Demskie
(misspelled 'Demsky' in plaintiff's complaint) sent
defendant Lucas to the Napanoch Post Office to retrieve
plaintiff's letters from the prison mail bag. Lucas returned
with the letters sent by plaintiff. They included four chain
letters requesting money, as well as several other letters
involving separate violations of prison mail rules,
including the existence of incorrect return addresses,
unclear addressees, and misuse of state property.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 10724 (S.D.N.Y.)
(Cite as: 1987 WL 10724 (S.D.N.Y.))

Plaintiff was served with notice of the charges arising out of the cell search and the mail inspection and was permitted to select an assistant to aid him in defending himself. According to the legal assistant's report signed by plaintiff at the time, plaintiff did not request any witnesses to appear at his hearing. At the ensuing disciplinary hearing a few days later, plaintiff requested the name of the officer who was responsible for authorizing the cell search and mail retrieval. This request was denied as was plaintiff's request for the names of witnesses or their testimony if any. At the disciplinary hearing, defendant Fleming, who was conducting the session, opened four of the retrieved letters, read them each and showed them to defendant Lucas. The other five letters had been opened prior to the hearing. At the hearing plaintiff signed a form confirming he had requested no witnesses to appear on his behalf.

*2 On February 5, 1985, plaintiff received a disposition of 'not guilty of smuggling.' He was found guilty, however, of the various other charges including misuse of government property, solicitation of funds, possession of money, and abuse of mail privileges. Plaintiff's punishment was 90 days keeplock, loss of telephone, package, and commissary privileges while keeplocked, and a $25 restitution fee. Subsequent to the hearing plaintiff lost his paid position as a prison clerk.

Discussion

Summary judgment is appropriate when, resolving all factual disputes and drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 2509-11, 91 L.Ed.2d 202 (1986); Knight v. U.S. Fire Insurance Co., 804 F.2d 9 (2d Cir. 1986); Golden v. Coombe, 508 F. Supp. 156, 158 (S.D.N.Y. 1981). Although pro se complaints must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Washington v. James, 782 F.2d 1134, 1138 (2d Cir. 1986), 'the solicitousness with which pro se pleadings are accepted is not without limits.' Golden v. Coombe,

508 F. Supp. 156, 158 (S.D.N.Y. 1981). Thus, where as a matter of law defendants are entitled to dismissal either on the undisputed material facts, or even taking all of plaintiff's allegations as true, summary judgment may frequently be proper even in pro se actions. Id. See also Wolfe v. Carlson, 583 F. Supp. 977 (S.D.N.Y. 1984).

Fourth Amendment Cell Search Claim

Turning to the merits of plaintiff's complaint, and beginning with the claim that defendants' search of his prison cell constituted a violation of plaintiff's Fourth Amendment rights, there can be no question that defendants are entitled to summary judgment. The Supreme Court has stated unequivocally that the 'Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.' Hudson v. Palmer, 468 U.S. 517, 526 (1984); Christman v. Skinner, 468 F.2d 723 (2d Cir. 1972). Since plaintiff's claim with regard to the cell search-which even in plaintiff's account was neither dramatic nor violent-is simply that it violated his Fourth Amendment right to be free from unreasonable searches and seizures, it clearly must be dismissed.

First Amendment Mail Obstruction Claim

Plaintiff's claim that the retrieval and inspection of his outgoing mail violated his First Amendment rights has more foundation but is ultimately without merit. Prisoners' well established First Amendment right in the free flow of their mail, both incoming and outgoing, requires that prison restrictions on inmate mail must be reasonably related to prison interests in security and order. Procunier v. Martinez, 416 U.S. 396 (1974); Heimerle v. Attorney General, 753 F.2d 10 (2d Cir. 1985); Davidson v. Scully, 694 F.2d 50 (2d Cir. 1982); Wolfish v. Levi, 573 F.2d 118 (2d Cir. 1978), rev'd in part on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (1979). Permissible restrictions on a prisoner's legal mail, a category which implicates the right of access to the courts, are extremely limited. Washington v. James, 782 F.2d 1134 (2d Cir. 1986). As to other sorts of outgoing mail, prison officials may open or read it but only if there is 'good cause.' Heimerle v. Attorney General, 753 F.2d 10 (1985); Wolfish v. Levi, 573 F.2d 118 (2d Cir. 1978);

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 10724 (S.D.N.Y.)
(Cite as: 1987 WL 10724 (S.D.N.Y.))

Golden v. Coombe, 508 F. Supp. 156 (S.D.N.Y. 1981).
See also Wolff v. McDonnell, 418 U.S. 539, 576 (1974)
( 'freedom from censorship is not equivalent to freedom
from inspection or perusal' of prisoner mail).

**\*3** In the present case, plaintiff's outgoing, non-legal mail
was inspected and opened (some of it in plaintiff's
presence) under the authority of New York Department of
Correctional Services Directive #4422 which governs
correspondence between an inmate and another person and
delineates the prison's authority to inspect such mail. The
constitutionality of Directive #4422 has been upheld by
this court.    Golden v. Coombe, 508 F. Supp. 156
(S.D.N.Y. 1981).  Indeed, the regulation has been held to
provide inmates greater protection than the constitution
requires.  Id. at 160. Directive #4422 provides that certain
outgoing correspondence, excluding inmate business mail,
may be sealed by prisoners, and that it shall not be opened
or inspected unless there is authorization from the
Superintendent and the inspection is justified by a
reasonable suspicion that the mail threatens the security of
the prison or a third person.

The inspection and opening of plaintiff's mail here, even
taking plaintiff's account of the incident as entirely true,
was within constitutional bounds. Defendants had good
cause, in the interest of prison order and security, and in
the interest of ensuring compliance with legitimate prison
and other regulations regarding chain letters and mail
solicitations, to inspect and open plaintiff's mail.
According to plaintiff himself, prior to the mail incident
the prison authorities had been notified of plaintiff's chain
mail scheme by a corrections officer in whom plaintiff had
confided. A search of plaintiff's cell had provided
additional evidence of this scheme. Thus, because there
was good cause to inspect and open this non-legal mail,
defendants' action passes constitutional muster.

Even if this court had found that defendants' conduct with
regard to plaintiff's mail was in fact unconstitutional,
nonetheless, the state of the law at the time the incident
occurred was such that defendants would be entitled to
qualified immunity. State officials, including prison
officials, have a right to qualified immunity for actions
taken in their official capacity if they act in good faith and
on the basis of a reasonable belief that their actions are
lawful.  Procunier v. Navarette, 434 U.S. 555 (1978);

Bolden v. Alston, No. 86-2219 (2d Cir. Jan. 26, 1987).
See also Harlow v. Fitzgerald, 457 U.S. 800 (1982)
(granting federal officials qualified immunity from suit
where their actions did not violate 'clearly established
constitutional rights').

Although by 1985 the holding of Sostre v. McGinnis, 442
F.2d 178, 201 (2d Cir. 1971) (en banc), cert. denied, 405
U.S. 978 (1972) that 'prison officials may open and read
all outgoing and incoming correspondence to and from
prisoners' had been considerably eroded, see Heimerle v.
Attorney General, 753 F.2d 10, 12 (2d Cir. 1985), the law
was, and remains, that prison officials may permissibly
inspect or read outgoing mail, especially non-legal mail,
if there is 'good cause.'  Id. at 13 n. 5;  Golden v.
Coombe, 508 F. Supp. 156, 158-160 (S.D.N.Y. 1981).
Thus, at the time the mail incident complained of
occurred, defendants, at the very least, could reasonably
have believed that their seizure and inspection of plaintiff's
nine letters were well within constitutional bounds because
of the established 'good cause' rationale for the action.
Accordingly, they would be entitled to qualified immunity
for the incident even were this court to find that plaintiff's
constitutional rights had been violated.

**\*4** Finally, with respect to the mail incident, plaintiff
alleges that defendants violated state rules for inspection
of prisoner mail by failing to obtain proper authorization
from the superintendent. This apparently disputed issue of
fact is of no concern here. Whether or not defendants
complied with all aspects of Directive #4422, which as
noted above gives more protection than constitutionally
required, the seizure of plaintiff's mail did not constitute a
violation of plaintiff's constitutional rights. Thus, this is
not the proper forum for litigating any alleged
non-compliance with the Directive during the January
1985 incident. See Golden v. Coombe, 508 F. Supp. 156,
158-59 (S.D.N.Y. 1981).

Plaintiff also alleges that the seizure of his mail violated
the federal criminal statutes against obstruction of mails.
18 U.S.C. section 1701 et seq. Because there is no private
right of action under this statute, see Contemporary
Mission, Inc. v. U.S. Postal Service, 648 F.2d 97, 103 (2d
Cir. 1981) (no private cause of action against either the
Postal Service or its officials for alleged violations of
rights in connection with investigation of mail-order

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 10724 (S.D.N.Y.)
(Cite as: 1987 WL 10724 (S.D.N.Y.))

business), defendants' violation of it, even if proved, could supply no basis for liability under Section 1983. See Middlesex City Sewerage Authority v. National Sea Clammers Assn., 453 U.S. 1, 19-21 (1981); Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 27-28 (1981) (while section 1983 encompasses violations of rights secured by the 'laws' of the United States, it is available only to remedy violations of those federal statutes which create rights within the meaning of section 1983).

Fourteenth Amendment Due Process Claims

Plaintiff's third set of claims concern the disciplinary hearing that resulted pursuant to the cell search and the mail inspection. Plaintiff contends that the disciplinary proceedings violated his due process rights in various ways. To begin with, plaintiff argues that defendants should have provided the names of his accusers and of the person who authorized the cell search and the mail inspection. Plaintiff also claims that his request to call witnesses at the hearing was denied. In addition, plaintiff appears to claim that the disposition was against the weight and sufficiency of the evidence and that the punishment imposed was disproportionate to the offense.

It is without question, due to the seriousness of the potential punishment here, that the disciplinary proceedings at issue in this case implicated plaintiff's due process rights. McCann v. Coughlin, 698 F.2d 112, 121 (2d Cir. 1983) (potential punishment of fourteen days in keeplock is a sufficiently serious liberty deprivation to trigger prisoner's due process rights). The Supreme Court has delineated the scope of the due process rights that must be accorded a prisoner in disciplinary hearings. While prison disciplinary committees are not required to grant full procedural protections such as those afforded at a criminal trial, an inmate claims has a right to at least 24 hours advance notice of the charges against him, and must also be informed of the reasons for the action taken, and the evidence relied upon by the Committee in reaching its decision.   Wolff v. McDonnell, 418 U.S. 539 (1974); McCann v. Coughlin, 698 F.2d 112 (2d Cir. 1983). An inmate also has a right to call witnesses and present evidence in his defense when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals. Wolff v. McDonnell, supra; Bolden v.

Alston, No. 86-2219 (2d Cir. Jan. 26, 1987) (dismissing claim of due process violation at prison disciplinary hearing); McCann v. Coughlin, supra. See also Ponte v. Real, 471 U.S. 491, 105 S. Ct. 2192, 85 L. Ed.2d 553 (1985) (prison official's reasons for refusing to call requested witness need not be in writing; irrelevance of requested witness is a legitimate ground for refusal).

**5** The most meritorious of plaintiff's due process claims-since clearly this is an established right-is that he was denied his right to call witnesses at the hearing. Plaintiff's conclusory allegation that he was denied this right, however, is belied by contemporaneous documents submitted by defendants in connection with this motion. Plaintiff signed two forms, one prior to the hearing, and another at the hearing, stating that he had requested no witnesses. Thus, because the absence of witnesses at plaintiff's hearing was attributable to plaintiff's own lack of diligence in excercising his rights rather than to any denial of rights on the part of defendants, there is no basis for finding liability under section 1983. See Wolfe v. Carlson, 583 F. Supp. 977, 983 (S.D.N.Y. 1984). [FN1]

Plaintiff's remaining due process claims are clearly without merit.  A prisoner has no due process right to know the identity of those inmates or corrections officers who have participated in an investigation or who have furnished evidence against him.   Wolff v. McDonnell, 418 U.S. 539, 567-68 (1974). See also Wolfe v. Carlson, 583 F. Supp. 977, 980-82 (S.D.N.Y. 1984).   As to plaintiff's claim that there was insufficient evidence to support the disposition made by the hearing officer, as long as there was some evidence to support the determination it will pass constitutional muster.   Wolfe v. Carlson, 583 F. Supp. 977, 981 (S.D.N.Y. 1984). See also Superintendent v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L. Ed.2d 356 (1985) (to comport with due process, a prison disciplinary board's decision to revoke prisoner's good time credits must be supported merely by 'some evidence'). The guilty dispositions handed down by the prison authorities were plainly supported by 'some evidence.' Even without more, the chain letters presented at the hearing and plaintiff's own admissions support the determination that plaintiff was guilty of violating the various prison rules as charged.

Finally, plaintiff's allegation that the extensive keeplock

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 10724 (S.D.N.Y.)
(Cite as: 1987 WL 10724 (S.D.N.Y.))

time imposed, as well as the other penalties, constituted an excessive punishment in violation of his due process right, is insufficient to make out a claim under section 1983. Absent a clear showing of gross abuse, a prison authority's judgment in ordering confinement should prevail and will not give rise to a cause of action under section 1983 action. Anderson v. Coughlin, 700 F.2d 37, 44 (2d Cir. 1982). Where, as here, there was ample evidence of the prisoner's guilt and, as indicated on the disposition form, a substantial history of rule infraction, there is no basis for this court to find that the punishment imposed, though apparently quite harsh, was in any manner grossly abusive.

Conclusion

In conclusion, each of plaintiff's claims as to both the state [FN2] and federal [FN3] defendants, including his due process, his First Amendment, and his Fourth Amendment claims, is without merit, [FN4] and presents no disputed issue of material fact to warrant further consideration of this action. Accordingly, defendants' motion for summary judgment are granted and this case is dismissed in its entirety.

      FN1 In a submission filed after this motion was ripe, and that would not have been considered by this court absent the generous treatment to which pro se litigants are entitled, plaintiff appears to contend that the two documents signed by plaintiff and indicating that he had not requested the presence of any witnesses at the disciplinary hearing were in fact fraudulent. Plaintiff offers absolutely no support for this conclusory allegation; thus it is insufficient to withstand a motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986).

      Furthermore, since the alleged witness denial would have been a violation of procedural rather than of substantive due process, and because plaintiff could have sought redress under state law–for example, in the form of an Article 78 proceeding, or by raising this putative fraud in his appeal to the Commissioner (which apparently was not done)–the alleged witness

denial would not be actionable as a denial of due process under section 1983 since adequate state remedies existed. See Parratt v. Taylor, 451 U.S. 527 (1981); Morello v. Nowakawski, No. 86-2106 (2d Cir. Jan 26, 1987).

      FN2 A further ground for the dismissal of this action as against state defendants Coughlin, Coombe, and Hoke is that plaintiff has failed to allege personal involvement on the part of any of these individuals in the various occurrences claimed to have violated his constitutional rights. It is well settled that the doctrine of respondeat superior provides no basis for liability under 42 U.S.C. section 1983. See, e.g., McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977). Thus, even if this court had found merit in any of plaintiff's constitutional claims arising out of either his cell search, the mail inspection, or the disciplinary proceedings, there could be no liability against Coughlin, Coombe or Hoke because plaintiff alleges no direct involvement on their part. Plaintiff also makes no claim that these individuals had either actual or constructive notice of the alleged violations such as to impose liability on any of them under the theory that they were guilty of 'gross negligence' and 'deliberate indifference' with regard to plaintiff's constitutional rights. McCann v. Coughlin, 698 F.2d 112, 125 (2d Cir. 1983). Indeed, at least as to the mail inspection, plaintiff implicitly alleges the contrary as to the state of the Superintendent's knowledge by claiming that the mail search violated of state directives precisely in that there was no authorization by the Superintendent as required.

      FN3 A further ground for the dismissal of this action as against the federal defendant, Joseph Wilhelm, Postmaster of the Napanoch, New York Post Office, lies in the lack of any substantiated allegation of personal involvement on his part in the asserted constitutional violations involving plaintiff's mail. As stated above in footnote 2, personal responsibility-whether it be grounded in active participation in a constitutional deprivation, or knowing and culpable indifference to it-is a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 10724 (S.D.N.Y.)
(Cite as: 1987 WL 10724 (S.D.N.Y.))

prerequisite to any finding of liability under 42 U.S.C. section 1983. The rules of liability for state officials under section 1983 are generally also applicable to the federal defendants in a Bivens action. See Butz v. Economou, 438 U.S. 478, 500-504 (1978); Ellis v. Blum, 643 F.2d, 68, 84 (2d Cir. 1981). Plaintiff's vague and conclusory suggestion that Joseph Wilhelm, who was the brother of Correction Officer Craig Wilhelm, conspired with the state defendants to effect an improper tampering of plaintiff's mail, is insufficient to raise any issue of material fact as to Joseph Wilhelm's personal involvement in the alleged abuses, and accordingly is insufficient as well to defeat the Government's motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). See also Wyler v. United States, 725 F.2d 156, 160 (2d Cir. 1983); Markowitz v. Republic National Bank, 651 F.2d 825, 828 (2d Cir. 1981).

FN4 Because, as discussed herein, this court has found as a threshold matter that plaintiff's complaint is clearly lacking in merit, his application for appointment of counsel is denied. See Hodge v. Police Officers, 802 F.2d 58, 60-61 (2d Cir. 1986).

Similarly, plaintiff's complaint having been dismissed on the merits, there is no need to consider plaintiff's application for preliminary injunctive relief pending the outcome of this litigation.

S.D.N.Y., 1987.
France v. Coughlin
Not Reported in F.Supp., 1987 WL 10724 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Edward P. GRIFFIN-NOLAN, Plaintiff,
v.
PROVIDENCE WASHINGTON INSURANCE
COMPANY and Howard Blute, in his Individual
Capacity as Manager for the Business Development
Executives at Washington Insurance Company,
Defendants.
**No. 504CV1453FJSGJD.**

June 20, 2005.

Chamberlain, D'Amanda, Oppenheimer & Greenfield
LLP, The Galleries of Syracuse, Syracuse, New York, for
Plaintiff, Mairead E. Connor, of counsel.

City of Syracuse Corporation Counsel, Syracuse, New
York, for Defendants, David H. Walsh, IV, of counsel.

MEMORANDUM-DECISION AND ORDER

SCULLIN, Chief J.

I. INTRODUCTION

**\*1** Plaintiff's complaint asserts (1) a 42 U.S.C. § 1983
cause of action for false arrest and denial of First
Amendment rights against Defendants City of Syracuse
("City"), Mullen, and Hennessey, alleging that Defendants
arrested him for speaking to Defendant officers about their
conduct in arresting a third-party; (2) a § 1983 cause of
action for false arrest and denial of First Amendment
rights against all Defendants, alleging that they arrested
him because they believed he might file a complaint of

police misconduct; (3) a § 1983 cause of action for failure
to train against Defendant City, alleging that Defendant
City acted with deliberate indifference in failing to train its
officers with respect to what constitutes the crime of
obstruction of justice and how to handle the public; (4) a
§ 1985(3) cause of action against all Defendants for
conspiracy to deprive him of the equal protection of the
law and of his equal privileges and immunities, alleging
that Defendants conspired to so deprive him out of animus
for his attempt to prevent them from injuring a
third-person on the basis of that third-person's race or
color; (5) a common law false arrest claim against all
Defendants; (6) a common law false imprisonment claim
against Defendants Mullen, Cecile, and City; (7) a
common law malicious prosecution claim against all
Defendants; (8) a common law libel claim against
Defendant Hennessey, alleging that he made false
statements in his Complaint Information; and (9) a claim
for attorney's fees pursuant to 42 U.S.C. § 1988.

Based upon these claims, Plaintiff seeks (1) declaratory
relief with respect to all causes of action, (2) injunctive
relief with respect to all causes of action other than those
made pursuant to § 1983, (3) compensatory damages, (4)
exemplary or punitive damages, and (5) costs,
disbursements, and legal fees.

Currently before the Court is Defendants' motion to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(5)
and 12(b)(6) of the Federal Rules of Civil Procedure.[FN1]

FN1. Defendants' motion to dismiss does not
address Plaintiff's claim for attorney's fees
pursuant to 42 U.S.C. § 1988.

II. BACKGROUND [FN2]

FN2. Given the procedural posture of this case,
the Court assumes the truth of the allegations in
Plaintiff's complaint.

On the evening of December 16, 2003, Plaintiff was

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

working as a licensed massage therapist at his booth in the Carousel Center mall. *See* Dkt. No. 1 at ¶ 10. Around 8:00 p.m. of that evening, he saw a "Hispanic man of color" ("Paredes") walking toward him and noticed a mall security officer pointing Paredes out to Defendants Hennessey and Mullen. *See id.* at ¶ 11. When Defendant Hennessey tried to stop Paredes by placing his hand on Paredes' chest, Paredes spat on the floor and continued shouting that he was going to kill someone. *See id.* at ¶ 12. Defendant Hennessey then took Paredes behind Plaintiff's booth, told him to show some respect, and smashed his back and head against a concrete pillar. *See id.* at ¶¶ 13-14. Paredes then either pushed or kicked at Defendant Hennessey, at which point they both tumbled and knocked over Plaintiff's booth. *See id.* at ¶¶ 15-16. With Paredes face-down on the floor, Defendant Hennessey placed his knee in Paredes' back and began punching him in the back. *See id.* at ¶¶ 18-19. Defendant Mullen then also placed his knee in Paredes' back and began punching him in the back and sides. *See id.* at ¶ 21. Defendant officers each hit Paredes six or more times after they had subdued him. *See id.* at ¶ 22.

**\*2** Plaintiff crouched by Defendant officers and told them that they had gone over the top and were out of control. *See id.* at ¶ 24. Defendant Mullen told Plaintiff to get back, and Plaintiff complied. *See id.* at ¶¶ 26-27. After Defendant officers continued to punch Paredes in the back, Plaintiff again told them that they were over the top. *See id.* at ¶¶ 28-29. Defendant Mullen told Plaintiff that, if he did not stop, he would be arrested for Obstructing Governmental Administration. *See id.* at ¶ 30. Plaintiff stopped speaking to Defendant officers, and they pulled Paredes up and led him away. *See id.* at ¶¶ 31-32.

At approximately 9:00 p.m., Defendant Mullen returned to Plaintiff's booth with Defendant Cecile and a mall security guard. *See id.* at ¶ 33. Defendant Cecile told Plaintiff that he understood that Plaintiff had been involved in an incident earlier in the evening and asked Plaintiff to explain what happened. *See id.* at ¶ 34. As soon as Plaintiff began to explain, Defendant Cecile stopped him and asked him whether he understood that he could be arrested. *See id.* at ¶ 35. Defendant Cecile told Plaintiff that, at the time of the incident, it was Defendants Hennessey's and Mullen's call whether to arrest Plaintiff but that, if Plaintiff made a complaint, it would be his call whether to arrest Plaintiff. *See id.* at ¶ 37. After Plaintiff

said that he was not sure how the complaint procedure worked, Defendant Cecile showed Plaintiff the patch on his shoulder and said, " 'It's right here with me, right now." ' *See id.* at ¶¶ 38-39. Plaintiff told Defendant Cecile that he did not think that this was the only way to file a complaint. *See id.* at ¶ 40. Defendant Cecile then told Plaintiff that, if he filed a complaint, Defendant Cecile would take him down. *See id.* at ¶ 41. Next, Defendant Cecile told Defendant Mullen, " 'He's not happy. We're going to get a complaint. Take him in,' or words to that effect." *See id.* at ¶ 42. When Plaintiff said that he had things at his booth that he could not leave unsecured, Defendant Cecile told him that he should have thought of that before. *See id.* at ¶ 44. Upon Defendant Cecile's direction, Defendant Mullen arrested Plaintiff for Obstructing Governmental Administration by giving him an appearance ticket. *See id.* at ¶¶ 45-46.

That same night, Defendant Hennessey submitted a complaint information affidavit in support of Plaintiff's arrest. *See id.* at ¶ 47. The affidavit contained a number of statements that were false and that Defendant Hennessey knew to be false when he made them. *See id.* at ¶¶ 48-49. Plaintiff's counsel filed a motion to dismiss the information for insufficiency. *See id.* at ¶ 51. On January 10, 2004, the Syracuse City Court dismissed the information in its entirety. *See id.* at ¶ 52. [FN3] In or about November 2004, Carousel Center management informed Plaintiff that he could not set up his booth during the holiday season because it was concerned about potential negative publicity arising from these incidents. *See id.* at ¶ 53.

---

FN3. It appears to the Court that this dismissal actually occurred on January 14, 2004, and was made pursuant to New York Criminal Practice Law § 170.40. *See* Dkt. No. 9 at Pt. 5.

---

**\*3** Plaintiff filed the instant action on December 15, 2004. *See* Dkt. No. 1.

### III. DISCUSSION

A. Defendants' motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

of Civil Procedure

Defendants argue that the Court lacks personal jurisdiction over them because Plaintiff failed to serve them with summonses. The docket sheet contains four affidavits of service that indicate that each Defendant was served with the summons and the complaint sometime between January 12, 2005, and January 26, 2005. *See* Dkt. Nos. 5-8. Perhaps these affidavits are mistaken; Plaintiff's counsel has filed an affidavit stating that Plaintiff personally served summonses and complaints for all Defendants upon Defendants' counsel on February 8, 2005, one day after Defendants filed their motion to dismiss. *See* Dkt. Nos. 9, 14 at ¶ 4. Since Defendants do not address insufficiency of service of process in their reply memorandum of law, the Court presumes that they were served summonses and are abandoning their motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Regardless, both Local Rule 7.1(a)(2) and common sense dictate that a motion to dismiss for a failure to serve summonses requires a supporting affidavit, which Defendants have not provided. *See* L.R. 7.1(a)(2). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.

B. Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

*1. Standard of review*

In considering a motion to dismiss for failure to state a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir.1999).* Hence, dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994)* (quotation omitted).

*2. Defendant City's liability for Plaintiff's § 1983 claims*

A municipality may only be held liable under § 1983 when its policies or customs result in a plaintiff's constitutional injury. *Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978).* The existence of a policy or custom may be inferred when a plaintiff presents evidence that a " 'municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction....' " *DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir.1998)* (quotation and footnote omitted). Contrary to some earlier Second Circuit cases, there is no heightened pleading requirement for claims of municipal liability. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 167-68 (1993)* (rejecting contention that "plaintiff must do more than plead a single instance of misconduct" to state a claim for municipal liability); *contra Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir.1993)* (citation omitted). As the Supreme Court noted, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman, 507 U.S. at 168-69.*

**\*4** Plaintiff's complaint alleges that Defendant City has a policy or custom of threatening those who verbally challenge, or indicate the desire to file a complaint about, police misconduct with Obstructing Governmental Administration and that Defendant City has shown deliberate indifference in failing to train its police officers in how to handle the public while making arrests and failing to train its officers about what constitutes the crime of Obstructing Governmental Administration. *See* Dkt. No. 1 at ¶¶ 55, 64, 71-73. Plaintiff's allegations of municipal liability are directly related to his allegation of personal injury and, if shown to be true according to the evidence, might support a determination of municipal liability. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant City for failure to adequately plead municipal liability.

*3. Plaintiff's § 1983 and common law false arrest and false imprisonment claims*

*a. elements of false arrest and false imprisonment*

"The elements of false arrest ... under § 1983 are

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

'substantially the same' as the elements under New York law." *Boyd v. City of N.Y.,* 336 F.3d 72, 75 (2d Cir.2003) (quotation omitted). The elements of false arrest and false imprisonment claims are identical: " '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." ' *See Curry v. City of Syracuse,* 316 F.3d 324, 335 (2d Cir.2003) (quotation omitted).

The central dispute between the parties is whether the issuance of an appearance ticket constitutes the requisite confinement.

*b. common law false arrest and false imprisonment*

Every New York case of which the Court is aware that has considered whether the issuance of an appearance ticket constitutes confinement has held that the issuance of an appearance ticket, in and of itself, does not constitute confinement for purposes of a common law false arrest or false imprisonment claim. *See Du Chateau v. Metro-North Commuter R.R. Co.,* 253 A.D.2d 128, 129, 132 (1st Dep't 1999) (citations omitted) (police officer escorted plaintiff from train, talked to him, and issued an appearance ticket); *Kramer v. Herrera,* 176 A.D.2d 1241, 1241 (4th Dep't 1991) (citations omitted); *Pozzanghera v. Anderson,* 136 A.D.2d 912, 913 (4th Dep't 1988) ("Plaintiff's sole contention is that he was detained by the service of an appearance ticket. This did not restrict plaintiff's freedom and, therefore, does not form a basis for his wrongful arrest claim." (citation omitted)); *Pritchett v. State,* 61 A.D.2d 1110, 1110 (3d Dep't 1978); *cf. Reinhart v. Jakubowski,* 239 A.D.2d 765, 766 (3d Dep't 1997) (issuance of criminal summons requiring court appearance insufficient to support false arrest claim); *Vill. of Ellenville v. Searles,* 235 A.D.2d 692, 693 (3d Dep't 1997) (brief traffic stop in order to serve process did not constitute requisite confinement) (citations omitted).

**\*5** Plaintiff contends, however, that his complaint alleges more than the mere issuance of an appearance ticket. Conduct that accompanies the issuance of an appearance ticket certainly can constitute confinement for purposes of a false arrest or false imprisonment claim. *See Wiggins v. Metro-North Commuter R.R. Co.,* 228 A.D.2d 198, 198

(1st Dep't 1996) (police escorted plaintiff off train, questioned him in a railroad police facility, and issued an appearance ticket). Unfortunately, Plaintiff does not specify which of his allegations he believes show that Defendants confined him. The relevant allegations are:

33. Approximately one hour later, at about 9:00 p.m., Officer Mullen returned to Plaintiff's booth with [Sergeant Cecile] and a mall security guard.

34. Sergeant Cecile told Plaintiff that he understood he had been involved in an incident earlier and asked the Plaintiff what happened.

35. As the Plaintiff began to tell him, Sergeant Cecile interrupted Plaintiff and asked if Plaintiff understood that he could be arrested.

36. Plaintiff was quite surprised at this statement as he had complied with Officer Mullen's directive and had not interfered with Paredes' arrest or done anything unlawful.

37. Sergeant Cecile said that right then it was the officer's call, but if they were going to receive a complaint from the Plaintiff, it would be his call whether to arrest Plaintiff.

38. Plaintiff said that he was not sure how the complaint procedure worked.

39. Sergeant Cecile showed Plaintiff the patch on his shoulder and said, "It's right here with me, right now."

40. Plaintiff said that he did not think that was the only way to file a complaint.

41. Sergeant Cecile then told Plaintiff, "I'll tell you right now if you're filing a complaint, I'm taking you down," or words to that effect.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

42. Sergeant Cecile told Officer Mullen, "He's not happy. We're going to get a complaint. Take him in," or words to that effect.

43. Plaintiff explained that he had expensive things in his booth that he could not leave unsecured.

44. Sergeant Cecile told Plaintiff that he should have thought of that before.

45. Sergeant Cecile told Officer Mullen to give Plaintiff an appearance ticket, which Officer Mullen did.

*See* Dkt. No. 1 at ¶¶ 33-45. Although Plaintiff alleges that Defendant Cecile threatened to arrest him, the mere threat to arrest does not constitute confinement. *See Blumenfield v. Harris,* 3 A.D.2d 219, 220 (1st Dep't 1957) (citations omitted), *aff'd* 3 N.Y.2d 905 (1957).[FN4]

> FN4. In articulating his first cause of action, Plaintiff alleges that "[i]n the course of arresting Plaintiff, plaintiff was not free to leave and was confined against his will at the Carousel Center." *See* Dkt. No. 1 at ¶ 58. However, in light of the more specific allegations that Plaintiff made in his statement of facts, this allegation is too vague and conclusory to support a reasonable inference that Defendants confined him.

Accepting all of Plaintiff's allegations as true and drawing every reasonable inference from them, the Court does not find that he has alleged that Defendants took any actions that would constitute confinement for purposes of a common law false arrest or false imprisonment claim. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's common law false arrest and false imprisonment claims for failure to state a claim.

*c. § 1983 false arrest*

*6 The question of whether the issuance of an appearance ticket constitutes confinement for purposes of § 1983 is not so clear. Defendants rely upon *Angel v. Kasson,* 581 F.Supp. 170, 177-78 (N.D.N.Y.1983) ("[I]t [is] well settled that the issuance of such tickets under the provisions of N.Y.Crim. Proc. Law § 150.10 does not constitute an arrest." (citation and footnote omitted)). Plaintiff, on the other hand, relies upon *Dorman v. Castro,* 214 F.Supp.2d 299 (E.D.N.Y.2002), which states that,

> [a]lthough this is a close case, the Court finds that Plaintiffs were subject to a "seizure" under the Fourth Amendment. Plaintiffs claim that their liberty was restrained because "at the point when the Plaintiffs were informed that they were being issued a Summons" they "were not free to leave until the Plaintiffs had the Summons in hand."

*Id.* at 308 (quotation omitted). *Dorman* goes on to note that "district courts in this circuit that have analyzed *Murphy [v. Lynn,* 118 F.3d 938 (2d Cir.1997) ], however, have held that the mere issuance of an appearance ticket, without any restraint on travel, is a sufficient restraint of liberty to constitute a 'seizure' under the Fourth Amendment." *Id.* (citing *Kirk v. Metropolitan Trans. Auth.,* No. 99 CV 3787, 2001 WL 258605, *15 (S.D.N.Y. Mar. 14, 2001); *Kirton v. Hassel,* No. 96 CV 1371, 1998 WL 146701, *6 (E.D.N.Y. Mar. 25, 1998); *Sassower v. City of White Plains,* 992 F.Supp. 652, 656 (S.D.N.Y.1998)) (other citation omitted).[FN5]

> FN5. Contrary to *Dorman'*s statement, two of the supporting cases it cites do not involve appearance tickets and the third, *Kirk,* involves a desk appearance ticket that the defendant issued after the plaintiff had been arrested and detained. *Kirk,* 2001 WL 258605, *2-*4.

*Dorman* and all the supporting cases that it cites rely upon *Murphy. Murphy,* applying *Albright v. Oliver,* 510 U.S. 266 (1994), held that, in order for a plaintiff to establish a § 1983 malicious prosecution claim, he "must show ... that the initiation or pendency of judicial proceedings" resulted in a Fourth Amendment "seizure." *Murphy,* 118 F.3d at 944. The court went on to hold that "[t]he liberty deprivations regulated by the Fourth Amendment are not limited to physical detention." *Id.* at 945. Finally, the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

court, relying upon Justice Ginsburg's solitary concurrence in *Albright,* held that

> while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and *may order him to make periodic appearances,* such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment.

*Id.* at 946 (emphasis added).

Like *Murphy,* all three of the supporting cases that *Dorman* cites concern malicious prosecution claims. There is certainly considerable similarity between the analysis of a § 1983 malicious prosecution claim and a § 1983 false arrest claim; both arise out of the Fourth Amendment's protection against unreasonable seizures. However, *Murphy* does not expressly address false arrest claims. Furthermore, there is reason to constrain the application of *Murphy* to the precise issues it addresses. Judge Jacobs, dissenting in *Murphy,* after noting the majority's reliance upon Justice Ginsburg's solitary concurrence, pointed out that "[a] probable cause determination is required only for 'those suspects who suffer restraints on liberty *other* than the condition that they appear for trial." ' *Id.* at 953, 955 (quoting *Gerstein [v. Pugh],* 420 U.S. [103,] 125 n. 26, 95 S.Ct. [854,] 869 n. 26 [ (1975) ] (Judge Jacobs' emphasis)) (footnote omitted). In *Sassower,* Judge Lowe noted the novelty of the *Murphy* holding and quoted Judge Jacobs' statement that " 'strange is the majority's holding that [plaintiff] was seized within the meaning of the Fourth Amendment because he was required to appear in court." ' *Sassower,* 992 F.Supp. at 655, 656 (quotation omitted).

**\*7** Although in the context of a malicious prosecution claim *Murphy* would be controlling, given the tenuousness of its reasoning, the Court holds that the issuance of an appearance ticket does not, in and of itself, constitute confinement for purposes of a § 1983 false arrest or false imprisonment claim. Furthermore, since the circumstances surrounding the issuance of the appearance ticket in this case do not present any alternative forms of the restraint of Plaintiff's liberty, the Court grants Defendants' motion to dismiss Plaintiff's § 1983 false arrest claims for failure to state a claim.

**4. Plaintiff's § 1983 First Amendment claims**

Second Circuit First Amendment retaliation case law is, to put it mildly, confusing. There are at least three formulations of the elements of a First Amendment retaliation claim. *See Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) ((1) protected speech or conduct, (2) the defendant's adverse action against the plaintiff, and (3) " 'a causal connection between the protected speech and the adverse action" ' (quotation omitted)); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir.2002) ((1) conduct that the First Amendment protects that (2) prompts or substantially causes the defendant's action (citations omitted)); *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir.2001) ((1) protected speech or conduct that (2) motivates or substantially causes the defendant's action, which action (3) effectively chills the plaintiff's exercise of his First Amendment right (citation omitted)).

In an attempt to make sense of this case law, one approach is to distinguish cases according to broad types. The great majority of First Amendment retaliation cases arise in the prisoner and public employee contexts. Less typical are those cases, like the one currently before the Court, in which a private citizen alleges that state actors took some action against him in retaliation for his exercise of his First Amendment rights. Unfortunately, even in this subset of cases, there is disagreement about the elements of the claim. The most recent case in this subset to set forth the elements of a First Amendment retaliation claim is *Dougherty.* In that case, the plaintiff alleged that the defendants had revoked a previously issued building permit in retaliation for his exercise of his First Amendment rights. Although the court indicated that there may have been additional protected speech, it specifically noted the plaintiff's allegation that the permit revocation occurred soon after the defendants' receipt of his opposition papers to their motion to dismiss an action that he had filed in relation to an earlier denial of a permit. *See Dougherty,* 282 F.3d at 91-92. The court held that the circumstances that the plaintiff alleged gave rise to a sufficient inference of a causal relationship between his protected conduct and the defendants' action to withstand a motion to dismiss. *See id.* at 92.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

**\*8** The next most recent case in the subset of private citizen plaintiffs is *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98 (2d Cir.2001). *Garcia* involved a student who claimed that the defendants dismissed him from medical school in retaliation for his exercise of his First Amendment rights. The court followed the same formulation of the elements of a First Amendment retaliation claim as did *Gill* but concluded that the plaintiff's assertions did not satisfy the third element of that formulation. *See id.* at 106-07 (quotation and other citation omitted).

After *Garcia,* the next most recent case in this subset is *Curley.* The facts of that case are more analogous to those of the instant action than are those of either *Dougherty* or *Garcia.* The plaintiff in *Curley* alleged that the defendants arrested him in retaliation for comments that he had made while campaigning for municipal office about a police cover-up and failure to discipline. *See Curley,* 268 F.3d at 72-73. The court found that the defendants were entitled to summary judgment on the plaintiff's First Amendment retaliation claim because the existence of probable cause to arrest him negated the second element of such a claim and because the fact that the plaintiff continued his campaign and later campaigned for another municipal office negated the third, "chilling," element of the claim. *See id.* at 73.

*Curley* is distinguishable from *Dougherty* and *Garcia.* All the Second Circuit cases that the Court has found involving a private citizen plaintiff who alleges that the defendant arrested him in retaliation for his exercise of his First Amendment rights have articulated the same formulation of the elements of a First Amendment retaliation claim as did *Curley. See Kerman v. City of N .Y.,* 261 F.3d 229, 241-42 (2d Cir.2001) (citation omitted); *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998) (citations omitted). Although it might be difficult to explain the distinction between private citizen arrestee plaintiff cases and the other private citizen plaintiff cases, the distinction is present in the case law. Therefore, the Court will follow the *Curley* formulation of the elements of a First Amendment retaliation claim.[FN6]

FN6. The only Second Circuit case that Plaintiff

cites in support of his First Amendment retaliation claims is *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 194 (2d Cir.1994). *Gagliardi* applies the same formulation of the elements of the claim as does *Dougherty. See id.* at 194 (quotation and other citations omitted). However, *Gagliardi,* like *Dougherty,* is a private citizen zoning dispute case rather than a private citizen arrestee case.

The only challenge [FN7] that Defendants currently make to Plaintiff's First Amendment retaliation claims is that he fails to allege that they prevented him from filing a compliant, i.e., he fails to allege that Defendants' actions effectively chilled him from exercising his First Amendment rights. However, this challenge reads Plaintiff's claims too narrowly. Two distinct forms of speech are at issue in Plaintiff's first two causes of action. Plaintiff's first cause of action alleges that he verbally complained about Defendants' actions during the course of their arrest of Paredes. From Plaintiff's second cause of action, it may be reasonably inferred that he also desired to file a formal complaint about Defendants' actions after the arrest incident. With respect to the second cause of action, Plaintiff has not alleged that Defendants' actions effectively chilled him from filing a complaint. Therefore, Plaintiff's second cause of action fails to state a First Amendment claim. Accordingly, the Court grants Defendants' motion to dismiss the First Amendment claims in Plaintiff's second cause of action for failure to state a claim.

FN7. It is possible that Plaintiff's conduct in criticizing Defendants' actions during the course of their arrest of Paredes may not be protected activity. If the allegations in Defendant Hennessey's affidavit in support of the complaint information are true, Defendants likely had probable cause to arrest Plaintiff for Obstructing Governmental Administration and, thus, their threat to arrest him on that charge was privileged. *See* Dkt. No. 1 at ¶ 48. However, since Defendants have not raised the issue of whether Plaintiff's conduct was privileged, and the Court must accept the allegations in Plaintiff's complaint as true, the Court cannot address this issue at this time.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

**\*9** However, with respect to Plaintiff's first cause of action, the Court finds that it may reasonably infer from the complaint that Defendants' conduct effectively chilled Plaintiff's speech. The relevant allegations are:

　　24. Plaintiff then crouched down and told the officers that they were "over the top" and that they were "out of control" or words to that effect.

　　25. Plaintiff did this because the police officers were brutalizing Paredes.

　　26. Officer Mullen told Claimant to get back.

　　27. Claimant complied by stepping back.

　　28. Officers Mullen and Hennessey then continued to punch Paredes on the back after Paredes was subdued.

　　29. Plaintiff told the officers again that they were "over the top" or words to that effect.

　　30. Officer Mullen then told the Plaintiff that if he didn't stop, he would be arrested for Obstructing Governmental Administration.

　　31. Plaintiff stopped speaking to the officers.

*See* Dkt. No. 1 at ¶¶ 24-31. Accordingly, since Plaintiff has sufficiently alleged that Defendants' (or at least Defendant Mullen's) actions effectively chilled his exercise of his First Amendment rights, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his first cause of action for failure to state a claim.

*5. Plaintiff's § 1985(3) claims*

Defendants have asserted three bases for the dismissal of

Plaintiff's § 1985(3) claims. First, they argue that Plaintiff, as a white person, lacks standing to assert a § 1985(3) claim. Second, they contend that Defendants, as agents or employees of a corporate entity, by definition, may not conspire with one another. Finally, they assert that Plaintiff's factual allegations are insufficient to state a conspiracy claim.

*i. standing*

Despite the age and extensive use of § 1985(3), case law contains little discussion of the question of who has standing to assert a claim under that statute.[FN8] However, the Court finds that the case law provides sufficient guidance to answer the question currently before it: whether a non-minority person who alleges that he was injured by a conspiracy that aimed to deprive minority persons of the equal protection of the law has standing to assert a § 1985(3) claim.

　　FN8. The parties have cited conflicting precedents, none of which are binding on this Court. Defendants cite two cases for the proposition that a plaintiff asserting a § 1985(3) claim must himself be a member of a class that the statute protects: *Puglisi v. Underhill Park Taxpayer Ass'n,* 947 F.Supp. 673, 692 (S.D.N.Y.1996) (citations omitted); *McLoughlin v. Altman,* No. 92 Civ. 8106, 1993 WL 362407, *6 (S.D.N.Y. Sept. 13, 1993) (citation omitted). Although *McLoughlin* cites *Griffin v. Breckinridge,* [403 U.S. 88, 102,] 91 S.Ct. 1790, 1798 (1971), for the proposition that "a claimant must show, among other things, that she belonged to the type of class that is protected by that statute," *McLoughlin,* 1993 WL 362407, at *6, it does not appear that *Griffin* stands for such a proposition. Likewise, although *Puglisi* discusses several other cases, when it holds "that plaintiff cannot bring this § 1985(3) claim because ... plaintiff is not a member of the class protected by the statute nor a member of the race triggering the alleged racial discrimination[,]" *McLoughlin* is the only case that the court cited that supports this holding. *Puglisi,* 947 F.Supp. at 692.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

The cases upon which Plaintiff relies are also suspect. He contends that a white person who has sought to vindicate the rights of members of a racial minority and against whom the defendants conspire has standing to assert a § 1985(3) claim. He cites three primary cases to support this proposition: *Maynard v. City of San Jose,* 37 F.3d 1396, 1403-04 (9th Cir.1994) (citations and footnote omitted); *Pisello v. Town of Brookhaven,* 933 F.Supp. 202, 216 (E.D.N.Y.1996) (citing *Maynard* ); *Bryant v. Polston,* No. IP 00-1064-C-T/G, 2000 WL 1670938, *7 (S.D.Ind. Nov. 2, 2000)* (citing *Maynard* ). In *Maynard,* the Ninth Circuit sought to apply the law of that circuit which provided that "[p]laintiffs have standing under Section 1985 only if they can show they are members of a class that the government has determined 'require[s] and warrant[s] special federal assistance in protecting their civil rights.' " *Maynard,* 37 F.3d at 1403 (quotations and other citation omitted). The court reasoned that, because Title VII "grants special protection to whites who are denied association with members of other groups because of an employer's discriminatory practices" and "to all employees-regardless of race-who are subjected to retaliation for assisting in the investigation of discriminatory employment practices," such persons may have standing to assert a § 1985(3) claim. *Id.* (citation omitted). The plaintiff in *Maynard* had alleged that his employer and other defendants had retaliated against him for complaining about discriminatory hiring practices. *See id.* at 1399-1400. Since it does not appear that the Second Circuit has articulated a general statement of the requirement for standing under § 1985(3), the Court does not find *Maynard* persuasive.

The Supreme Court has discussed the statute's purpose: "[t]he predominant purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v.*

*Scott,* 463 U .S. 825, 836 (1983). This statutory purpose implies that, if a white person who sought to vindicate the rights of members of a racial minority were injured by a conspiracy that aimed to deny members of that racial minority of the equal protection of the laws, he would have standing to assert a § 1985(3) claim.

**\*10** At least two Courts of Appeals have expressly held that a plaintiff asserting a § 1985(3) claim need not himself be a member of a class that the statute protects. *See Cutting v. Muzzey,* 724 F.2d 259, 260 (1st Cir.1984) (holding that a non-Italian had standing to assert a § 1985(3) claim against members of a town planning board who allegedly conspired to deprive Italians of access to housing); *Novotny v. Great Am. Fed. Sav. & Loan Ass'n,* 584 F.2d 1235, 1244 (3d Cir.1978) (*en banc* ) ("[M]embers of a conspiracy to deprive women of equal rights are liable under § 1985(3) to persons who are injured in furtherance of the object of the conspiracy, whether male or female."), *vacated on other grounds,* 442 U.S. 366 (1979).[FN9] Although the Second Circuit has not addressed whether a white person may have standing to assert a § 1985(3), the Court finds that, in light of the discussion in *Scott,* the holdings of *Cutting* and *Novotny* are persuasive. Therefore, the Court concludes that the fact that Plaintiff is white does not, in and of itself, bar him from asserting a § 1985(3) claim. Consequently, since Plaintiff has alleged that a conspiracy whose object was to deprive the constitutional rights of a member of a racial minority injured Plaintiff while he was seeking to vindicate those rights, the Court finds that he has adequately alleged standing for his 42 U.S.C. § 1985(3) claim.

FN9. The Supreme Court vacated *Novotny* because the plaintiff in that case alleged that the conspiracy that injured him had the goal of depriving women of their Title VII rights. The Court held that, because allowing a plaintiff to base a § 1985(3) cause of action upon rights that Title VII created would circumvent the procedural requirement that Congress had built into Title VII, "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Novotny,* 442 U.S. at 378. Since the Fourth Amendment creates the rights of Paredes of which Plaintiff alleges Defendants conspired to deprive him, the Court's holding

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

does not bar Plaintiff's action.

*ii. intra-corporate conspiracy doctrine*

" 'Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together[ ]' ' while acting within the scope of their employment. *Nassau County Employee "L" v. County of Nassau,* 345 F.Supp.2d 293, 304 (E.D.N.Y.2004)* (quotations and other citations omitted); *see Crudele v. City of N.Y. Police Dep't,* No. 97 Civ. 6687, 2004 WL 1161174, *5 (S.D.N.Y. May 24, 2004)* (citations omitted). Although courts first applied this doctrine to cases involving public corporations, they have subsequently held that the doctrine is applicable to municipal entities and their officers, agents, and employees. *See County of Nassau,* 345 F.Supp.2d at 304 (citation omitted); *Cameron v. Church,* 253 F.Supp.2d 611, 623 (S.D.N.Y.2003)* (quotation omitted). "However, '[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity.' ' *County of Nassau,* 345 F.Supp.2d at 304-05 (quotation omitted); *see Stoner v. N.Y. City Ballet Co.,* No. 99 Civ. 0196, 2002 WL 523270, *9 (S.D.N.Y. Apr. 8, 2002)* (quotation and other citation omitted).

Individual Defendants are officers of Defendant City. *See* Dkt. No. 1 at ¶¶ 7-9. Plaintiff's allegation that at the time that individual Defendants "conspired to violate Plaintiff's civil rights and committed acts in furtherance of such conspiracy, they were acting as police officers for the City of Syracuse[ ]" is presumably an admission that individual Defendants were acting within the scope of their employment. *See* Dkt. No. 1 at ¶ 79.

**\*11** Nonetheless, Plaintiff contends that the personal interest exception applies. "[T]hat exception applies where 'a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose." ' *Everson v. N.Y. City Transit Auth.,* 216 F.Supp.2d 71, 76 (E.D.N.Y.2002)* (quotation and other citation omitted); *see Salgado v. City of N.Y.,* No. 00 Civ. 3667, 2001 WL 290051, *9 (S.D.N.Y. Mar. 26, 2001)*. Plaintiff has not alleged that individual Defendants had a personal interest in their alleged conspiracy. *See* Dkt. No.

1 at ¶¶ 77-83. In his motion papers, Plaintiff concedes that he "does not allege Defendants' personal stake in their bias against Plaintiff or Paredes...." *See* Dkt. No. 15 at 14. However, he contends that he has "allege[d] sufficient facts to infer that the Defendants were motivated by personal gain in silencing Plaintiff about what he witnessed concerning their brutality and/or misconduct in subduing and arresting Paredes and preventing Plaintiff from filing a complaint about such misconduct." *See id.* at 14-15 (citations omitted). He further argues that "the complaint alleges sufficient facts to infer that Defendants' employment opportunities and interest in not answering a complaint about their misconduct was Defendants' personal stake or interest in participating in the conspiracy." *See id.* at 15. However, since Defendant City arguably has the same general interest, Plaintiff's allegations do not give rise to a reasonable inference that individual Defendants' interests in the alleged conspiracy were distinct from those of Defendant City.

Accordingly, since the intra-corporate conspiracy doctrine applies, the Court grants Defendants' motion to dismiss Plaintiff's § 1985(3) claims for failure to state a claim.[FN10]

> [FN10.] Since the Court concludes that the intra-corporate conspiracy doctrine applies, it will not address Defendants' alternative argument that Plaintiff's factual allegations are insufficient to state a conspiracy claim.

**6. Plaintiff's common law malicious prosecution claims**

In order to recover for malicious prosecution, a plaintiff must establish four elements: that a criminal proceeding was commenced; that it was terminated in favor of the accused; that it lacked probable cause; and that the proceeding was brought out of actual malice. *Cantalino v. Danner,* 96 N.Y.2d 391, 394-95 (2001) (citations omitted). Defendants argue that a dismissal in the interest of justice of an accusatory instrument pursuant to New York Criminal Practice Law § 170.40 cannot constitute a favorable termination. However, Defendants only cite pre-*Cantalino* case law to support their argument. *Cantalino* directly addressed "whether the dismissal of criminal charges against plaintiff in the interest of justice constituted a termination in her

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

favor." *Id.* at 395. It expressly rejected "a per se rule that a dismissal in the interest of justice can never constitute a favorable termination," and held that

the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused. A case-specific rule is particularly appropriate for dismissals in the interest of justice, since the trial court is required to state on the record its reasons for dismissing the criminal charges....

**\*12** *Id.* at 396 (internal citation omitted). Unfortunately, in this case, the state court did not state on the record its reasons for dismissing the charges. *See* Dkt. No. 9 at 2. Furthermore, even if the state court had stated its reasons on the record, that record is not part of Plaintiff's pleadings. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's common law malicious prosecution claims for failure to state a claim.

*7. Plaintiff's common law libel claim*

Defendants argue (1) that Plaintiff has failed to comply with New York Civil Practice Law and Rules § 3016(a)'s requirement that a complaint asserting a claim for libel or slander set forth the particular words complained of and (2) that, if the Court dismisses all of Plaintiff's federal claims, it should decline to exercise jurisdiction over his state claims.

Since federal law governs the procedural issues in this case, " 'the mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P.' " *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986) (quotation omitted). Therefore, the heightened pleading requirement of New York Civil Practice Law and Rules § 3016(a) does not apply to this action. *See Silverman v. City of N.Y.,* No. 98-CV-6277, 2001 WL 218943, \*8 (E.D.N.Y. Feb. 2, 2001) (quotation and other citation omitted). The allegations of libel in Plaintiff's complaint satisfy Rule 8's requirements of "a short and plain statement of the claim" and "simple, concise, and direct" allegations. Fed.R.Civ.P. 8(a), (e)(1); *see* Dkt. No. 1 at ¶¶ 47-49, 94-96. Furthermore, the Court has not dismissed all of Plaintiff's federal claims. Accordingly, the Court denies Defendants' motion to

dismiss Plaintiff's libel claim for failure to state a claim.

IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

ORDERS that Defendants' motion to dismiss Plaintiff's complaint for insufficient service of process is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant City of Syracuse for failure to sufficiently allege municipal liability is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's common law false arrest and false imprisonment claims for failure to state a claim is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 false arrest claims for failure to state a claim is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his second cause of action is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his first cause of action for failure to state a claim is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1985(3) claims for failure to state a claim is GRANTED; and the Court further

**\*13** ORDERS that Defendants' motion to dismiss

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1460424 (N.D.N.Y.)
(Cite as: 2005 WL 1460424 (N.D.N.Y.))

Plaintiff's common law malicious prosecution claims for
failure to state a claim is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's
common libel claim for failure to state a claim is
DENIED.

IT IS SO ORDERED.[FN11]

> FN11. The following claims of Plaintiff remain
> in this action: (1) § 1983 claims for denial of
> First Amendment rights against Defendants City,
> Mullen, and Hennessey, alleging that these
> Defendants arrested him for speaking to
> Defendant officers about their conduct in
> arresting a third-party; (2) § 1983 claims for
> failure to train against Defendant City; (3)
> common law malicious prosecution claims
> against all Defendants; (4) a common law libel
> claim against Defendant Hennessey; and (5) a
> claim for attorney's fees pursuant to 42 U.S.C. §
> 1988.

N.D.N.Y.,2005.
Griffin-Nolan v. Providence Wash. Ins. Co.
Not Reported in F.Supp.2d, 2005 WL 1460424
(N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 2025613 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 2025613 (C.A.2 (N.Y.)))

**H**
Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,
Second Circuit.
Joel MURRAY, Plaintiff-Appellant,
v.
George E. PATAKI, Governor of New York State, Kang Yeon Lee, M.D., Daniel Senkowski, Superintendent of Clinton Correctional Facility, Dr. Melendez, R. Leduc, Corrections Officer, N. Irwin, J. Travers, J. Forth, Corrections Officer, R. Girdich, Superintendent at Franklin Correctional Facility, Glenn S. Goord, Commissioner of N.Y.S. D.O.C.S., Richard Roy, Inspector General, T. Reif, Corrections Officer, CNY Psychiatric Center, S. Jones, Defendants-Appellees.FN*
**No. 09-1657-pr.**

May 24, 2010.

**Background:** Pro se prisoner brought civil rights action against various government defendants. The United States District Court for the Northern District of New York, dismissed certain § 1983 claims, Lawrence E. Kahn, J., 2007 WL 956941, and granted summary judgment in favor of defendants on his remaining § 1983 and § 1985 claims, and dismissed his claim against prison employee defendant, Suddaby, J., 2009 WL 981217. Prisoner appealed.

**Holding:** The Court of Appeals held that United States Marshals' failure to effect service automatically constituted "good cause" for extension of time in which to serve prison employee defendant.
Affirmed in part, and vacated and remanded in part.

West Headnotes

Federal Civil Procedure 170A ⌐══ 417

170A Federal Civil Procedure
    170AIII Process
        170AIII(B) Service
            170AIII(B)1 In General
                170Ak417 k. Time for Making. Most Cited Cases
Pro se prisoner provided information sufficient to identify prison employee defendant, and therefore United States Marshals' failure to effect service automatically constituted "good cause" for an extension of time in which to serve. Fed.Rules Civ.Proc.Rule 4(m), 28 U.S.C.A.

Appeal from a judgment of the United States District Court for the Northern District of New York (Suddaby, J., Treece, M.J.).Joel Murray, pro se, Romulus, NY.

Andrew M. Cuomo, Attorney General of the State of New York; Barbara D. Underwood, Solicitor General; Benjamin N. Gutman, Deputy Solicitor General (Sudarsana Srinivasan, Assistant Solicitor General; Kate H. Nepyeu, of Counsel), New York, NY, for Defendants-Appellees.

Present BARRINGTON D. PARKER, DEBRA ANN LIVINGSTON, and DENNY CHIN, Circuit Judges.

**SUMMARY ORDER**

**\*1 UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **VACATED AND REMANDED IN PART.**

Plaintiff-Appellant Joel Murray appeals *pro se* from an order of the United States District Court for the Northern District of New York (Suddaby, *J.*), entered March 29,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2025613 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 2025613 (C.A.2 (N.Y.)))

2007, dismissing certain of his 42 U.S.C. § 1983 claims against various of the Defendants-Appellees, and from a second order, entered on April 9, 2009, granting summary judgment in favor of Defendants-Appellees on Murray's remaining claims under 42 U.S.C. §§ 1983 and 1985, and dismissing his claim against Defendant-Appellee Dr. Melendez for failure to timely effect service of process upon her pursuant to Federal Rule of Civil Procedure 4(m). We assume the parties' familiarity with the underlying facts and procedural history of the case, and with the issues presented on appeal.

We review de novo a district court's dismissal of claims pursuant to Fed.R.Civ.P. 12(b)(6), "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor ." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.2002). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim will have facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). We also review a district court's grant of summary judgment de novo, and determine whether there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir.2003). While we construe the evidence in the light most favorable to the non-moving party, id., "conclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion," Davis v. New York, 316 F.3d 93, 100 (2d Cir.2002).

We have undertaken a de novo review of the record and relevant cases, and, except as noted below, we affirm the dismissal of Murray's claims against all defendants for substantially the same reasons set forth in Magistrate Judge Treece's thorough reports and recommendations of March 5, 2007, and March 3, 2009; these reports were adopted by the district court in their entirety.

We vacate the district court's dismissal of Murray's claim against Dr. Melendez for failure to serve process. We

review a district court's dismissal pursuant to Federal Rule of Civil Procedure 4(m) for abuse of discretion. Zapata v. City of New York, 502 F.3d 192, 195 (2d Cir.2007). A district court abuses its discretion if it bases its ruling on an erroneous view of the law or clearly erroneous findings of fact, or its decision "cannot be located within the range of permissible decisions." Lynch v. City of New York, 589 F.3d 94, 99 (2d Cir.2009) (quoting Sims v. Blot, 534 F.3d 117, 132 (2d Cir.2008)).

**\*2** Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed.R.Civ.P. 4(m). If the plaintiff shows "good cause for the failure" to serve, the district court is required to grant an "appropriate" extension of time in which to serve. Id. District courts also have discretion to enlarge the 120-day period even in the absence of good cause. See Zapata, 502 F.3d at 196. A pro se prisoner proceeding in forma pauperis, such as Murray, is "entitled to rely on service by the U.S. Marshals." Romandette v. Weetabix Co. ., 807 F.2d 309, 311 (2d Cir.1986). As long as the pro se prisoner provides the information necessary to identify the defendant, the Marshals' failure to effect service automatically constitutes "good cause" for an extension of time within the meaning of Rule 4(m). See, e.g., id.; see also Moore v. Jackson, 123 F.3d 1082, 1085-86 (8th Cir.1997); Byrd v. Stone, 94 F.3d 217, 220 (6th Cir.1996); Dumaguin v. Sec'y of Health & Human Servs., 28 F.3d 1218, 1221 (D.C.Cir.1994); Sellers v. United States, 902 F.2d 598, 602 (7th Cir.1990); Puett v. Blandford, 912 F.2d 270, 275 (9th Cir.1990). A pro se prisoner proceeding in forma pauperis is only required to provide the information necessary to identify the defendant, see, e.g., Sellers, 902 F.2d at 602, and it is "unreasonable to expect incarcerated and unrepresented prisoner-litigants to provide the current addresses of prison-guard defendants who no longer work at the prison," Richardson v. Johnson, 598 F.3d 734, 739-40 (11th Cir.2010).

Here, albeit after receiving a number of extensions of time within which to serve Melendez, Murray provided information that was sufficient to identify Dr. Melendez by full name and as an employee formerly assigned to Clinton Correctional Facility. See Doc. 103, Murray v.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2025613 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 2025613 (C.A.2 (N.Y.)))

*Pataki,* 9:03-CV-1263 (N.D.N.Y. Apr. 13, 2007) (letter from Murray to the district court styled "Notification of Defendant"). This was sufficient to satisfy Murray's burden to provide sufficient information for the Marshals to identify the defendant. Although the Marshals subsequently failed to serve Dr. Melendez at the Clinton facility on March 11, 2008, *id.* Doc. 134, they were clearly able to identify her from the information proffered by Murray, and service was unsuccessful merely because Dr. Melendez apparently no longer worked at Clinton. *See id.* As Murray had satisfied his burden, it was an abuse of discretion for the district court to require him to provide additional information regarding Dr. Melendez, and to dismiss Murray's claims against her pursuant to Rule 4(m) for failure to serve process upon her. District courts have a responsibility to assist *pro se* plaintiffs in their efforts to serve process on defendants. *See Valentin v. Dinkins,* 121 F.3d 72, 75-76 (2d Cir.1997) (recognizing district court's obligation to allow *pro se* plaintiff limited discovery to identify defendant for service of process). With the information that Murray provided, the district court here could have ordered the other defendants to contact Dr. Melendez to see if she would accept service or to provide the Marshals with Dr. Melendez's last known address.

**\*3** For the foregoing reasons, the judgment of the district court dismissing the claims against Dr. Melendez for failure to serve process is **VACATED,** and we **REMAND** to the district court for further proceedings in accordance with this decision. The judgment is **AFFIRMED** in all other respects.

FN* The Clerk of the Court is respectfully directed to amend the official caption as it appears above.

C.A.2 (N.Y.),2010.
Murray v. Pataki
Slip Copy, 2010 WL 2025613 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.